**DLA PIPER US LLP**
1251 Avenue of the Americas
New York, New York 10020-1104
Tel: (212) 335-4500
Fax: (212) 335-4501
Timothy W. Walsh (TW-7409)
Jeremy R. Johnson (JJ-9269)

Attorneys for Victory Memorial Hospital, <u>et al</u>.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| VICTORY MEMORIAL HOSPITAL, <u>et al</u>., | : | Case Nos. 06-44387, 06-44388 |
| | : | and 06-44389 |
| | : | |
| Debtors. | : | (Jointly Administered) |

-------------------------------------------------------------X

## ORDER (I) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE SALE OF DEBTORS' ASSETS OUTSIDE THE ORDINARY COURSE OF BUSINESS, (II) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, (III) AUTHORIZING THE PROCEDURES FOR ASSUMPTION AND SALE AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (IV) GRANTING RELATED RELIEF

Upon the motion, dated February 6, 2008 (the "<u>Sale Motion</u>"), of the above-captioned

debtors and debtors in possession (the "<u>Debtors</u>" or "<u>Sellers</u>") for the entry of an order, pursuant

to sections 105, 363 and 365 of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and

Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure

(the "<u>Bankruptcy Rules</u>"), (a) authorizing the Debtors to, *inter alia*, (i) enter into that certain

Asset Purchase Agreement, dated as of April 18, 2008, between Dervaal LLC, a Delaware

Limited Liability Company, on behalf of a new entity to be formed on behalf of the Leser Group

(the "<u>Buyer</u>"), and the Debtors (with all exhibits thereto and/or as amended from time to time,

the "<u>Agreement</u>", attached hereto as <u>Exhibit 1</u>), (ii) sell substantially all of their assets free and

clear of all liens, claims, interests and encumbrances (collectively, "Encumbrances"), to the fullest extent permissible under 363(f), with such sale to be in accordance with the terms and conditions of the Agreement; and (iii) establish procedures regarding the assumption and rejection of certain executory contracts and unexpired leases to the Buyer; and (b) granting related relief; and this Court having entered orders dated March 10, 2008 and March 14, 2008 (together, the "Bid Procedures Orders") authorizing the Debtors to conduct, and approving the terms and conditions of, the Auction[1] and bid procedures governing the Auction (the "Bid Procedures") to consider higher or otherwise better offers for the Purchased Assets, establishing a date for the Auction, and approving, *inter alia*, (i) the Bid Procedures in connection with the Auction; and (ii) the form and manner of notice of the Auction and Bid Procedures; and the Court having established the date of the Sale Hearing; and the Court having jurisdiction to consider the Sale Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157(b)(2) and 1334; and consideration of the Sale Motion, the relief requested therein, and the responses thereto, if any, being a core proceeding in accordance with 28 U.S.C. § 157(b); and the appearance of all interested parties and all responses and objections, if any, to the Sale Motion having been duly noted in the record of the Sale Hearing; and upon the record of the Sale Hearing, and all other pleadings and proceedings in this case, including the Sale Motion; and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtors, their estates, their creditors and all other parties in interest; and after due deliberation and sufficient cause appearing therefore *(CEC)*;

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Agreement.

IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:[2]

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.      To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.      The Court has jurisdiction over this matter and over the property of the Debtors, including the Purchased Assets to be sold, transferred or conveyed pursuant to the Agreement, and their respective estates pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of these chapter 11 cases and the Sale Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      The statutory predicates for the relief sought in the Sale Motion and the basis for the approvals and authorizations herein are (i) Bankruptcy Code sections 102, 105, 363, 365 and 1146, and (ii) Bankruptcy Rules 2002, 6004, 6006 and 9014.

E.      On November 15, 2006 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code.  Since the Petition Date, the Debtors have continued in possession and management of their businesses and properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

F.      As evidenced by the affidavits of services and publication filed with the Court, proper, timely, adequate, and sufficient notice of the Sale Motion, the Auction, and the Sale

---

[2] All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Sale Motion are hereby incorporated herein to the extent not inconsistent herewith.

Hearing have been provided in accordance with Bankruptcy Code sections 102(1) and 363(b), Bankruptcy Rules 2002, 6004, 9006, 9007, 9008 and 9014, the local rules of this Court, the procedural due process requirements of the United States Constitution, and in compliance with the Bid Procedures Orders. Such notice was good and sufficient and appropriate under the particular circumstances. No other or further notice of the Sale Motion, the Auction, the Sale Hearing, or of the entry of this Order is necessary or shall be required.

G.     A reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities, including, without limitation, (i) all persons and entities that claim any interest in or lien upon the Purchased Assets; (ii) all governmental taxing authorities that have, or as a result of the sale of the Purchased Assets may have, claims, contingent or otherwise, against the Debtors; (iii) all parties that filed requests for notices under Bankruptcy Rule 9010(b) or were entitled to notice under Bankruptcy Rule 2002; (iv) all creditors (whether liquidated, contingent or unmatured) of the Debtors; (v) all interested governmental, pension and environmental entities; and (vi) the Office of the United States Trustee. Parties that expressed an interest in bidding on the Purchased Assets were provided, upon request, sufficient information to make an informed judgment on whether to bid on the Purchased Assets.

H.     The Purchased Assets are property of the Debtors' estates and title thereto is vested in the Debtors' estates.

I.     The Debtors have demonstrated a sufficient basis and the existence of exigent circumstances requiring them to enter into the Agreement and sell the Purchased Assets, as applicable under Bankruptcy Code section 363, and such actions are appropriate exercises of the

Debtors' business judgment and in the best interests of the Debtors, their estates and their creditors.

J.     The Bid Procedures set forth in the Bid Procedures Orders were non-collusive, substantively and procedurally fair to all parties and were the result of arm's length negotiations between the Debtors and St. Jerome Health Services Corporation, d/b/a/ Holy Family Home.

K.     The Debtors and their professionals have complied, in good faith, in all respects with the Bid Procedures Orders.   As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, through marketing efforts and a competitive sale process conducted in accordance with the Bid Procedures Orders, the Debtors (i) afforded interested potential purchasers a full, fair and reasonable opportunity to qualify as bidders and submit their highest or otherwise best offer to purchase all of the Purchased Assets, (ii) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Purchased Assets, (iii) considered any bids submitted on or before the Bid Deadline, and (iv) commenced the Auction on March 31, 2008.

L.     The Debtors originally announced that they had determined that the offer submitted by the Victory Center of New York LLC was the highest or otherwise best offer and that Dervaal LLC was the back-up bidder.  Subsequently, after it became apparent that Victory Center of New York LLC would likely be unable to fulfill its obligations with regard to maintaining the healthcare and nursing services to be transferred under the Asset Purchase Agreement pursuant to the Berger Recommendations, the Debtors announced they would proceed with Dervaal LLC as the Buyer.  The Buyer is the successful bidder for the Purchased Assets in accordance with the Bid Procedures Orders.  The purchase price in the Agreement is

$44.9 million.  The Bidding Procedures obtained the highest value for the Purchased Assets for the Debtors and their estates.

M.      The Agreement was amended by letter agreement on May 28, 2008 in order to, among other things, extend certain dates contemplated by the Agreement to conform to the passage of time since the entry of the Bid Procedures Order.

N.      Subsequently, on June 4, 2008, the Agreement was amended and Dervaal LLC assigned all interests and rights as Buyer under the Agreement to Sunset LG Realty LLC, a Delaware limited liability company.  The Buyer has selected Chaim Sieger, on behalf of a new limited liability company to be formed by him (the "Operator"), as its operator of the SNF and LTHHCP, and the Operator has agreed to be the operator of the SNF and LTHHCP, and has become a party to the Agreement.

O.      The offer of the Buyer, upon the terms and conditions set forth in the Agreement, including the form and total consideration to be realized by the Debtors pursuant to the Agreement, (i) is the highest and best offer received by the Debtors; (ii) is fair and reasonable; (iii) is in the best interests of the Debtors' creditors and estates; (iv) constitutes full and adequate consideration and reasonably equivalent value for the Purchased Assets; and (v) will provide a greater recovery for the Debtors' creditors and other interested parties than would be provided by any other practically available alternative.

P.      The Buyer is not an "insider" or "affiliate" of the Debtors as those terms are defined in the Bankruptcy Code.  The Buyer is a buyer in good faith, as that term is used in the Bankruptcy Code and the decisions thereunder, and is entitled to the protections of Bankruptcy Code sections 363(m) and (n) with respect to all of the Purchased Assets.  The Agreement was negotiated and entered into in good faith, based upon arm's length bargaining, and without

NEWY1\8249516.1 6/9/08

collusion or fraud of any kind. The Auction was conducted in accordance with the Bid Procedures Orders and in good faith within the meaning of Bankruptcy Code section 363(m). Neither the Debtors nor the Buyer has engaged in any conduct that would prevent the application of Bankruptcy Code section 363(m) or cause the application of or implicate Bankruptcy Code section 363(n) to the Agreement or to the consummation of the sale transaction and transfer of the Purchased Assets to Buyer and Operator. The Buyer is entitled to all the protections and immunities of Bankruptcy Code section 363(m). The Sale satisfies the requirements of Bankruptcy Code section 363.

Q. The Debtors have full corporate power and authority to execute the Agreement and all other documents contemplated thereby, and the sale of the Purchased Assets has been duly and validly authorized by all necessary corporate authority by the Debtors to consummate the transactions contemplated by the Agreement. No consents or approvals, other than as may be expressly provided for in the Agreement, are required by the Debtors to consummate such transactions.

R. The Debtors have advanced sound business reasons for seeking to enter into the Agreement and to sell and/or assume and sell and assign the Purchased Assets, as more fully set forth in the Sale Motion and as demonstrated at the Sale Hearing, and it is a reasonable exercise of the Debtors' business judgment to sell the Purchased Assets and to consummate the transactions contemplated by the Agreement. Notwithstanding any requirement for approval or consent by any person, the transfer of the Purchased Assets to the Buyer and Operator, as applicable, is a legal, valid and effective transfer of the Purchased Assets.

NEWY1\8249516.1 6/9/08

S.     The terms and conditions of the Agreement, including the consideration to be realized by the Debtors pursuant to the Agreement, are fair and reasonable, and the transactions contemplated by the Agreement are in the best interests of the Debtors' estates.

T.     Except as otherwise provided in the Agreement and this Order, the Purchased Assets shall be sold free and clear of all Encumbrances with such Encumbrances with respect to the Purchased Assets to attach to the consideration to be received by the Debtors in the same priority and subject to the same defenses and avoidability, if any, as before the Closing, and neither Buyer nor Operator would enter into the Agreement to purchase the Purchased Assets otherwise.

U.     The transfer of the Purchased Assets to Buyer and Operator, as applicable, will be a legal, valid and effective transfer of the Purchased Assets, and, except as may otherwise be provided in the Agreement, shall vest Buyer and Operator with all right, title and interest of the Debtors to the Purchased Assets free and clear of any and all Encumbrances with respect to the Purchased Assets.  Except as specifically provided in the Agreement or this Order, neither the Buyer nor Operator shall assume or become liable for any Encumbrances relating to the Purchased Assets being sold by the Debtors.

V.     The transfer of the Purchased Assets to the Buyer and Operator, as applicable, free and clear of all Encumbrances with respect to the Purchased Assets will not result in any undue burden or prejudice to any holders of any such Encumbrances as all such Encumbrances of any kind or nature whatsoever shall attach to the net proceeds of the sale of the Purchased Assets received by the Debtors in the order of their priority, with the same validity, force and effect which they now have as against the Purchased Assets and subject to any claims and defenses the Debtors or other parties may possess with respect thereto.  All persons having

Encumbrances of any kind or nature whatsoever against or in any of the Debtors or the Purchased Assets shall be forever barred estopped and permanently enjoined from pursuing or asserting such Encumbrances against the Buyer or Operator, as applicable, any of their assets, property, successors or assigns, or the Purchased Assets.

W.      The Debtors may sell the Purchased Assets free and clear of all Encumbrances of any kind or nature whatsoever with respect to the Purchased Assets because, in each case, one or more of the standards set forth in Bankruptcy Code section 363(f) has been satisfied.  Those (i) holders of Encumbrances with respect to the Purchased Assets and (ii) non-debtor parties, who did not object, or who withdrew their objections, to the sale of the Purchased Assets and the Sale Motion are deemed to have consented pursuant to Bankruptcy Code section 363(f)(2).  All objections to the Sale Motion have been resolved.  Those holders of Encumbrances with respect to the Purchased Assets who did object fall within one or more of the other subsections of Bankruptcy Code section 363(f) and are adequately protected by having their Encumbrances with respect to the Purchased Assets, if any, attach to the proceeds of the sale of the Purchased Assets ultimately attributable to the property against or in which they claim or may claim any Encumbrances, with such Encumbrances being subject to treatment as prescribed in any plan or by separate order of this Court and being subject to any claims and defenses the Debtors or other parties may possess with respect thereto.

X.      Not selling the Purchased Assets free and clear of all Encumbrances would adversely impact the Debtors' estates, and the sale of Purchased Assets other than one free and clear of all Encumbrances would be of substantially less value to the Debtors' estates.

NEWY1\8249516.1 6/9/08

Y.     The Debtors, Buyer and Operator have agreed to seek approval of the assumption or rejection of Operator Assigned Contracts and Buyer Assigned Contracts by separate motion after completing the schedules and related documents under the Agreement.

Z.     In the absence of a stay pending appeal, the Buyer will be acting in good faith, pursuant to Bankruptcy Code section 363(m), in closing the transactions contemplated by the Agreement at any time on or after the entry of this Order and cause has been shown as to why this Order should not be subject to the stay provided by Bankruptcy Rules 6004(g) and 6006(d).

AA.     The transactions contemplated under the Agreement do not amount to a consolidation, merger or *de facto* merger of the Buyer, Operator, and the Debtors and/or the Debtors' estates, there is not substantial continuity between the Buyer, Operator and the Debtors, there is no continuity of enterprise between the Debtors and the Buyer or Operator, neither the Buyer nor the Operator is a mere continuation of the Debtors or their estates, and neither the Buyer nor the Operator constitutes a successor to the Debtors or their estates.

BB.     The sale of the Purchased Assets outside of a plan of reorganization pursuant to the Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors.  The Sale does not constitute a *sub rosa* chapter 11 plan.

CC.     Pursuant to Article VIII of the Agreement, the Agreement establishes a Post-Closing Escrow to which Buyer shall look to satisfy certain indemnification claims, if any, made against Sellers under the Agreement.

DD.     The total consideration provided by the Buyer for the Purchased Assets is the highest and best offer received by the Debtors, and the Purchase Price constitutes (a) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (b) fair

NEWY1\8249516.1 6/9/08

consideration under the Uniform Fraudulent Conveyance Act and (c) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession, or the District of Columbia, for the Purchased Assets.

EE.    Time is of the essence in consummating the Sale.  In order to maximize the value of the Purchased Assets, it is essential that the sale of the Purchased Assets occur within the time constraints set forth in the Agreement.  Accordingly, there is cause to lift the stays contemplated by Bankruptcy Rules 6004 and 6006.

FF.    The Buyer and Operator shall have no obligations with respect to any liabilities of the Debtors other than the Buyer Assumed Liabilities and Operator Assumed Liabilities, respectively and their obligations under the Agreement and the Transition Agreement.

GG.    Pursuant to a loan agreement by and between the Dormitory Authority of the State of New York ("DASNY") and Victory Memorial Hospital, dated April 28, 1999 (the "Prepetition Loan Agreement"), DASNY loaned Victory Memorial Hospital the sum of $36,417,103.45 (the "Prepetition Loan") and to evidence its obligations under the Loan Agreement, Victory Memorial Hospital executed and/or delivered an FHA Insured Note and Mortgage (the "FHA Insured Mortgage Loan").

HH.    The outstanding Prepetition Loan balance is currently approximately $24,000,000 to date and includes Victory Memorial Hospital's obligation for repayment of the FHA Insured Mortgage Loan to redeem and defease the Victory Memorial Hospital FHA Insured Mortgage Hospital Revenue Bonds, Series 1999 and all of the obligations of Victory Hospital under the Pre-petition Loan Agreement (the "DASNY Bond Debt").

NEWY1\8249516.1 6/9/08

II.     On September 28, 2007, the DOH advised the Debtors, pursuant to a letter from the Commissioner of the Department of Health, that the Debtors would receive a HEAL Phase 4 Award in the amount of $25 million (the "HEAL 4 Award").

NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.     The relief requested in the Sale Motion is granted in its entirety, subject to the terms and conditions contained herein.

2.     All objections, responses, and requests for continuance concerning the Sale Motion are resolved in accordance with the terms of this Order and as set forth in the record of the Sale Hearing.  To the extent any such objection, response or request for continuance was not otherwise withdrawn, waived, or settled, it, and all reservations of rights contained therein, is overruled and denied.

3.     Notice of the Sale Hearing was fair and equitable under the circumstances and complied in all respects with 11 U.S.C. section 102(1) and Bankruptcy Rules 2002, 6004 and 6006.

*Approval of Sale*

4.     The sale of the Purchased Assets subject to and in accordance with the terms and conditions of the Agreement (including all schedules and exhibits affixed thereto) and the transactions contemplated thereby be, and hereby are, authorized and approved in all respects. The sale of the Purchased Assets satisfies the requirements of Bankruptcy Code section 363.

5.     The sale of the Purchased Assets and the consideration provided by the Buyer under the Agreement is fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law.

NEWY1\8249516.1 6/9/08

6.     Contemporaneously with the Closing, the Debtors will transfer sufficient funds to DASNY to prepay all of their obligations under the Prepetition Loan Agreement and the FHA Insured Mortgage Loan and to defease and provide for the redemption of the DASNY Bond Debt in full, except to the extent such amounts have been previously paid using funds derived from the HEAL 4 Award.  In connection with the sale of the Purchased Assets, prior to the Closing, DASNY shall receive an opinion of nationally recognized bond counsel acceptable to DASNY that the sale transaction will not affect the exclusion from gross income for federal income tax purposes of the interest on the DASNY Bond Debt.  The Debtors, the Official Committee of Unsecured Creditors appointed in Debtors' chapter 11 cases (the "Committee"), the United States Department of Housing and Urban Development ("HUD") and DASNY shall seek Bankruptcy Court approval of a stipulation that will provide for the procedures to repay the Debtors' obligations to DASNY and defeasance of the DASNY Bond Debt in accordance with the Debtors' duties under all documents related to such DASNY Bond Debt, including but not limited to  the Prepetition Loan Agreement and the FHA Insured Mortgage Loan.  Five (5) business days prior to the Closing, DASNY shall provide the Debtors and the Committee with a "pay off" statement showing the amount of the DASNY Bond Debt as of the date of the Closing, provided, however, that no less than ten (10) business days prior to Closing, the Debtors and the Committee will give DASNY written notice as to the exact date on which the Closing will occur.

7.     In addition, at the Closing, the Debtors will transfer $400,000 from proceeds of the Sale to St. Jerome Health Services Corporation as payment in full of the Break-Up Fee (as defined in the Bid Procedures Orders).

8.     The Buyer is hereby granted and is entitled to all of the protections provided to a good faith buyer under Bankruptcy Code section 363(m).

NEWY1\8249516.1 6/9/08

9. The Debtors be, and hereby are, authorized, directed to fully assume, perform under, consummate and implement the terms of the Agreement together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Agreement, this Order and sale of the Purchased Assets contemplated thereby including, without limitation, deeds, assignments, stock powers and other instruments of transfer, and to take all further actions as may reasonably be requested by the Buyer or Operator for the purpose of assigning, transferring, granting, conveying and conferring to the Buyer and Operator, or reducing to possession any or all of the Purchased Assets, Operator Assumed Liabilities or Buyer Assumed Liabilities, as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the Agreement, without any further corporate action or orders of this Court. The Debtors are further authorized to enter into that certain Transition Agreement between Victory Memorial Hospital and Chaim Sieger, dated June 4, 2008, a copy of which is attached hereto as Exhibit ~~A~~ ***B to Amendment No. 2 to the Asset Purchase Agreement (CEC)***.

10. The Debtors and each other person or entity having duties or responsibilities under the Agreement, any agreements related thereto or this Order, and their respective directors, officers, employees, members, agents, representatives, and attorneys, are authorized and empowered, subject to the terms and conditions contained in the Agreement, to carry out all of the provisions of the Agreement and any related agreements; to issue, execute, deliver, file, and record, as appropriate, the documents evidencing and consummating the Agreement, and any related agreements; to take any and all actions contemplated by the Agreement, any related agreements or this Order; and to issue, execute, deliver, file, and record, as appropriate, such other contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments,

 NEWY1\8249516.1 6/9/08

leases, or other agreements or documents and to perform such other acts and execute and deliver such other documents, as are consistent with, and necessary or appropriate to implement, effectuate, and consummate, the Agreement, any related agreements and this Order and the transactions contemplated thereby and hereby, all without further application to, or order of, the Court or further action by their respective directors, officers, employees, members, agents, representatives, and attorneys, and with like effect as if such actions had been taken by unanimous action of the respective directors, officers, employees, members, agents, representatives, and attorneys of such entities. The Debtors are further authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable governmental units any and all certificates, agreements, or amendments necessary or appropriate to effectuate the transactions contemplated by the Agreement, any related agreements and this Order, including amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtors may determine are necessary or appropriate. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act. Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by the corporation laws of the State of New York and all other applicable business corporation, trust, and other laws of the applicable governmental units with respect to the implementation and consummation of the Agreement, any related agreements and this Order, and the transactions contemplated thereby and hereby. Notwithstanding the above, if any further approvals and consents are required by the corporation laws of the State of

NEWY1\8249516.1 6/9/08

New York or any other applicable business corporation, trust or other laws of the applicable governmental units with respect to the implementation and consummation of the Agreement, the Debtors, to the extent possible, agree to make reasonable efforts to satisfy any such requirements.

11.     Effective as of the Closing, (a) the sale and transfer of the Purchased Assets by the Debtors to the Buyer and Operator, as applicable, shall constitute a legal, valid and effective transfer of the Purchased Assets notwithstanding any requirement for approval or consent by any person and shall vest Buyer and Operator, as applicable, with all right, title and interest of the Debtors in and to the Purchased Assets, free and clear of all Encumbrances of any kind with respect to the Purchased Assets, pursuant to Bankruptcy Code section 363(f), and (b) the assumption of any Operator Assumed Liabilities and Buyer Assumed Liabilities by the Operator or Buyer, respectively, shall constitute a legal, valid and effective delegation of any Operator Assumed Liabilities and Buyer Assumed Liabilities to the Operator or Buyer, and shall divest the Debtors of all liability with respect to any Operator Assumed Liabilities or Buyer Assumed Liabilities.

12.     The sale of the Purchased Assets is not subject to avoidance pursuant to Bankruptcy Code section 363(n).

*Transfer of Purchased Assets*

13.     Upon the Closing, the Debtors shall be, and hereby are, authorized, empowered, and directed, pursuant to Bankruptcy Code sections 105 and 363(b), to sell and transfer the Purchased Assets to the Buyer and Operator, as applicable, pursuant to the terms and conditions of the Agreement.   The sale of the Purchased Assets shall vest Buyer and Operator, as applicable, with all right, title and interest of the Debtors to the Purchased Assets free and clear of any and all Encumbrances and other liabilities and claims, whether secured or unsecured,

NEWY1\8249516.1 6/9/08

choate or inchoate, filed or unified, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, disputed or undisputed, or known or unknown, whether arising prior to or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity or otherwise, with all such Encumbrances to attach only to the proceeds of the sale (if any) with the same priority, validity, force, and effect, if any, as they now have in or against the Purchased Assets, subject to all claims and defenses the Debtors or other parties may possess with respect thereto. Following the Closing Date, no holder of Encumbrances with respect to the Purchased Assets shall interfere with the Buyer's or Operator's, as applicable, use and enjoyment of the Purchased Assets based on or related to such Encumbrances, or any actions that the Debtors may take in their chapter 11 cases and no person shall take any action to prevent, interfere with or otherwise enjoin consummation of the transactions contemplated in or by the Agreement or this Order.

14. The provisions of this Order authorizing the sale of the Purchased Assets free and clear of Encumbrances with respect to the Purchased Assets, other than Operator Assumed Liabilities or Buyer Assumed Liabilities, shall be self-executing, and neither the Debtors, Buyer nor Operator shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Order. However, the Debtors, Buyer, Operator and each of their respective officers, employees and agents are hereby authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Debtors, Buyer or Operator deem necessary or appropriate to implement and effectuate the terms of the Agreement and this Sale Order. Moreover, effective as of the Closing, the Buyer, Operator, and their successors and assigns, shall be authorized to demand and receive any and all of the Purchased Assets, and from

time to time to institute and prosecute, for the benefit of the Buyer, Operator or their successors and assigns, any and all proceedings at law, in equity or otherwise, which the Buyer, Operator or their successors and assigns, may deem proper for the collection or reduction to possession of any of the Purchased Assets, and to do all acts and things with respect to the Purchased Assets which the Buyer, Operator or their successors and assigns, shall deem desirable.

15.     On or before the Closing Date, the Debtors' creditors are authorized and directed to execute such documents and take all other actions as may be necessary to release any Encumbrances of any kind against the Purchased Assets, as such Encumbrances may have been recorded or may otherwise exist.  If any person or entity that has filed financing statements or other documents or agreements evidencing any Encumbrances in or against the Purchased Assets shall not have delivered to the Debtors prior to the Closing after request therefor, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all such Encumbrances that the person or entity has with respect to the Purchased Assets, the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to such Purchased Assets prior to the Closing, and the Buyer is authorized to file such documents after the Closing.

16.     All of the Debtors' interests in the Purchased Assets to be acquired by the Buyer or Operator, as applicable, under the Agreement shall be, as of the Closing Date and upon the occurrence of the Closing, transferred to and vested in the Buyer or Operator, as applicable. Upon the occurrence of the Closing, this Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Purchased Assets acquired by the Buyer and Operator, as applicable, under the Agreement and/or a bill of

sale or assignment transferring good and marketable, indefeasible title and interest in the Purchased Assets to the Buyer or Operator, as applicable.

17. Except as expressly provided in the Agreement, neither the Buyer nor the Operator is assuming nor shall they or any affiliate of Buyer or Operator be in any way liable or responsible, as a successor or otherwise, for any liabilities, debts, or obligations of the Debtors in any way whatsoever relating to or arising from the Debtors' ownership or use of the Purchased Assets prior to the consummation of the transactions contemplated by the Agreement, or any liabilities calculable by reference to the Debtors or their operations or the Purchased Assets, or relating to continuing or other conditions existing on or prior to consummation of the transactions contemplated by the Agreement, which liabilities, debts, and obligations are hereby extinguished insofar as they may give rise to liability, successor or otherwise, against Buyer, Operator or any affiliate of the Buyer or Operator.

18. Except as otherwise provided in the Agreement, on the Closing Date, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release their respective interests in or claims against the Purchased Assets, if any, as may have been recorded or may otherwise exist.

19. Except as otherwise expressly provided in the Agreement, all persons or entities, presently or on or after the Closing Date, in possession of some or all of the Purchased Assets are directed to surrender possession of the Purchased Assets to the Buyer or Operator, as applicable, on the Closing Date or at such time thereafter as the Buyer or Operator may request.

*Operator Assigned Contracts and Buyer Assigned Contracts*

20. Subject to the terms of the Agreement and the occurrence of the Closing Date, the Debtors, Buyer and Operator have agreed to file a separate motion seeking the assumption of the Buyer Assigned Contracts and Operator Assigned Contracts by the Debtors and the assignment

NEWY1\8249516.1 6/9/08

of same to Buyer or Operator, respectively, as provided for or contemplated by the Agreement such that the motion will be heard prior to the Closing.

*Additional Provisions*

21.     Except as provided herein, each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement and this Order.

22.     Neither Buyer nor Operator has assumed or is otherwise obligated for any of the Debtors' liabilities other than the Buyer Assumed Liabilities or Operator Assumed Liabilities, respectively, as set forth in the Agreement, and neither the Operator nor Buyer has purchased any of the Excluded Assets.  Consequently, all persons (as defined in Bankruptcy section 101(41)), governmental units (as defined in Bankruptcy Code section 101(27)) and all holders of Encumbrances based upon or arising out of liabilities retained by the Debtors are hereby enjoined from taking any action against the Buyer, Operator or the Purchased Assets to recover any such Encumbrances or from taking any action against the Buyer, Operator or the Purchased Assets on account of any liabilities of the Debtors other than Operator Assumed Liabilities or Buyer Assumed Liabilities pursuant to the Agreement.  All persons and entities holding or asserting any Encumbrances with respect to the Excluded Assets are hereby enjoined from asserting or prosecuting such Encumbrances against the Buyer, Operator or the Purchased Assets for any liability associated with the Excluded Assets.

23.     Neither Buyer nor Operator is a "successor" to the Debtors or their estates by reason of any theory of law or equity, and neither the Buyer nor Operator shall assume, or be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates including, but not limited to, any bulk sales law, successor liability

or similar liability except as otherwise expressly provided in the Agreement. Except to the extent the Buyer or Operator assumes the Buyer Assumed Liabilities or Operator Assumed Liabilities, respectively, pursuant to the Agreement, as applicable, neither the purchase of the Purchased Assets by the Buyer, Operator or their affiliates, nor the fact that the Buyer or Operator, or their affiliates are using any of the Purchased Assets previously operated by the Debtors, will cause the Buyer, Operator or any of their affiliates to be deemed a successor in any respect to the Debtors' businesses within the meaning of any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, environmental, or other law, rule or regulation (including without limitation filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine, or under any product warranty liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine. Except to the extent expressly included in the Buyer Assumed Liabilities or Operator Assumed Liabilities, Buyer, Operator and their affiliates shall have no liability or obligation under the WARN Act (29 U.S.C. §§ 210 et seq.) or the Comprehensive Environmental Response Compensation and Liability Act, or any foreign, federal, state or local labor, employment, or environmental law by virtue of the Buyer's purchase of the Purchased Assets, transfer of the Operator Assets to the Operator, or assumption of the Operator Assumed Liabilities or Buyer Assumed Liabilities. Nothing in this paragraph 23 shall be construed to exceed the maximum protections provided by the Bankruptcy Code to Buyer and Operator, including, but not limited to, Bankruptcy Code section 363.

24.     Except to the extent expressly included in the Operator Assumed Liabilities and Buyer Assumed Liabilities, pursuant to Bankruptcy Code sections 105 and 363, all persons and entities, including, but not limited to, the Debtors, all debt security holders, equity security

NEWY1\8249516.1 6/9/08

holders, the Debtors' employees or former employees, governmental, tax and regulatory authorities, lenders, parties to or beneficiaries under any benefit plan, trade and other creditors asserting or holding an Encumbrance or interest of any kind or nature whatsoever against, in or with respect to any of the Debtors or the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Debtors, the Purchased Assets, the operation of the Debtors' businesses prior to the Closing Date or the transfer of the Purchased Assets to the Buyer or Operator, shall be forever barred, estopped, and permanently enjoined from asserting, prosecuting or otherwise pursuing such Encumbrance or interest against the Buyer, Operator or the Purchased Assets. For the avoidance of doubt, the foregoing shall not prevent the Debtors, their estates, successors or permitted assigns from pursuing claims, if any, against the Buyer or Purchaser and/or their successors and assigns in accordance with the terms of the Agreement.

25.     Subject to the terms of the Agreement, the Agreement and any related agreements may be waived, modified, amended, or supplemented by agreement of the Debtors, Buyer and Operator without further action or order of the Court; provided, however, that any such waiver, modification, amendment, or supplement is not material and substantially conforms to, and effectuates, the Agreement and any related agreements, and the Committee is given notice thereof with an opportunity to object thereto.

26.     The failure specifically to include any particular provisions of the Agreement or any related agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtors, the Operator and the Buyer that the Agreement and any related agreements are authorized and approved in their entirety with such

NEWY1\8249516.1 6/9/08

amendments thereto as may be made by the parties in accordance with this Order prior to the Closing.

27.     No bulk sale law or any similar law of any state or other jurisdiction shall apply in any way to the sale and the transactions contemplated by the Agreement.

28.     To the extent any provisions of this Order conflict with the terms and conditions of the Agreement, this Order shall govern and control.

29.     This Order and Agreement shall be binding upon and govern the acts of all persons and entities, including without limitation, the Debtors, the Operator and the Buyer, their respective successors and permitted assigns, including, without limitation, any Chapter 11 trustee hereinafter appointed for the Debtors' estates or any trustee appointed in a Chapter 7 case if any of these cases are converted from Chapter 11, all creditors of any Debtor (whether known or unknown), filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Purchased Assets.

30.     The provisions of this Order are non-severable and mutually dependent.

31.     Nothing in any order of this Court or contained in any plan of reorganization or liquidation confirmed in these Chapter 11 cases, or in any subsequent or converted cases of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code, shall conflict with or derogate from the provisions of the Agreement or the terms of this Order.

32.     Notwithstanding Bankruptcy Rules 6004, 6006 and 7062, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  In the absence of any person or entity obtaining a stay pending appeal, the Debtors and the Buyer

NEWY1\8249516.1 6/9/08

are free to close under the Agreement at any time, subject to the terms of the Agreement. In the absence of any person or entity obtaining a stay pending appeal, if the Debtors and the Buyer close under the Agreement, the Buyer shall be deemed to be acting in "good faith" and shall be entitled to the protections of Bankruptcy Code section 363(m) as to all aspects of the transactions under and pursuant to the Agreement if this Order or any authorization contained herein is reversed or modified on appeal.

33.     The transfer of the Purchased Assets pursuant to the Agreement is a transfer pursuant to Bankruptcy Code section 1146(a) and, accordingly, shall not be taxed and/or shall not be subject to any tax under any federal, state, local, municipal or other law imposing or claiming to impose a stamp tax, transfer, or any other similar tax on any of the Debtors' transfers or sales of real estate, personal property or other assets owned by the Debtors or transferred in connection with the Sale. Each and every federal, state and local government agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transfer of any of the Purchased Assets, all without imposition or payment of any stamp tax, transfer tax, or similar tax.

34.     The Buyer, the Operator and their principals and officers, and the Operator, shall, within 5 days of entry of this Order, submit to the New York State Department of Health ("NYDOH") all personal qualifying information, schedules, reference letters and completed questionnaires required by the NYDOH to assess and determine the character and competence of the Buyer and Operator, their principles, partners, operators and any their parties to obtain licenses to operate the SNF and LTHHCP.

35.     Prior to the Closing, neither the Buyer nor the Operator shall apply for or otherwise seek to have an emergency room or an emergency department in connection with or in any way relating to the SNF and LTHHCP.

36.     The proceeds of the Sale will be held (escrowed, segregated, or some other manner), the precise manner of which shall be determined by a subsequent Order to be entered by this Court (after notice) prior to the Closing.

*Back up Bidder*

37.     If, for any reason, the Debtors and the Buyer fail to close under the Agreement, the Debtors are authorized to immediately pursue a closing for the sale of the Purchased Assets with St. Jerome Health Services Corporation (the "Back-Up Bidder") for a purchase price of no less than $42,900,000.

NEWY1\8249516.1 6/9/08

38.     This Court shall retain exclusive jurisdiction to enforce the terms and provisions of this Order and the Agreement in all respects and to decide any disputes concerning this Order, the Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Agreement and this Order including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Purchased Assets and any Operator Assigned Contracts or Buyer Assigned Contracts and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the Purchased Assets free and clear of all Encumbrances.  To the extent there are any inconsistencies between the terms of this Order and the Agreement, the terms of this Order shall control.

Dated: June __30__, 2008
        Brooklyn, New York

                                        _s/Carla E. Craig_____
                                        HONORABLE CARLA E. CRAIG
                                        CHIEF U.S. BANKRUPTCY JUDGE

NEWY1\8249516.1 6/9/08