**DLA PIPER US LLP**
1251 Avenue of the Americas
New York, New York 10020-1104
Tel: (212) 335-4500
Fax: (212) 335-4501
Timothy W. Walsh (TW-7409)
John P. McNicholas (JM-0694)

Attorneys for Victory Memorial Hospital, et al.
Debtors and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

In re:                           :

                                 :      Chapter 11

VICTORY MEMORIAL HOSPITAL, et al.,  :

                                 :      Case Nos. 06-44387, 06-44388
                                 :      and 06-44389

                 Debtors.    :

                                 :      (Jointly Administered)

--------------------------------------------------------------X

### VICTORY MEMORIAL HOSPITAL'S MOTION FOR APPROVAL OF THE LEASE AGREEMENT BETWEEN VICTORY MEMORIAL HOSPITAL, INC. AND STATE UNIVERSITY OF NEW YORK FOR AND ON BEHALF OF THE STATE UNIVERSITY OF NEW YORK – DOWNSTATE MEDICAL CENTER

Victory Memorial Hospital, debtor and debtor in possession (the "Debtor"), by its attorneys, DLA Piper US LLP ("DLA Piper"), as and for its motion (the "Motion") for approval of the Lease Agreement between Victory Memorial Hospital and the State University of New York for and on behalf of the State University of New York – Downstate Medical Center ("SUNY Downstate"), in support thereof, the Debtor respectfully represents as follows:

# I.    JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicate for the relief requested herein is section 105 of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

# II.    BACKGROUND

2.      On November 15, 2006, (the "Petition Date"), the Debtor, together with its subsidiaries set forth below, filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

3.      The Debtor remains in possession of its assets and continues to manage its business as a debtor in possession pursuant to Bankruptcy Code sections 1107 and 1108.

4.      On November 28, 2006, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code.

5.      The Debtor filed its petition together with its subsidiaries, Victory Memorial Ambulance Service ("Victory Ambulance") and Victory Pharmacy Services ("Victory Pharmacy").

6.      The Debtor is a not-for profit, voluntary hospital located in Bay Ridge, Brooklyn and is a full service acute care hospital with a nursing home.  The Debtor has been providing a

full range of medical services with a focus on community care and a program of community outreach to the Brooklyn community since approximately 1900.

7.  Victory Ambulance and Victory Pharmacy are no longer operating.

**A.  Berger Recommendations.**

8.  On January 1, 2007, the mandates of the New York State Commission on Healthcare Facilities in the 21st Century (the "Berger Mandates"). The Berger Mandates require the closure of the Debtor's acute-care facility by and a continuation of the Debtor's skilled nursing, ambulatory, and home health care programs.

**B.  Wind Down.**

9.  The Debtor is completing its "winding down" process in connection with its acute care operations in accordance with the Berger Mandates.

**C.  Debtors' Motion to Approve Primary Asset Sale.**

10.  In an effort to comply with the Berger Mandates, the Debtor and the solicited potential purchasers and on February 6, 2008, the Debtor filed the Sale Motion with the Court seeking approval of (a) the bid procedures relating to the sale; and (b) the sale of the Debtor's assets.

11.  The Debtor conducted an auction and Dervaal, LLC ("Dervaal" or "Purchaser") was ultimately selected as the highest and best bidder. The sale was approved by the Bankruptcy Court by order dated June 20, 2008.

## III.  THE SUNY DOWNSTATE LEASE

12.  The Debtor has attached to this Motion as Exhibit A, a lease (the "Lease") for

140,100 square foot space at the Debtor's Main Facility with SUNY Downstate (the "Premises"). The lease is subject to the approval of, among other persons and agencies, the State Comptroller. The Lease will take effect once all approvals are obtained and, of course, is subject to the approval of this Court.[1]

13. SUNY Downstate is the only academic medical center in Brooklyn and serves a diverse population of over 2 million people. SUNY downstate admits over 13,000 inpatients, over 10,000 ambulatory surgery patients and over 160,000 outpatients each year.

14. The Base Rent under the Lease is $25.00 per square foot. Pursuant to the Lease, the Debtor will supply SUNY Downstate with, among other things, utilities and maintenance.

15. The Debtor believes that the current market value of square footage of the Main Facility is in the area of $25.00 per square foot. Given the volume of the space to be leased, the proposed use of the Premises and the totality of the circumstances, the Debtor believes that $25.00 per square feet is indeed reasonable. The Lease will provide the Debtor with over $291,000.00 in monthly rent.

## A. DOH's Approval of Debtor's Request to Have SUNY Downstate Provide Berger Commission Mandated Services at the Premises

16. On or about June 13, 2008, the Debtor requested the approval of the New York State Department of Health ("DOH") to have SUNY Downstate operate services related to Urgent Care, Diagnostic Radiology, Outpatient Clinics including Primary Care, Nutrition, Well Child, Pediatric and Podiatry (collectively, the "Services").

---

[1] The Debtor believes that Dervaal is negotiating a new lease with SUNY Downstate for the Dervaal APA post-closing period, or in the alternative will assume this Lease.

17.     By letter dated June 24, 2008 (the "DOH Approval Letter"), the DOH, on an emergency basis, approved, effective June 28, 2008, the Debtor's request. A copy of the Letter is annexed hereto as Exhibit B. Hence, as of July 8, 2008, SUNY Downstate will begin to use the Premises to provide the Services, consistent with the DOH Approval Letter.

18.     All of the Services being performed and to be performed by SUNY Downstate at the Premises will keep the Debtor Berger Mandate compliant, and, as set forth below, permit the Debtor to significantly reduce its work force at a substantial savings. Moreover, SUNY Downstate has or will hire a substantial number of the Debtor's employees to provide the Services.

19.     The Debtor's Counsel has discussed the foregoing transition of Services with Committee counsel. The Committee supports the immediate transition and reserves its rights in connection with the Lease Approval Motion.

20.     Approval of the Lease, in effect, will permit SUNY Downstate to have a formal Lease for its occupation of the Premises and provide the Debtor with approximately of $291,000 in rent, per month.

**B.      The Lease Will Promote Transition of the Premises to the Purchaser**

21.     The term of the lease expires after a period of five (5) years[2] or the earlier of date upon which is 30 days after SUNY Downstate receives notice from the Debtor that a closing of an asset purchase agreement involving the Main Facility will occur or the date upon which the term of this Lease shall be canceled or terminated pursuant to any of the conditions or covenants

---

[2]     The Debtor is informed that a five (5) year stated term is required most leases involving New York State and its agencies. Nevertheless, the Lease may be terminated sooner as set forth in the Lease and this Motion.

of the Lease or pursuant to law.

22. The Debtor believes that its Purchaser may desire to continue to have SUNY Downstate lease the Premises pursuant to substantially same terms as those contained in the Lease. Nevertheless, the Lease contains the following termination provisions:

> LESSOR'S RIGHT TO TERMINATE. LESSEE recognizes that LESSOR has entered into a bona-fide contract for the sale or other disposition of the Building, and as a material inducement to LESSOR'S execution of the Lease and, in addition to the LESSOR'S right to terminate otherwise this Lease because of the occurrence of Expiration Date in paragraph 1, LESSEE agrees that if LESSOR determines (a) in good faith as part of the restructuring or other reorganization or liquidation of LESSOR that a conveyance or other disposition of the Building is necessary or warranted, or (b) LESSOR, in good faith, is required to vacate or substantially vacate the Building and determines it is not economically viable to permit LESSEE's continued occupancy of the Leased Premises, then, in any such event, LESSOR or such bona-fide purchaser or transferee shall have the right to terminate or reject this Lease provided and on condition that LESSOR give LESSEE at least sixty (60) days prior written notice (the "TERMINATION NOTICE"), which notice shall set forth the date on which this Lease shall terminate (the "TERMINATION DATE"). LESSOR shall not be responsible for any damages, penalties or liabilities arising directly from proper termination hereof pursuant to this Section 42. In the event of the giving of such Termination Notice, this Lease and the term and estate hereby granted (unless the same shall have expired sooner pursuant to any of the conditions of limitation or other provisions of this Lease *or pursuant to* law) shall terminate on the Termination Date with the same effect as if such date were the date hereinbefore specified for the expiration of the Term of this Lease, and LESSEE shall vacate and surrender to LESSOR possession of the Leased Premises on or before the Termination Date in the condition otherwise required on the date hereinbefore specified for the expiration of the Term of this Lease. Notwithstanding the foregoing or anything to the contrary herein, in the event of termination pursuant hereto, to the extent that a longer period shall be either (i) practically necessary to effectuate such termination, (ii) in the best interest of the patients of such organization or (iii) legally required or administratively prescribed for the termination of leases with healthcare providing organizations, in which case the Termination Date shall be extended as is necessary to effectuate orderly termination hereof.

(the "Termination Provision").

23.     The Termination Provision gives the Debtor the ability to properly terminate the Lease without penalty, damages, rejection damages, administrative claims or other liability, on sixty (60) days notice to SUNY Downstate.

24.     The Lease may also be assigned to the Purchaser. The forgoing provisions are expected to enhance a smooth transition of the Premises to Dervaal, while at the same time considering the needs of SUNY Downstate.

## IV.     THE RELIEF SOUGHT SHOULD BE GRANTED

25.     Bankruptcy Code section 363(b)(1) provides, in pertinent part, that ' [t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. 363(b)(1). In re Brooklyn Hosp. Ctr., 341 B.R. 405, 411.

26.     "In other words, where, as here, the debtor proposes to enter into a transaction out of the ordinary course that will involve a commitment of the estate's assets . . . , the approval of the Court, after a hearing, is required." Id. at 410.

27.     In determining whether to approve a lease or sale, other than in the ordinary course of business pursuant to 363(b)(1), the courts will apply the business judgment rule which:

> is a presumption that in making a business decision, the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.

Id. (quoting In re Adelphia Communications Corp., 2003 Bankr. LEXIS 1281 (Bankr. S.D.N.Y. 2003)).

28.     Here, the Debtor believes that it has clearly satisfied the business judgment rule in proposing to lease the Leased Premises to SUNY Downstate for several reasons.

## A. The Benefits of the Lease to the Debtor's Estate

29. The benefits to the Debtor's estate are numerous. First, the new Lease will generate over $291,000 per month in additional income for the Debtor at a time when the Debtor is strapped for cash and winding down its operations.

30. Second, pursuant to and consistent with the Berger Mandates, the Debtor is required to maintain certain services, including but not limited to, urgent care and related clinics. As a result of the Lease, SUNY Downstate will be able to continue to provide these essential services to the community and keep the Debtor Berger Mandate compliant. In addition, the Court is respectfully reminded that the DOH has approved the provision of these Services by SUNY Downstate.

31. Relatedly, because SUNY Downstate will be providing many of the Berger Mandate required services, the Debtor will be able to substantially reduce its work force by 100 employees. A substantial number of these employees will be hired by SUNY Downstate. The net result of salary and benefit savings to the Debtor is expected to amount to nearly $500,000 per month.

32. Entering into the new Lease with SUNY Downstate is subject to the approval of the Purchaser, the State Comptroller, NYSDOH, HUD and DASNY and the Debtor is actively working to obtain those consents. In addition, the rent obtained from the Lease constitutes DASNY's cash collateral and will be utilized in accordance with applicable cash collateral budgets.

## V. NOTICE

33. Notice of this application has been given to: (i) counsel for the Official Committee of Unsecured Creditors, Alston & Bird LLP, 90 Park Avenue, New York, New 10016, Attn:

Martin G. Bunin, Esq. and Craig Freeman, Esq.; (ii) the Office of the United States Trustee, 33 Whitehall Street. 22nd Floor. New York. New York 10001 271 Cadman Plaza East, Suite 4529, Brooklyn, New York 11201, Attn: Brian Hufnagel, Esq.; (iii) counsel to 1199SEIU United Healthcare Workers East, the 1199SEIU National Benefit Fund for Health and Human Service Employees, the 1199SEIU Health Care Employees Pension Fund, the League/1199SEIU Training and Upgrading Fund, the 1199SEIU/Employer Child Care Fund, and the 1199SEIU/League Job Security Fund, Levy Ratner, P.C., 80 Eight Avenue, New York, New York 10011, Attn: Suzanne Hepner, Esq.; (iv) counsel to the Dormitory Authority of the State of New York, Sidley Austin LLP, 787 Seventh Avenue, New York, New York 10019, Attn: Geoffrey Raicht, Esq.; (v) counsel to Madison Realty Capital, L.P., Fulbright & Jaworski, L.L.P., 666 Fifth Avenue, New York, New York 10103, Attn: David A. Rosenzweig, Esq.; (vi) counsel to Maimonides Medical Center; Manatt, Phelps & Philips, LLP, 11355 West Olympic Boulevard, Los Angeles, California 90064, Attn: Alan M. Feld, Esq.; (vii) counsel to Pension Benefit Guaranty Corporation, Stephanie Thomas, Esq., 1200 K Street, N.W., Washington, D.C. 20005; (viii) counsel to Dervaal Group, c/o Frenkel, Hershkowitz & Shafran LLP, 16 East 34th Street, New York, NY 10016, Attn: Joseph M. Hershkowitz; and (ix) Jeffrey G. Schneider, Esq., Hogan & Hartson, 875 Third Avenue, New York, New York 10022, counsel to SUNY Downstate.

## VI.    NO PREVIOUS RELIEF REQUESTED

34.    The Debtor has not previously sought the relief requested herein from this or any other Court.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order approving the Lease Agreement between Victory Memorial Hospital and SUNY downstate and grant such other and further relief as just and proper.

Dated: New York, New York
      July 1, 2008

                                **DLA PIPER US LLP**

                                  /s/John P. McNicholas
                                Timothy W. Walsh (TW 7409)
                                John P. McNicholas (JM-0694)
                                1251 Avenue of the Americas
                                New York, NY  10020-1104
                                Telephone: (212) 335-4500
                                Facsimile:  (212) 335-4501

                                Attorneys for Victory Memorial Hospital, et al.
                                Debtors and Debtors in Possession

EXHIBIT A

## LEASE AGREEMENT

This **LEASE AGREEMENT** (this "Lease") is entered into on this the   day of  , 2008,  by  and between **VICTORY MEMORIAL HOSPITAL, INC.,** debtor and "debtor-in-possession" ("VICTORY" or "LESSOR"), and the **State University of New York**, with its principal office located at State University Plaza, Albany, NY 12246 (hereinafter referred to as "State University" or "Tenant") for and on behalf of the **STATE UNIVERSITY OF NEW YORK – DOWNSTATE MEDICAL CENTER**, Brooklyn, New York 11203-2098 (hereinafter referred to as "LESSEE").

For valuable consideration, the receipt and sufficiency of which is hereby acknowledged, LESSOR and LESSEE do hereby covenant, contract and agree as follows:

1.      **PREMISES AND TERM:**  LESSOR, hereby leases to LESSEE for a five year term commencing   , 2008 (the "Commencement Date") and ending on the preceding day five years later (the "Expiration Date") or on such earlier date upon which is 30 days after LESSEE receives notice from LESSOR that a closing of an asset purchase agreement involving the Building (as hereinafter defined) will occur or the date upon which the term of this Lease shall be canceled or terminated pursuant to any of the conditions or covenants of this Lease or pursuant to law, (the "Term"), approximately 140,100 square feet of the building located at 699 92nd Street, Brooklyn, New York (the "BUILDING"), as follows: 26,223 square feet in the portion of the Building known as the "Cellar"; 35,743 square feet located on the first floor of the Building 30,834 square feet located on the second floor of the Building; 41,390 square feet an the third floor of the Building; 4,357 square feet located on the fourth floor of the Building; and 1,553 square feet located on the sixth floor of the Building (collectively, the "Leased Premises"). LESSEE also has a right for the benefit of LESSEE, its employees, agents and invitees for access *to* and from the Leased Premises through the building and over property of LESSOR adjoining the Leased Premises, and to use the parts of the building designated by LESSOR for use by LESSEE, including but not limited to toilet rooms, elevators and unrestricted parking areas, if any.

2.     **BASE RENT:** The LESSEE covenants to pay to LESSOR as Rent the sum of Three Million Five Hundred Two Thousand Five Hundred Dollars ($3,502,500.00) per annum, ("Rent"), payable in equal monthly installments of Two Hundred Ninety-One Thousand Eight Hundred Seventy-Five Dollars ($291,875.00), in advance, thirty days following receipt of a Proper Invoice (as defined under Article XI-A of State Finance Law), in accordance with the terms of Article XI-A of State Finance Law ("Article XI-A").  LESSEE's payment obligations shall commence upon the Commencement Date.  To the extent that the Expiration Date occurs on other than the first day of a calendar month, the Rent for such month shall be prorated.  Notwithstanding the foregoing, LESSEE shall pay Rent for the first month prior to the Commencement Date hereof.

Any payment by LESSEE or acceptance by LESSOR of a lesser amount than shall be due from LESSEE to LESSOR shall be treated as payment on account. The acceptance by LESSOR of a check for a lesser amount with an endorsement or statement thereon, or upon any letter accompanying such check, that such lesser amount is payment in full, shall be given no effect, and LESSOR may accept such check without prejudice to any other rights or remedies which LESSOR may have against LESSEE. Rent shall be made payable to the LESSOR, and sent to the address set

forth in the provision governing notices hereunder, or as otherwise designated by LESSOR in writing and shall be made by good and sufficient check.

3.      **INTEREST PAYMENTS**: LESSOR's sole remedy for LESSEE's failure to make any undisputed payments when due shall be interest payments pursuant to the provisions of Article XI-A, and, to the extent applicable, the remedies available to LESSOR in an Event of Default, as set forth in Section 9 and 10 hereinafter.

4.      **BUILDING SERVICES.** LESSOR shall furnish LESSEE with the following services, which shall be furnished without additional cost to LESSEE: (a) hot and cold water for use in the Leased Premises; (b) heat, and air conditioning in season as reasonably necessary for LESSEE's reasonable comfort and/or as otherwise required in accordance with any applicable regulations, industry standards or other rules governing heating, air conditioning or temperature maintenance arising from LESSEE's use of the Leased Premises; (c) standard janitorial service on business days; (d) Elevator service (24 hours per day, 7 days per week, 365 days per year); (e) Electricity, in accordance with the terms and provisions of Section 5 below, (f) the removal of ice, snow aid debris from the exterior walkways of the Building, and (g) Pest Removal/Control (as described in Section 4a below), and (h) Indoor parking (10 spaces in the second (2nd) floor garage). If LESSEE'S use, floor covering or other improvements require special services in excess of the standard services for the Building, LESSEE shall *pay* the additional cost attributable to such services. LESSOR shall not, except as specified herein, be liable to LESSEE for any interruption or curtailment of any heating, lighting, ventilating, air-conditioning, gas, steam, power., water, waste disposal, electricity, labor or other service by reason of fire, casualty or accident, strike, labor dispute, failure of sources of supply, act of God, riot or civil disturbance, law, cider, rule or regulation of any government authority or by reason of any other similar or dissimilar cause beyond the reasonable control of LESSOR and such interruption or curtailment shall not constitute any claim of constructive eviction. Notwithstanding the foregoing, to the extent that any such interruption or curtailment interferes with, and/or otherwise materially adversely affects, LESSEE's use, occupancy and enjoyment of the Leased Premises, rent shall abate during such interruption or curtailment, and, if the interruption or curtailment remains un-remedied by LESSOR for an extended period (beyond the curative period specified in Section 9(b)), LESSEE may terminate this Lease and its obligations hereunder without penalty.

4a.      **PEST REMOVAL/CONTROL:** LESSOR shall implement and maintain at its cost an Integrated Pest Management ("IPM") program for the Building in which the Leased Premises are located. The program shall provide for an overall plan which minimizes the use of toxic pesticides, and provides for on-going, practical, least-toxic approach to preventing and/or treating pest infestation. It shall provide for technical training for the LESSOR's employees directly involved in IPM, where applicable; establish an inspection program to identify infested zones, type of infestation, and pest population levels; and detail procedures to be implemented should a pest infestation problem develop.

LESSOR shall initially employ non-chemical means to eliminate pest infestation, localizing treatment whenever necessary to a defined affected area, using baits and traps rather than traditional chemical applications. At a minimum semi-annual inspections (spring and fall) shall be conducted by the LESSOR or an agent thereof to identify and correct structural

conditions allowing pests access (interior and exterior cracks, openings, crevices and ledges. etc.). The preventative measures of this program shall include controls to ensure proper cleaning/maintenance, handling and disposal of food and organic waste products, and reviews of environmental conditions or tenant practices that increase the potential for pest problems.

Application of pesticides should be avoided unless subsequent inspection or monitoring indicates the continued presence of pests in a specific area after non-chemical means have been exhausted or have been found to be ineffective. An actual specimen or recent sign of the pest must be confirmed before pesticides are applied. The least toxic pesticide, of the pesticides available to treat a specific problem, shall be selected. All pesticides used must be registered with the EPA and appropriate state and/or local jurisdictions, and use of all pesticides shall be in strict accordance with the manufacturer's label instructions and all applicable federal, state and local laws and regulations.

LESSOR and LESSEE shall each designate an on-site liaison to review and coordinate necessary IPM Building activities. LESSEE shall be given an opportunity to review, and reasonable time to comment on the content of, and coordinate with the schedule of events specified in, the IPM program. This opportunity will be provided through notification from LESSOR prior to the implementation of the IPM plan. Pesticide treatment(s), when necessary, shall be scheduled for late Friday afternoons or evenings unless alternative times for such treatment applications are scheduled by mutual agreement with LESSEE IPM liaisons. LESSEE shall be notified of the location(s) of planned pesticide and herbicide treatments 24 hours prior to chemical application(s). LESSOR shall furnish LESSEE IPM liaisons with Material Safety Data Sheets ("MSDS") for all pesticides and herbicides in use and pending use prior to any use of interior or exterior to the Building.

5.      **ELECTRICITY**: LESSOR shall furnish to LESSEE the electric energy in the Leased Premises through the presently installed electrical facilities, which electricity LESSOR warrants and agrees shall support LESSEEs use of the Leased Premises (as described in Section 6a hereinafter), including, but not limited to, its lighting, medical and general office equipment needs. LESSEE acknowledges that the sum of ____ per rentable square foot per annum (the "ELECTRICITY AMOUNT") is included as part of the Rent, to compensate LESSOR for the electrical wiring and other installations necessary for, and for its obtaining and redistribution of, electric current as an additional service, and that the initial Electricity Amount, which shall be subject to periodic adjustments as herein provided, has been partially based upon LESSEE's estimated connected electrical load and hours of use thereof for ordinary lighting and light office equipment for use by LESSEE during the tern hereof. The "Electricity Amount" shall mean the amount determined by applying the estimated connected electrical load and usage thereof in the Leased Premises to the rate charged for such load and usage in the service classification pursuant to which LESSOR then purchased electric current for the entire Building from the public utility corporation. If the cost to LESSOR of electricity shall have been, or shall be, increased subsequent to such applicable date (whether such increase occurs prior to or during the Term of this Lease), by charge in LESSOR's electric rates, charges, fuel adjustment, or service classifications, or by taxes or charges of any kind imposed thereon, or for any other such reason, then the Electricity Amount shall be increased in the same percentage.

LESSEE shall make no changes, alterations, additions, substitutions ("CHANGES") to any risers, conduits, meters, panel boxes, switch gear, wiring, or any other part of the electric service without the express prior written consent of LESSOR. Any Changes requested by LESSEE shall be sent in writing to LESSOR; and if, in the reasonable judgment of LESSOR, such Changes will not cause or create a dangerous or hazardous condition or damage or injury to the Building, or entail excessive or unreasonable alterations or repairs, or interfere with or disturb other lessees or occupants and/or the electrical service then or *thereafter* to be supplied to lessees or occupants, LESSOR will, at the sole cost and expense of LESSEE, make such Changes. LESSEE covenants and agrees to pay LESSOR for such reasonable and actual costs and expenses as additional *rent,* within thirty (30) days after rendition of a bill indicating the amount due therefor.

6. **CONDITION OF PREMISES; USE OF PREMISES:** LESSOR agrees that LESSEE, upon paying the Rent and on performing all terms of this lease, shall peaceably enjoy the Leased Premises during the Term of this Lease. By occupying the Leased Premises as a LESSEE, or installing fixtures, facilities, or equipment or performing finished work, LESSEE shall be deemed to have accepted the same and to have acknowledged that the Leased Premises are in the condition required by this Lease. LESSEE acknowledges that LESSEE has examined and knows the condition of the Leased Premises, and has received the same in good order and repair, and agrees except as otherwise expressly set forth in this Lease:

a. To use the Leased Premises as an out-patient comprehensive care center, which includes, inter alia, an Urgent Care Center, an Ambulatory Surgery Center, a Treatment and Diagnostic Center, Out-Patient Clinics, support/administrative office space and for no other purpose. Any use of the Leased Premises shall be permitted under any Certificate of Occupancy for the Leased Premises and shall be in compliance with any laws and regulations relating to the permitted use and LESSEE shall maintain all licenses, permits and/or other governmental or regulatory authorizations and approvals necessary or required by the New York City or New York State Department of health or similar health-related regulatory agency for the permitted use (collectively, "LICENSES and PERMITS"), LESSEE shall conduct its business in a high grade and reputable manner.

b. To comply with every applicable regulation or order relating to its intended use of the New York City or New York State Department of Health or similar health-related regulatory agency ("HEALTH REQUIREMENTS") or the New York Board of Fire Underwriters or the Insurance Services Office or any similar body or of any liability or fire insurance company insuring the Leased Premises ("INSURANCE REQUIREMENTS "); provided same shall not require any structural alterations of the Leased Premises.

c. To surrender the Leased Premises to LESSOR at the end of the Term, or sooner termination of this Lease, in substantially the same condition as received, ordinary wear and tear, and damage by the elements including fire excepted, clean and free of debris and LESSEE's personal property. LESSEE shall repair any damage to the Leased Premises occasioned by the installation or removal of LESSEE's trade

fixtures, furnishings and equipment. Except as otherwise stated in this Lease, LESSEE shall leave the power panels, electrical distribution systems, lighting fixtures, HVAC, window coverings, wall coverings, carpets, wall paneling, ceilings, carpets, wall paneling and plumbing at the Leased Premises in good operating condition.

d.  To keep the Leased Premises in good condition, and to repair at LESSEE's own expense, any damage to the Leased Premises or the Building caused by the negligence or willful misconduct of LESSEE or its agents.

e.  To perform, fully obey and comply with all ordinances, rules, regulations and laws of all public authorities, boards and officers relating to the use of the Leased Premises; provided, however, that LESSEE shall have no obligation to perform structural alterations to the Leased Premises.

f.  Not to make any occupancy of the Leased Premises contrary to the terms of this lease or law or contrary to any directions, rules, regulations, regulatory bodies, or officials having jurisdiction or which shall be injurious to any person or property.

g.  Not to permit any waste or nuisance.

h.  Not to use the Leased Premises for living quarters or residence.

Except as otherwise expressly set forth in this Lease, LESSOR shall keep the Building (excluding the interior of the Leased Premises and space leased to other occupants of the building) in good condition and repair. There shall be no abatement of rent or liability to LESSEE on account of any injury or interference with LESSEE's business with respect to any improvements, alterations or repairs made by LESSOR to the Building or any part thereof, provided that such improvements, alterations and/or repairs are performed in such a manner as to minimize disruption to LESSEE, and do not unreasonably interfere with LESSEE's use and occupancy of the Leased Premises (unless LESSEE has been notified of the possibility of such interruption and provides written consent thereto). LESSOR shall enter the Leased Premises, upon prior notice, at mutually convenient times and with full knowledge of and compliance with all laws that apply to LESSEE's use of the Leased Premises, to make such repairs, alterations, improvements and additions to the Leased Premises or to any equipment located therein, unless such performance is required as a result of LESSEE's negligence, in which case LESSEE shall be responsible for the costs of such repairs.

7.  **FIXTURES AND TRADE FIXTURES.** LESSEE shall make no changes, improvements, alterations, or additions to the Leased Premises without LESSOR'S prior written consent, which consent shall not be unreasonably withheld. The foregoing notwithstanding, LESSOR hereby agrees that LESSEE shall have the right to perform the following alterations without first obtaining LESSOR's prior written consent: (i) painting, (ii) wall covering, (iii) floor covering, each of which is limited to the interior of the Leased Premises and which does not affect (x) the exterior (including exterior appearance) of the Leased Premises or the Building, or (y) the strength or structural integrity of the Leased Premises or the Building, or (z) the usage or the proper functioning of the mechanical, electrical, sanitary, heating, ventilating, air-conditioning or other service systems of the Building or the Leased Premises (collectively, "DECORATIVE ALTERATIONS").

All improvements made by LESSEE to the Leased Premises which are so attached to the Leased Premises that cannot be removed without *material injury* to the *Leased Premises,* shall *become the*

property *of* LESSOR upon installation. Not later than the last day of the Term, LESSEE shall, at LESSEE'S expense, remove all of LESSEE's personal property and those improvements made by LESSEE which have not become the property of LESSOR, including trade fixtures, cabinetwork, movable paneling, partitions, and the like; repair all injury done by or in connection with the installation or removal of such property and improvements; and surrender the Leased Premises in as good condition as they were at the beginning of the Term, reasonable wear, and damage by *fire,* the elements, casualty, or other cause not due to the misuse or neglect by LESSEE or LESSEE'S agents, employees, visitors, or licensees, excepted. All property of LESSEE remaining on the Leased Premises after the last day *of the Term* of this lease, and after a ten (10) day notice period, shall be conclusively deemed abandoned and may be removed by LESSOR, and, to the extent so removed, LESSEE shall reimburse LESSOR for its actual reasonable costs incurred solely and directly in performing such removal.

## 8.    COMPLIANCE WITH LAWS.

LESSOR shall, at its own cost and expense, ensure that the Building and Leased Premises comply with all laws, rules, orders, ordinances and regulations at any time issued or in force, applicable to the Building and Leased Premises, of the borough, city, county or other municipality, state or federal governments, and each and every department, bureau and official thereof, and those of any insurance services organizations having jurisdiction in the Leased Premises.

9.    **DEFAULT**: Each of the following shall be deemed an Event of Default:

a.    Failure by LESSEE to pay Rent or other payments hereunder when due, where such failure shall continue for a period of sixty (60) days after notice to LESSEE ("Payment Curative Period").

b.    Failure by either party to perform or observe of any covenant or condition of this lease, where such failure continues for a period of thirty (30) days after notice.

c.    Failure by LESSOR to comply with Section 8 hereinabove.

d.    Abandonment of the Leased Premises by LESSEE.

e.    The filing or execution or occurrence of
   i.    Filing a Petition in bankruptcy by or against LESSEE.
   ii.    Filing a petition or answer by LESSEE seeking a reorganization, arrangement, composition, readjustment, liquidation, dissolution or other relief of the same or different kind under any provision of the Bankruptcy Act.
   iii.    Adjudication of LESSEE as a bankrupt or insolvent, or insolvency in the bankruptcy equity sense.
   iv.    An assignment by the LESSEE for the benefit of creditors whether by trust, mortgage or otherwise.
   v.    A petition or other proceeding by or against LESSEE for, or *the* appointment of, a trustee, receiver, guardian, conservator or liquidator of LESSEE with respect to all or substantially all its property.
   vi.    A petition or other proceeding by or against LESSEE for its dissolution or liquidation, or the taking of possession of the properly of the LESSEE by

any governmental authority in connection with dissolution or liquidation.

10. **TERMINATION.**

    **a.** Upon occurrence of any Event of Default, and after proper notice of default has been given, the non-defaulting party may, at its option, in addition to any other remedy or right given hereunder or by law, give notice to the defaulting party that this lease shall terminate upon the date specified in the notice, which date shall not be earlier than thirty (30) days after mailing or delivery of such notice, unless such longer period shall be practically necessary to effectuate such termination, in the best interest of the patients of such organization or legally required or administratively prescribed for the termination of leases with healthcare providing organizations, in which case the termination date shall be extended as is necessary to effectuate orderly termination hereof.

    **b.** LESSEE may, at any time, without respect to whether money is available for the payment of Rent, and in its sole discretion, give LESSOR notice of the its election to terminate this Lease or any renewal thereof, on a day therein mentioned and not less than sixty (60) days from the date of such notice; and thereupon this Lease or renewal shall terminate on the day therein fixed with the same force and effect as though that day were the last day of the Term of this Lease.

    **c.** LESSEE reserves the right to terminate the Lease in the event it is determined that LESSOR's submissions with regard to State Finance Law §§139-j and 139-k or Tax Law Section 5-a are intentionally false or intentionally incomplete; are found to be false or incomplete. Upon such finding, the LESSEE may exercise its termination right by providing written notification to the LESSOR in accordance with the written notification terms of the submission that was violated.

    **d.** The foregoing provisions for the termination of this lease shall neither operate to exclude or suspend any other remedy of either party for breach, nor shall the foregoing provisions affect the Lessor's right to terminate pursuant to Section 42 herein.

11. **DUTY TO MITIGATE.**

In the event LESSEE improperly (without cause) quits the Leased Premises such that it remains responsible for payment of Rent to the LESSOR, the total Rent to be paid thereto shall be reduced by that portion of the Rent attributable to charges for utility and other services which LESSOR is obligated to provide pursuant to the terms of this Lease, whether or not such charges have been itemized.

Furthermore, in the event LESSEE shall so improperly quit the Leased Premises, LESSOR shall be obligated to make all reasonable efforts to re-let the Leased Premises in order to cover the cost otherwise accruing to LESSEE. LESSOR shall not in any event be required to pay the LESSEE any surplus of any sums received thereby on a reletting of said Premises in excess of the Rent reserved

in the Lease.

12. **REPOSSESSION.** Upon termination of this lease as provided herein, or pursuant to statute, or by summary proceedings or other proper and lawful termination hereof, provided that LESSOR is not then in breach of its obligations hereunder, the LESSOR may, in accordance with applicable laws, rules or regulations relating to healthcare providing facilities, enter forthwith, upon final fifteen (15) days' notice, or upon such longer period as shall be provided hereunder, pursuant to applicable law or rule, to LESSEE, and resume possession of the Leased Premises. In no event shall such re-entry or resumption of possession, absent reletting as hereafter provided, be deemed to be acceptance or surrender of this lease or a waiver of the rights or remedies of LESSOR hereunder.

13. **DEFAULT.** In the event of any default by either party, before exercising any rights that it may have at law or hereunder, must first send notice by registered or certified mail, or hand delivery, to the breaching party, and shall allow thirty (30) days (or such other period as shall be specified for specific categories of breach, e.g., 60 days for payment breach), in which to correct and cure the default or commence a good faith effort to cure such default.

14. **DAMAGES.** Upon termination *of this lease in any* manner above provided, or by summary proceedings or otherwise, LESSEE shall pay to LESSOR without demand or notice the following:

> (a) All Rent and other payments accrued to the date of such termination and a proportionate part of the rent otherwise payable for *the* month in which such termination occurs.

> (b) The reasonable costs of making all repairs, alterations and improvements resulting directly from LESSEE's default,, and of performing all covenants of LESSEE relating to the condition of the Leased Premises to the extent that such costs are neither contemplated in Rent, offset through reletting or other mitigation of damages or otherwise avoidable by LESSOR.

15. **EXCLUSITY OF LESSOR'S REMEDIES:** All such remedies are non-exclusive and can be exercised concurrently or separately as the non-breaching/non-defaulting party desires.

16. **LESSOR NOT LIABLE FOR INJURY OR DAMAGE TO PERSONS OR PROPERTY:** The LESSOR shall not be liable for any injury or damage to any person or to any property at any time on said Leased Premises or building from any cause whatever that may at any time exist from the use or condition of the Leased Premises or building from any cause, during the Term, except to the extent attributable to the negligent or willful misconduct of LESSOR.

17. **TAXES.** Property taxes on the Leased Premises shall be responsibility of LESSOR. Taxes on the personal property of Lessee shall be the responsibility of LESSEE. All other taxes shall be the responsibility of the party incurring same. The parties acknowledge that LESSEE is exempt from any and all taxes hereunder, and shall not directly or indirectly be responsible for the payment of any such taxes.

18.    **RIGHT OF RE-ENTRY.** LESSOR shall have the right, by itself or agent or with others, to enter the Leased Premises at reasonable hours to examine or exhibit the Leased Premises, or to make such repairs and alterations as shall be deemed necessary for the safety and preservation of the building, to inspect and examine, to post such notices as LESSOR may deem *necessary* to protect LESSOR against loss from liens of laborers, materialmen or others, and for the purpose of permitting or facilitating LESSORs performance of its obligation hereunder, or for any other reasonable purpose which does not materially diminish LESSEE's enjoyment or use of the Leased Premises, provided however that any such entry shall be conducted in accordance applicable with laws, rules and regulations and in such a manner as to minimize disruption to the business of LESSEE. LESSOR shall indemnify and hold harmless LESSEE from any costs, expenses, damages or other liability resulting from improper or unlawful entry or from acts or omissions occurring during such entry.

19.    **INTENTIONALLY OMITTED**

20.    **NATURE OF RELATIONSHIP BETWEEN THE PARTIES.** The sole relationship between the parties created by this agreement is that of LESSOR and LESSEE. Nothing contained in this Lease than be deemed, held, or construed as creating a joint venture or partnership between the parties.

21.    **RIGHT OF LESSOR TO PAY OBLIGATIONS OF LESSEE TO OTHERS.** If LESSEE shall fail or refuse to pay any sums due to be paid by it under the provisions of this Lease, or fail or refuse to maintain the Leased Premises or any part thereof as herein provided, then, and in such event, LESSOR, after thirty (30) days notice in writing by LESSOR to LESSEE, shall have the right to pay any such sum or sums due to be paid by LESSEE and to do and perform any work necessary to the proper maintenance of the Leased Premises; and LESSEE shall, upon demand therefore, pay to LESSOR the amount of such sum or sums paid by LESSOR for the account of LESSEE and/or the cost of any such work, together with interest on such amount to the extent required pursuant to Article XI-A.

22.    **SET OFF.** In the event LESSOR refuses or fails to make repairs or to provide services for which it is responsible under the terms and conditions of this Lease the LESSEE, upon reasonable written notice to the LESSOR, and after five (5) business days following such written notice may, and, at its sole option, either: (i) make such repairs or provide such services, deducting all the costs incurred thereby from the rental which is or shall be owing LESSOR; or (ii) not make such repairs nor provide such services and deduct from said rental a reasonable amount for the diminution in value of the Leased Premises due to such disrepair or lack of services. The provisions of this Section are in addition to and not in lieu of, any and all rights and remedies available to LESSEE at law or in equity.

23.    **MECHANICS AND OTHER LIENS IMPOSED BY LESSEE.** LESSEE shall keep the Leased Premises and the improvements at all times during the term free of mechanics and materialmen's liens and other liens of like nature, other than liens created and claimed by reason of any work done by or at the instance of LESSOR, and at all times, subject to the availability of lawful appropriations and consistent with Section 8 of the State Court of Claims Act, shall fully protect and indemnify LESSOR against all such liens or claims and against all attorneys' fees and

other' Costs and expenses incurred directly by reason or on account of any such liens or claims. Should LESSEE fail to fully discharge or bond any such lien or claim, LESSOR, at its option, may post a bond securing the payment of the same or any part thereof.

All amounts so paid by LESSOR, together with interest in accordance with Article XI-A to the extent LESSOR is entitled thereto, shall be paid by LESSEE upon demand, and if not so paid as additional rent.

24.     **CONDEMNATION CLAUSE:** in the event that all or a part of the Leased Premises is taken by eminent domain or conveyed in lieu of eminent domain, if the Leased Premises cannot reasonably be used by LESSEE for their intended purpose, then LESSOR shall immediately notify LESSEE of such taking or conveyance, and this lease will terminate effective as of the date that LESSEE vacates the Leased Premises, or a date not later than the date on which the condemning authority shall take possession of the same.

25.     **DESTRUCTION OF PREMISES:** If the Building or the Leased Premises are destroyed or so injured by fire or the elements or any cause as to render the Leased Premises untenantable or unfit for the LESSEE's use, as the LESSEE in its sole discretion may determine, the LESSEE may serve notice declaring its intent to vacate the Leased Premises and may thereafter, as soon as practicable subsequent to the provision of notice, quit and surrender the entire Leased Premises, in which event rent shall abate from the time of destruction and LESSEE shall be relieved of further liability under this Lease.

If, however, the Building (in the reasonable judgment of the LESSOR) or the Leased Premises (in the reasonable judgment of the LESSEE) shall be so injured by any cause aforesaid so as not to be rendered unfit for occupancy, then the LESSOR shall repair the same with reasonable promptness, and in that case the rent shall cease during such repair period, except only that the LESSEE shall during such time pay a pro rata portion of such rent apportioned to that portion of the Leased Premises which are in condition for occupancy or which may be actually occupied during such repair period.

All improvements or betterments placed by the LESSEE on the Leased Premises shall, however, in any event be repaired and/or replaced by the LESSEE at its own expense and not at the expense of the LESSOR, provided the injury and damage to such improvements or betterments have been caused without the fault or neglect of the LESSOR, its agents or employees.

If the Leased Premises are destroyed or damaged by fire or the elements or by any other cause, the LESSEE shall give notice thereof to the LESSOR with reasonable promptness.

In the event the Leased Premises are so damaged or destroyed as above described, any advance rental paid by LESSEE to LESSOR shall be apportioned to the date of the destruction and the difference promptly returned by the LESSOR to the LESSEE.

This Section shall be deemed an "express agreement to the contrary" within the meaning of Section 227 of the Real Property Law.

26. **WAVER** OF **NONPERFORMANCE:** Failure of either party to exercise any of its rights under this Lease upon nonperformance by the other party of any condition, covenant or provision herein contained shall not be considered a waiver. nor shall any waiver of nonperformance of any such condition, covenant or provision *by* either party be construed as a waiver of the rights of the that party as to any subsequent defective performance or nonperformance hereunder.

27. **PAROL EVIDENCE CLAUSE:** This instrument constitutes the final, fully integrated expression of the agreement between the LESSOR and the LESSEE, and it cannot be modified or amended in any way except in writing signed by the LESSOR and LESSEE, and approved by the New York Office of the State Comptroller.

28. **SUBORDINATION.** This Lease is subject and subordinate to all ground or underlying leases, and to all mortgages which may now or hereafter affect such leases, or the real property of which the Leased Premises form a part, and to all renewals, modifications, consolidations, replacements and extensions thereof. However, no property owned or removable by the LESSEE shall be subject to the lien of paramount mortgages. This provision shall be self-operative, and no further instrument of subordination shall be required by any mortgagee. In confirmation of such subordination, LESSEE shall promptly execute a certificate to such effect that LESSOR may reasonably request.

This Lease shall be subject and subordinate to the lien of any future mortgage or any future underlying lease provided that the holder of any such mortgage or the LESSOR under any such underlying lease shall agree in the mortgage or lease or otherwise that this Lease shall not be terminated or otherwise affected by the enforcement of any such mortgage or underlying lease, provided that at the time thereof LESSEE shall not be in default, and the LESSEE, when requested by the holder of such mortgage, or the LESSOR under any such underlying lease, shall execute an attornment agreement to the holder of such mortgage or the LESSOR under any such underlying lease should either succeed to the rights of the LESSOR under this Lease.

29. **INSURANCE.** LESSOR, at its sole cost and expense, shall maintain in force throughout the Term of this Lease, or any extension or renewal thereof, from an insurance company authorized to do business in the State of New York, a combined single limit (bodily injury and property damage on an occurrence basis) liability insurance policy with limits no less than One Million Dollars ($1,000,000) plus excess umbrella coverage of Five Million Dollars ($5,000,000), and a policy of fire and extended coverage, vandalism and malicious mischief, hazard insurance having an amount of insurance equal to the full replacement value of the Building, which policies shall name the PEOPLE OF THE STATE OF NEW YORK as an additional insured (in the case of fire insurance, as its insurable interest may appear), such policies to be written by recognized and well-rated insurance companies authorized to transact business in the State of New York. The LESSOR shall deliver certificates of such insurance to the Office of General Services, Division of Real Estate Planning prior to the beginning of the Term of this Lease and thereafter not less than fifteen (15) days prior to the expiration of any such policy. To the extent feasible, all such policies shall contain a provision that the Office of General Services, Division of Real Estate Planning, shall receive at least fifteen (15) days notice prior to material change or cancellation.

30. **WORKER COMPENSATION & DISABILITY BENEFITS COVERAGE.** As a

condition of the continuing validity of this Lease, all employees in the hire of the LESSOR shall be adequately and properly covered by Workers' Compensation Insurance and Disability Benefits coverage in all work concerned in and about the Leased Premises. The LESSOR shall deliver certificates of such coverage, or proof that such coverage is not required, in such form as required by the Workers' Compensation Board, to the Office of General Services, Division of Real Estate Planning, prior to the beginning of the term of this Lease. The LESSOR shall notify the Office of General Services, Division of Real Estate Planning, at least thirty (30) days prior to material change or cancellation of such coverage.

31.     **BROKERAGE FEES/UNLAWFUL INDUCEMENT.**

a.      The LESSOR warrants that no person or selling agency has been employed or retained to solicit or secure this Lease upon an agreement or understanding for a commission, percentage, brokerage, contingent fee or other compensation.

b.      LESSOR, for itself, its agents, employees, and as the case may be, its directors, officers, managers, members or partners (limited or general), represents and warrants to the LESSEE, after its due inquiry, and for the express purpose of inducing LESSEE's reliance upon such representation and warrant, that neither the LESSOR, its agents, employees, nor, as the case may be, its directors, officers, managers, members or partners (limited or general) has made any payment or given any good, service or other thing of value or made any promise or representation that it will make any future payment or give any good, service or other thing of value, to entice LESSEE to enter into this Lease, and further that upon its due inquiry, neither the LESSOR nor any agent, employee or, as the case may be, any director, officer, manager, member or partner (limited or general) has been solicited by any person to give, now or in the future, any good, service, payment or other thing of value for the purpose of securing this Lease, excepting from such solicitation the ethical actions of licensed real estate brokers whose identity has been disclosed in this Lease. LESSOR makes this representation and warranty under penalty of perjury and expressly agrees that a false representation herein will be deemed to and will in fact constitute fraud in the inducement of LESSEE to enter into this Lease.

32.     **QUIET ENJOYMENT/NUISANCE CONTROL.**

a.      LESSOR covenants with the LESSEE that the LESSEE, on complying with the terms of this Lease, shall and may peacefully and quietly have and enjoy the said Leased Premises.

b.      If the Building in which the Leased Premises are located is occupied by other lessee(s) in addition to LESSEE, the LESSOR shall adopt, promulgate and enforce Building rules and regulations that shall proscribe the maintenance or occurrence of nuisances including, but not limited to, noise, dust, vibration, odors or other unreasonable impact or infringements upon LESSEE's use and enjoyment of the Leased Premises. The LESSOR shall, in addition, promptly take such other measures as are reasonable and within its control to enjoin, curtail, eliminate or proscribe any such nuisances resulting from the acts of non-tenants.

33.    **NOTICES.**

Any notice, statement, demand, consent, approval or other communication required or permitted to be given, rendered or made by either party to this Lease, or pursuant to any applicable law or legal requirement (collectively, "NOTICES") shall be in writing (whether or not so stated elsewhere in this Lease) and shall be deemed to have been properly given, rendered or made only if sent by next business day delivery by a nationally recognized overnight courier service (e.g., Fed Ex) requiring receipt for delivery or registered or certified mail, return receipt requested, posted in a United States post office station or letter box in the continental United States, by such party or its respective counsel, or; in the event of termination of this Lease pursuant to Section 42, by a purchaser or its respective counsel, addressed to the other party as follows:

| LESSOR | LESSEE |
|---|---|
| VICTORY MEMORIAL HOSPITAL | SUNY DOWNSTATE MEDICAL CENTER |
| Debtor in Possession | 450 Clarkson Avenue, Box 63 |
| c/o DLA Piper US LLP | Brooklyn, New York 11203 |
| 12.51 Avenue of the Americas | Attention: Director of Contracts |
| New York, New York 10020 | |
| Ann: Timothy W. Walsh, Esq. | |
| John P. McNicholas, Esq. | |

34.    **SALE BY LESSOR.**  Subject to applicable law and the provisions of this Lease, LESSOR shall have the right to assign or otherwise transfer its interest in the Leased Premises. In the event of a sale, conveyance, or transfer by LESSOR of its interest in all or part of the Leased Premises, provided that LESSOR is not in breach of any of its obligations hereunder, the same shall operate to release LESSOR from any future liability (except to the extent arising from an act or omission occurring prior to such assignment) upon any of the covenants or conditions, express or implied, herein contained in favor of LESSEE, and in such event LESSEE agrees to look solely to the responsibility of the successor in interest of LESSOR in and to this Lease.  Subject to Section 1 and 42 herein, this Lease shall not be affected by any such sale, and LESSEE agrees to attorn to the purchaser or assignee, upon valid assignment hereof, in accordance with Section 37 herein and Section 138 of State Finance Law   LESSEE agrees to permit LESSOR, at any time within 60 days prior to the expiration of this Lease, to place upon or in the window of the Leased Premises any usual or ordinary For Rent or similar sign.  Further, upon reasonable prior notice, at mutually agreeable times, in compliance with all laws that apply to LESSEE's use of the Leased Premises and to the extent conducted in such a manner as to minimize disruption to LESSEE, LESSOR may allow prospective lessees, applicants or agents to enter and examine the Leased Premises to the extent accompanied by LESSOR or an agent thereof.  LESSOR shall assume liability for any damage or expense resulting from entry in violation of applicable law.

35.    **COURT ACTION, ATTORNEY'S FEES AND COSTS,** If, upon failure of either party to comply with any of the covenants, conditions, rules or regulations of and in this Lease, and suit should be brought for damages on account, or to enforce the payment of Rent herein stipulated, or to recover possession of the Leased Premises or to enforce any provision hereof, the

losing party agrees to pay to the prevailing party reasonable attorneys' fees.

**36.    ASSIGNMENTS AND SUBLEASE;** The LESSEE hereby agrees not to assign this Lease, nor to sub-lease the Leased Premises or any part of the Leased Premises, without the written consent of the LESSOR and, if applicable, the New York State Department of Health, the Office of the State Comptroller, the Department of Housing and Urban Development and the Dormitory Authority of the State of New York, under penalty of instant forfeiture of this Lease. All rights and liabilities herein given to or imposed upon either of the parties shall extend to the executors, administrators, successors and assigns of such party.

**37.    NEW LESSOR/ASSIGNMENT.** Subject to the other provisions of this Lease, in the event the Leased Premises or the Building of which the same is a part shall be sold, conveyed, transferred, assigned, leased or sublet, or if the LESSOR shall sell, convey, transfer or assign this Lease or rents due under this Lease, or if for any reason there shall be a change in the manner in which rental reserved hereunder shall be paid to the LESSOR, proper written notice of such change shall be given immediately by the LESSOR to the LESSEE, as provided herein.    No assignment of this Lease shall be made without the prior approval of the LESSEE as required by Section 138 of the State Finance Law, provided such approval shall not be unreasonably withheld, conditioned or delayed.

**38.    INTERPRETATION.** Whenever any word is used in this agreement in the masculine gender, it shall also be construed as being used in the feminine and neuter genders, and singular usage shall include the plural and vice versa, all as the context shall require.  A provision of this Lease which requires a party to perform an act shall, if required, be construed so as to require the party to cause the act to be performed.  A provision of this Lease which prohibits a party from performing an act shall, if required, be construed as to prohibit the party from permitting others within its control to perform the act.  Each party shall be deemed to be required to perform each of its obligations under this Lease at its own expense, except to the extent, if any, that this Lease specifies otherwise.  This Lease shall be governed by the laws of the State of New York.

**39.    MODIFICATION.** Any modification or amendment of this agreement shall be in writing and shall be executed by all parties, and subject to the approval of the Office of the State Comptroller and any other regulatory agency with jurisdiction hereover, to the extent applicable, upon reasonable notice to the Official Committee of Unsecured Creditors in the LESSOR'S chapter 11 cases, with an opportunity to object.

**40.    SEVERABILITY CLAUSE:** If any term, covenant, condition, or provision of this lease is held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired, or invalidated.

**41.    LAW TO APPLY.** This lease shall be construed under and in accordance with the laws of the State of New York. All disputes arising hereunder shall be governed by the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"), which shall have jurisdiction to hear and determine, among other things, all matters and disputes arising under or relating to this Lease, including, but not limited to, a holdover eviction proceeding against LESSEE.  Although the Court of Claims Act (McKinney's Consolidated Laws of New

York) sets forth the exclusive jurisdiction of the New York State Court of Claims to render judgment of such sums as should be paid by the State, any such determination may be made by the Bankruptcy Court, provided that the action or dispute is properly removed to the Bankruptcy Court.

**42.     LESSOR'S RIGHT TO TERMINATE.** LESSEE recognizes that LESSOR has entered into a bona-fide contract for the sale or other disposition of the Building, and as a material inducement to LESSOR'S execution of the Lease and, in addition to the LESSOR'S right to terminate otherwise this Lease because of the occurrence of Expiration Date in paragraph 1, LESSEE agrees that if LESSOR determines (a) in good faith as part of the restructuring or other reorganization or liquidation of LESSOR that a conveyance or other disposition of the Building is necessary or warranted, or (b) LESSOR, in good faith, is required to vacate or substantially vacate the Building and determines it is not economically viable to permit LESSEE's continued occupancy of the Leased Premises, then, in any such event, LESSOR or such bona-fide purchaser or transferee shall have the right to terminate or reject this Lease provided and on condition that LESSOR give LESSEE at least sixty (60) days prior written notice (the "TERMINATION NOTICE"), which notice shall set forth the date on which this Lease shall terminate (the "TERMINATION DATE"). LESSOR shall not be responsible for any damages, penalties or liabilities arising directly from proper termination hereof pursuant to this Section 42.  In the event of the giving of such Termination Notice, this Lease and the term and estate hereby granted (unless the same shall have expired sooner pursuant to any of the conditions of limitation or other provisions of this Lease *or pursuant to law*) shall terminate on the Termination Date with the same effect as if such date were the date hereinbefore specified for the expiration of the Term of this Lease, and LESSEE shall vacate and surrender to LESSOR possession of the Leased Premises on or before the Termination Date in the condition otherwise required on the date hereinbefore specified for the expiration of the Term of this Lease.  Notwithstanding the foregoing or anything to the contrary herein, in the event of termination pursuant hereto, to the extent that a longer period shall be either (i) practically necessary to effectuate such termination, (ii) in the best interest of the patients of such organization or (iii) legally required or administratively prescribed for the termination of leases with healthcare providing organizations, in which case the Termination Date shall be extended as is necessary to effectuate orderly termination hereof.

**43. ENVIRONMENTAL CONDITIONS:**

a. LESSEE covenants at LESSEE'S cost and expense to comply *with every* law, regulation, ordinance, rule or requirement of any federal, state, municipal or local governments or of any other governmental, public or quasi-public authorities having jurisdiction over the Leased Premises or LESSEE, including Environmental Laws and compliance with Environmental Conditions as such terms are hereinafter defined, which may be applicable to the Leased Premises or the use or occupation of the Leased Premises, (collectively, together with Health Requirements and Insurance Requirements, the "LEGAL REQUIREMENTS").

For purposes of this Section, "ENVIRONMENTAL CONDITION" means:

The existence, release or discharge of (including without limitation, exposure to) any Hazardous Substance or any substance, chemical, material, pollutant or contaminant, or other release or emission, into or to the environment (including, without limitation, the air, the grou^p^ ,

surface water or groundwater or any other surface), at, in, by, from, or related to, the Leased Premises in violation of any Environmental Laws, as may arise after the Commencement Date during the term of this Lease; or

ii.     The transportation, storage, treatment or disposal of hazardous materials in connection with operations on the Leased Premises, in violation of any Environmental Leases as may arise after the Commencement Date during the tern of this Lease.

iii.     For purposes of this Section, "ENVIRONMENTAL CLAIM" means any notice of violation, claim or other order or direction (conditional or otherwise) by any governmental authority or any person related to any Environmental Condition, including, without limitation, claims for violation of any Environmental Laws, personal injury (including sickness, disease or death), damage to tangible or intangible property, damage to the environment, nuisance, pollution, contamination or other adverse effects on the environment; and related fines, penalties and restrictions as may arise after the Commencement Date during the term of this Lease.

iv.     For the purposes of this Section, "ENVIRONMENTAL LAW" means all federal, state and local environmental and cleanup statutes, laws, rules, regulations, ordinances, orders, *decrees* and interpretations (whether currently existing or hereafter existing) which are applicable to the Leased Premises and/or LESSEE's *activities* whereon, which relate in any manner whatsoever to the use, identification, lab ling, handling, storage, collection, clean-up, removal., disposal, or discharge of wastes, hazardous wastes *or* hazardous substances, including, without limitation, (i) the Clean Water Act, (ii) the Clean Air Act, (iii) the Comprehensive Environmental Response, Compensation and Liabilities Act ("CERCLA"), as amended by the Superfund Amendments and Reauthorization Act ("SARA"), (iv) the Toxic Substance Control Act "TSCA"), (v) the Resource Conservation and Recovery Act ("RCRA"), and *(vi)* state and local laws dealing with subjects similar to or related to the subjects of said laws.

v.     For the purposes of this Section, "ENVIRONMENTAL LOSS" means any order, loss, cost, damage, liability, deficiency, fine, judgment, penalty or expense (including, without limitation, reasonable attorneys' fees, investigation or feasibility studies, inspections, settlements, liens, removal, clean-up and remediation) arising from or in connection with any Environmental Claim.

vi.     For the purposes of this Lease, "HAZARDOUS SUBSTANCE" shall mean and include those elements or compounds which are contained in the list of hazardous ,substances adopted from time to time by the United States Environmental Protection Agency ("EPA") or by *the* New York Department of Environmental Conservation or its successor (`DEC"), or which are on any list of toxic or polluting materials designated by Congress, the EPA or DEC, or which are defined as hazardous, toxic, pollutant, infectious or radioactive by any other federal, state or local statute, law, ordinance, code, role, regulation, order or decree regulating, relating to, or imposing liability or standards of conduct concerning, any hazardous, toxin, polluting, infectious, radioactive or other dangerous waste, substance or material, as now or at any time hereafter in effect.

b.     LESSEE shall at all times use and occupy the Leased Premises in strict compliance with all Environmental Laws. Subject to the availability of lawful appropriations and consistent with Section 8 of the State Court of Claims Act, LESSEE shall indemnify and hold LESSOR and

LESSOR's *mortgagee harmless from and* against any and all Environmental Losses attributable to the negligence or willful misconduct of LESSEE. At the request of LESSOR, LESSEE shall conduct an environmental assessment of the Premises in the event LESSOR has a reasonable basis to believe that there has been a violation by LESSEE of Environmental Laws. LESSEE shall immediately comply with the results of any such assessment.

c.      Subject to the availability of lawful appropriations and consistent with Section 8 of the State Court of Claims Act, LESSEE hereby agrees to indemnify and hold harmless LESSOR and LESSOR's mortgagee from and against any and all losses, liabilities (including strict liability), damages, injuries, expenses (including reasonable attorneys' fees), costs of any settlement or judgment and claims of any and every kind whatsoever paid (collectively, 'LOSSES"), incurred or suffered by, or asserted against, LESSOR and/or LESSOR's mortgagee by any person or entity or governmental agency for, with respect to or as a result of, the presence on or under, or the escape, seepage, leakage, spillage, discharge, emission, discharging or release from, the Leased Premises of any Hazardous Substance including, without limitation, any losses, liabilities (including strict liability), damages, injuries, expenses (including reasonable attorneys' fees), costs of any settlement or judgment or claims, asserted or arising under any Hazardous Substance laws and/or *any other statute, law,* ordinance, code, rule, regulation, outer or decree regulating, relating to or imposing liability, including strict liability, or standards of conduct concerning any Hazardous Substance, caused by or within the control of LESSEE, except to the extent any of the foregoing Losses result from the acts or omissions of LESSOR, LESSOR'S mortgagee or any other tenants, invitees or agents of LESSOR. LESSEE shall have the right to approve any such settlement, which approval shall not be unreasonably withheld, delayed or conditioned, provided that LESSEE is not then in default under this Lease beyond any applicable grace or cure periods. Notwithstanding the above provision as to LESSEE'S approval rights of any such settlement, any settlement of any indemnified matter, as set forth in this subparagraph (c), shall contain: (i) a full and complete written release of LESSOR and LESSOR'S mortgagee (if the LESSOR's mortgagee is *a* panty to any such action, suit, proceeding or claim) from all liability in respect of such action, suit, proceeding or claim and a dismissal with prejudice of such action, suit, proceeding or claim as to the LESSOR or LESSOR's mortgagee (if a party); and. (ii) shall not obligate LESSOR or LESSOR's mortgagee to pay any sum or perform any obligation under any such settlement. Notwithstanding anything to the contrary herein, in no event shall LESSEE be obligated to indemnify LESSOR or LESSOR's mortgagee for any Losses caused by events occurring before LESSEE'S occupancy of the Leased Premises or after the LESSEE has vacated the Leased Premises following expiration or termination of this Lease.  Reciprocally, LESSOR shall defend, indemnify and hold harmless the State of New York, the State University of New York, LESSEE, and their respective officers, employees, agents from and against any and all losses, liabilities (including strict liability), damages, injuries, expenses (including reasonable attorneys' fees), costs of any settlement or judgment and claims of any and every kind whatsoever paid (collectively, 'LOSSES"), incurred or suffered by, or asserted against, LESSEE by any person or entity or governmental agency for, with respect to or as a result of, any violations, conditions or other acts or omissions: existing prior to LESSEE'S occupancy of the Leased Premises or after LESSEE's vacation therefrom, or for which LESSEE was not solely responsible.

d.      LESSEE may, in good faith (and, wherever necessary, in the name of, but without expense to, LESSOR) contest the validity of or failure to comply with any such Legal Requirements and, pending the determination of such contest, may postpone compliance

therewith, except that LESSEE shall not so postpone compliance therewith as to subject LESSOR to the risk of any material. fine or penalty (unless LESSEE pays same) or to prosecution for a Crime or to cause the Leased Premises or any part thereof to be condemned or to be permanently vacated (i.e., vacated for more than one (1) year).

e.     LESSEE agrees that during the term of this Lease it shall not do or suffer any waste to the Leased Premises by reason of any act or omission of LESSEE or person claiming through LESSEE or by reason of its failure to perform any act required of it hereunder. LESSEE shall not use or occupy the Leased Premises, or knowingly permit it to be used or occupied, contrary to any statute, rule, order, ordinance, requirement, regulation or certificate of occupancy affecting the same, or which would make void or voidable any insurance then in force with respect thereto or which would make it impossible to obtain fire or other insurance thereon required to be furbished hereunder at LESSEE's expense, or which would cause structural injury to the improvements or cause the value or usefulness of the Leased Premises, or any portion thereof, to diminish (reasonable wear and tear excepted), or which would constitute a public or private nuisance or waste, and LESSEE agrees that it shall promptly, upon discovery of any such use, take all necessary steps to compel the discontinuance of such use.

All documents such as schedules, exhibits and like documents are incorporated herein. If LESSEE is a corporation, each person executing this Lease represents and warrants that he is duly authorized to execute and deliver this lease on behalf of the corporation, subject to regulatory approval hereof. Those persons further represent that the terms of this lease are binding upon the corporation upon full execution, including that of the NYS Office of the Attorney General and the Office of the State Comptroller, and delivery of this Lease.

LESSOR covenants and agrees to indemnify, protect and save LESSEE harmless from and against any and all damages, losses, liabilities, obligations, penalties, claims, litigation, proceedings, or expenses of any kind or of any nature whatsoever (including reasonable attorneys' axed experts' fees and disbursements) which may at any time be imposed upon, incurred by or asserted or awarder) against LESSEE, to the extent arising out of the presence of any Hazardous Substances, caused or existing prior to the Commencement Date, after the expiration date or other termination hereof, as a result of conduct of LESSOR or as a result of the acts or omissions of parties other than LESSEE, which indemnification shall include, without limitation, the cost of removal of any and all such hazardous materials from any portion of the Leased Premises.

**44.     ASBESTOS / LEAD.**  LESSOR represents and warrants, as an inducement to encourage LESSEE's initial and continued occupation of the Leased Premises, and as a material term of this Lease, that the Leased Premises are free from hazard, particularly with reference to United States Department of Labor, Occupational Safety and Health Administration Standards for permissible exposure limits to asbestos.

LESSOR further represents that, immediately upon the discovery of any asbestos or asbestos containing materials within or about the Leased Premises, LESSOR will give written notice to the agency occupying the Leased Premises and to the LESSEE of the existence of such materials, and will, at its sole cost and expense, completely remove said materials in full compliance with federal, state, municipal or local laws, rules, or regulations relating to the removal

of asbestos.

Notwithstanding any provision of this Lease or any rider or addendum hereto, LESSOR agrees that each and every breach of any warranty or representation contained in this Section, without regard to any measure of the magnitude of the breach, shall constitute a default under this Lease which shall entitle LESSEE, in addition to all other rights and remedies of LESSEE, to deduct from the rental or other monetary obligation of LESSEE, or to recover by action, all costs, whether direct or indirect, resulting from any cause whatsoever, incurred by LESSEE as a result of such breach.

LESSOR represents and warrants that the Leased Premises are free of paint or other conditions conducive to lead poisoning. Notwithstanding the foregoing, LESSOR further represents that, upon discovery of any condition conducive to lead poisoning, LESSOR shall take any and all reasonable steps necessary to abate such condition. LESSEE shall have and be entitled to the same rights and remedies with respect to any such conditions as is herein provided with respect to the existence and removal of asbestos.

**45. FIRE EXTINGUISHER.** LESSOR shall provide fire extinguishers in the Leased Premises and elsewhere throughout the Building. The types of extinguishers provided and their locations, testing and maintenance shall, at all times during the Lease Term, comply with the standards of the Occupational Safety and Health Administration of the U.S. Department of Labor as such standards are contained in Title 29 of the Code of Federal Regulations at Section 1910.157 as amended from time to time, unless State statutes or local ordinances impose stricter requirements in which event the LESSOR shall comply with the strictest of said requirements. All fire extinguisher installations shall be in accordance with the New York State Fire Prevention and Building Code and Americans With Disabilities Act (ADA) Accessibility Guidelines.

**46. SIGNAGE.** LESSEE shall have the right, at LESSEE's sole cost and expense and in compliance with all Legal Requirements, to install signage on the entrance door of the Leased Premises. Such costs shall include, but not be limited to, the costs incurred by LESSOR to install, maintain, repair, remove, and restore any affected areas with respect to the same. Any signs placed upon or about such Leased Premises shall, on the end of the Term of the lease or upon the earlier termination, be removed by LESSEE, and LESSEE shall repair any damage to the Leased Premises which shall be occasioned by reason of such removal.

**47. BINDING EFFECT, REGULATORY AND COURT APPROVAL.** This lease is subject to and conditioned upon the approval of the United States Department of Housing and Urban Development, the New York State Department of Health, the Dormitory Authority of *the* State of New York, the United States Bankruptcy Court for the Eastern District of New York, the State University of New York, the New York State Office of the Attorney General and the Office of the New York State Comptroller. This Lease shall be binding upon the parties and their respective successors and assigns, to the extent permitted by this Lease. The submission of any unexecuted copy of this Lease shall not constitute an offer to be legally bound by the provisions of the document submitted. No party shall be bound by this Lease until (i) it is executed by all necessary parties; (ii) it has been approved by the State University of New York; (iii) it has been approved as to form by the Attorney General; (iv) has been approved by the State Comptroller; and (v) it has

actually been delivered by the LESSEE to the LESSOR. This Lease has been executed in counterparts, and each counterpart constitutes an original document.


**48     NOTICES TO THE DEPARTMENT OF HEALTH.** In the event that LESSEE shall use all or any portion of the Leased Premises as a hospital (as such term is defined in Section 28 of the Public Health. Law), the following language shall be deemed included in this Lease.

a.     LESSOR acknowledges that neither its right of reentry into the Leased Premises set forth in this Lease nor other termination rights hereunder confer on it the authority to operate a hospital as defined in Section 28 of Public Health Law at the Leased Premises and agrees that it will give the New York State Department of Health Tower Building, Empire State Plaza, Albany, New York 12237, notification by certified mail of its intent to re-enter the Leased Premises and/or to initiate dispossession proceedings or that this Lease is due to expire at least thirty (30) days prior to the date on which LESSOR intends to exercise a right of re-entry or to initiate such proceeding or at least sixty (60) days before expiration of the Lease.

b.     Upon receipt of notice from LESSOR of its intent to exercise its right of re-entry, any other termination right herein conferred or upon service of process in dispossession proceedings and sixty (60) days prior to the expiration of the Lease, LESSEE shall immediately notify by certified mail the New York State Department of Health, Tower Building, Empire State Plaza, Albany, New York, 12237, of the receipt of such notice or service of such process or that the Lease is about to expire.


**49.     EXHIBITS/SCHEDULES/INTERPRETATION.** The following appendices, exhibits and schedules are being attached and made part of this Lease:

| | |
|---|---|
| Exhibit "A" | Standard Clauses for NYS Leases |
| Exhibit "B" | Floor Plan |


**[Signature Page Follows]**

In WITNESS WHEREOF, the undersigned LESSOR and LESSEE execute this lease to be effective as provided herein.

**VICTORY MEMORIAL HOSPITAL, INC., DEBTOR IN POSSESSION**

**STATE UNIVERSITY OF NEW YORK DOWNSTATE MEDICAL CENTER**

BY _____
Print Name:
Print Title:

BY_____
Frederick J. Hammond, Jr.
Senior Vice President and
Chief Financial Officer

**STATE UNIVERSITY OF NEW YORK**

BY_____
Daniel B. Sheppard
Associate Vice Chancellor for Finance and Business

**APPROVED AS TO FORM:**
Andrew Cuomo
New York State Attorney General

**APPROVED AND FILED:**
Thomas P. DiNapoli
New York State Comptroller

BY: _____
   For the Attorney General

BY: _____ ___
   For the State Comptroller

APPROVED          20__

_____
Real Estate Planning

-20-

STATE OF NEW YORK    }
                     : SS.:
COUNTY OF            }

On the    day of                    ,  in  the  year  20
before me, the undersigned, personally appeared
          , personally known to me or proved to me on the
basis of satisfactory evidence to be the individual(s) whose
name(s) is (are) subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in
his/her/their capacity(ies), and that by his/her/their
signature(s) on the instrument, the individual(s), or the
person upon behalf of which the individual(s) acted, executed
the instrument.

_____

Notary Public, State of New York
Qualified in County of:
My Commission Expires

---

**CERTIFICATE OF APPROVAL**

I hereby certify that the Premises described in this Lease are
necessary for the proper conduct of this Department, and I
approve such Lease for execution by the Commissioner of General
Services.

_____

                                    (Department)

                          BY: _____

                          Date: _____

EXHIBIT B



# STATE OF NEW YORK
## DEPARTMENT OF HEALTH

Metropolitan Area Regional Office    90 Church Street    New York, New York 10007

Richard Daines, MD
*Commissioner*

Wendy E. Saunders
*Chief of Staff*

June 24, 2008

**REVISED LETTER**

Debra D. Carey
Chief Executive Officer
SUNY Downstate Medical Center
445 Lenox Road
Brooklyn, NY 11203

Re:    **Emergency Approval for an Urgent Care Center, Diagnostic Radiology, and Outpatient Clinics including Primary Care, Nutrition, Well Child, Pediatric, and Podiatry.**

Dear Ms. Carey:

The New York State Department of Health Metropolitan Area Regional Office is responding to the letter dated June 13, 2008 requesting emergency approval for an Urgent Care Center, Diagnostic Radiology, and Outpatient Clinics including Primary Care, Nutrition, Well Child, Pediatric, and Podiatry.

The emergency approval is effective June 28, 2008 and will remain in effect until the Division of Health Facility Planning has acted in the formal review of the hospital certificate of need application that must be filed within 90 days of the receipt of the original approval letter. An operating certificate for these sites cannot be issued until the Division of Health Facility Planning has approved your application along with the approval of a site survey.

Please notify this office when you receive certificate of need approval so that a survey can be conducted and a revised operating certificate can be issued.

If you have any further questions regarding this matter, please contact our office at (212) 417-5990.

Sincerely,

Jeffrey Spitz, LCSW
Regional Hospital Program Director
Acute and Primary Care Services
MARO

cc: Martin J. Conroy
    Neil Benjamin
    File-Emergency Approval

kjh