UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
In re:                                        :        Chapter 11
                                              :
                                              :        Case Nos.  06-44387
VICTORY MEMORIAL HOSPITAL, et al.,            :                   06-44388
                                              :                   06-44389
                                              :
                         Debtors.             :        (Jointly Administered)
---------------------------------------------------------------X


## SECOND AMENDED PLAN OF REORGANIZATION
## OF VICTORY MEMORIAL HOSPITAL


### July 3, 2008


**DLA PIPER US LLP**
Timothy W. Walsh (TW-7409)
Jeremy R. Johnson (JJ-9269)
1251 Avenue of the Americas
New York, New York  10020-1104

Attorneys for Victory Memorial Hospital
Debtor and Debtor in Possession

Victory Memorial Hospital, debtor and debtor in possession (the "Debtor"), proposes the following second amended plan of reorganization (the "Plan") pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

The Debtor is the proponent of this Plan and accompanying disclosure statement within the meaning of Bankruptcy Code section 1129. All holders of Claims against the Debtor are encouraged to read this Plan and the Disclosure Statement with Respect to the Second Amended Plan of Reorganization of Victory Memorial Hospital, dated July 3, 2008 (the "Disclosure Statement") in their entirety before voting to accept or reject this Plan.

## TABLE OF CONTENTS

Page

ARTICLE I        DEFINITIONS ................................................................................ 1

ARTICLE II       TREATMENT OF ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND TRUSTEE FEES ................................................. 12

ARTICLE III      CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ................................................................................ 13

ARTICLE IV     MEANS FOR IMPLEMENTATION OF PLAN ......................... 17

ARTICLE V      PLAN ADMINISTRATOR ........................................................ 23

ARTICLE VI     CONDITIONS PRECEDENT .................................................... 25

ARTICLE VII    EFFECTS OF PLAN CONFIRMATION ................................... 27

ARTICLE VIII   MISCELLANEOUS PROVISIONS ........................................... 35

# ARTICLE I

## DEFINITIONS

Unless this Plan expressly provides or the context requires otherwise, all capitalized terms used in this Plan shall have the meanings assigned to them in this Article I. Whenever the context requires, terms used herein shall include the plural as well as the singular. A term used but not defined herein has the meaning, if any, given in the Bankruptcy Code or the Bankruptcy Rules.

1.      Accounts Receivable.  "Accounts Receivable" means all of the Debtor's prepetition and postpetition accounts receivable, including, but not limited to, monies, credits, debts or any payment obligations from vendors, lessees, patients or any other party.

2.      Acquired Business.  "Acquired Business" means the Debtor's skilled nursing facility and long-term home health care programs businesses that are to be sold as part of the Primary Asset Sale.

3.      Administrative Claim.  "Administrative Claim" means a Claim for payment of an administrative expense or cost of a kind specified in Bankruptcy Code section 503(b) and referenced in Bankruptcy Code sections 507(a)(2), 507(b) or 1114(e)(2) including, without limitation, the actual, necessary costs and expenses of preserving the Estate and operating the business of the Debtor, including wages, taxes incurred by the Debtor's Estate and allowed as administrative expenses, salaries, or commissions for services rendered after the commencement of these Cases, compensation for legal and other services and reimbursement of expenses allowed or awarded under Bankruptcy Code sections 328, 330(a) or 331.

4.      Allowed Administrative Claim.  "Allowed Administrative Claim" means all or that portion of any Administrative Claim which either:  (a) has become allowed by a Final

NEWY1\8256199.6

Order; or (b) was incurred by the Debtor in the ordinary course of business during these Cases and is due and owing under the terms and conditions of any agreements or applicable law.

      5.      <u>Allowed</u>.  "Allowed" means, with reference to any Claim other than an Allowed Administrative Claim, any Claim against the Debtor that: (a) was either (i) scheduled by the Debtor pursuant to the Bankruptcy Code, other than a Claim scheduled as disputed, contingent or unliquidated, or (ii) proof of which has been timely filed with the Court pursuant to the Bankruptcy Code and the Bar Date Order, or late filed with leave of the Court after notice and a hearing; and (b) either (i) no objection to the allowance of which has been filed within the relevant time period, if any, fixed by an order of the Court, (ii) any objection to the allowance of which has been overruled by a Final Order, or (iii) which has otherwise been allowed by a Final Order.  "Allowed", with reference to any Claim, shall not include: (a) any Claim for prepayment premiums or penalties or interest attributable to default or penalty rates, except as expressly permitted by the Bankruptcy Code or this Plan; (b) unmatured or unearned interest as of the Petition Date, except as expressly permitted by the Bankruptcy Code or this Plan; (c) any amount in excess of an amount allowed by the Court pursuant to Bankruptcy Code section 502(c); (d) any Claim of any entity from which property is determined by the Court to be recoverable under Bankruptcy Code sections 542, 543, 550 or 553, or that is determined by the Court to be a transferee of a transfer avoidable under Bankruptcy Code sections 544, 545, 547, 548 or 549, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under Bankruptcy Code sections 542, 543, 544, 545, 547, 548, 549, 550 or 553; or (e) any Claim of any entity from which property was determined by the Court to be recoverable under Bankruptcy Code sections 542, 543, 550 or 553, or that was determined by the Court to be a transferee of a transfer avoidable under Bankruptcy Code

NEWY1\8256199.6

sections 544, 545, 547, 548 or 549, regardless of any applicable period of limitation, to the extent of the amount for which such entity would have been liable or required to pay or the value of the property which such entity would have been required to turn over or pay under Bankruptcy Code sections 542, 543, 544, 545, 547, 548, 549, 550 or 553.

6.     <u>Allowed Priority Claim</u>.  "Allowed Priority Claim" means all or the portion of any Priority Claim which is or has become an Allowed Claim.

7.     <u>Allowed Priority Tax Claim</u>.  "Allowed Priority Tax Claim" means all or that portion of any Priority Tax Claim which is or has become an Allowed Claim.

8.     <u>Ancillary Real Estate</u>.  "Ancillary Real Estate" means that certain real property owned by the Debtor located at: (a) 166 Battery Avenue, Brooklyn, NY 11209 (Block 6142, Lot No. 0050); (b) 9006 7th Avenue, Brooklyn, NY 11228 (Block 6094, Lot No. 0024); (c) 655 92nd Street, Brooklyn, NY 11228 (Block 6093, Lot No. 0045); (d) 640 92nd Street, Brooklyn, NY 11228 (Block 6142, Lot No. 0046); (e) 9002 7th Avenue, Brooklyn, NY 11228 (Block 6094, Lot No. 0022); (f) 95 Parrot Place, Brooklyn, NY 11228 (Block 6094, Lot No. 0013); (g) 9010 7th Avenue, Brooklyn, NY 11228 (Block 6094, Lot No. 0026); and (h) 670 92nd Street, Brooklyn, NY 11228 (Block 6143, Lot No. 0035).  For purposes of Bankruptcy Code section 1146(a), any transfer, sale or disposition of the Ancillary Real Estate in these Chapter 11 Cases shall be deemed to have occurred in furtherance of, or in connection with this Plan and shall be exempt from all taxes as provided in such section 1146(a).  It is anticipated that the closing of the sale of the Ancillary Real Estate will occur after confirmation of this Plan.

9.     <u>APA</u>. "APA" means that certain Asset Purchase Agreement, dated as of April 18, 2008, by and between Victory Memorial Hospital, a New York not-for-profit

corporation and its subsidiaries, and Dervaal LLC, a Delaware limited liability company, on behalf of a new entity to be formed on behalf of the Leser Group, as amended from time to time.

10.     Assets. "Assets" means all assets of the Debtor of any nature whatsoever, including, without limitation, all property of the Estate pursuant to Bankruptcy Code section 541, Cash, Accounts Receivable, Avoidance and Other Actions, Commercial Tort Claims, the Ancillary Real Estate, the Heal IV Award, the assets being sold in the Primary Asset Sale, equipment, inventory, tax refunds, claims of right, interests and property, real and personal, tangible and intangible, and proceeds of any of the foregoing, including the proceeds of the Primary Asset Sale, the proceeds of the sale of the Ancillary Real Estate, and the proceeds of the sale of any other Assets.  Assets shall include all remaining assets of the Other Debtors upon the dissolution of the Other Debtors.

11.     Available Cash.  "Available Cash" means the Debtor's "Cash on hand" as of the Effective Date and thereafter.

12.     Avoidance and Other Actions.  "Avoidance and Other Actions" means all Commercial Tort Claims as well as actions, causes of action, suits, choses in action, and claims of the Debtor and/or the Estate against any entity or Person, whether direct, indirect, derivative or otherwise arising under Bankruptcy Code section 510 or seeking to avoid a transfer of property or recover property pursuant to Bankruptcy Code sections 542 through 550 or applicable non-bankruptcy law.

13.     Bankruptcy Code.  "Bankruptcy Code" means chapter 11 of title 11 of the United States Code, as now in effect or hereafter applicable to these Cases.

14.     Bankruptcy Rules.   "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended, and the local rules of the Court, as applicable to these Cases.

NEWY1\8256199.6

15.     Bar Date Order.  "Bar Date Order" means the Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof, entered by the Court on May 31, 2007.

16.     Berger Recommendations.  "Berger Recommendations" means the mandates of the New York State Commission on Healthcare Facilities in the 21st Century Berger Commission Report.

17.     Business Day.  "Business Day" means any day except Saturday, Sunday or any other day on which commercial banks in New York are authorized by law to close.

18.     Cases.  "Cases" means these reorganization cases under Chapter 11 of the Bankruptcy Code commenced on the Petition Date, Case Nos. 06-44387, 06-44388, 06-44389.

19.     Cash.   "Cash" means cash and cash equivalents including, without limitation, checks and wire transfers.

20.     Chapter 11.  "Chapter 11" means Chapter 11 of the Bankruptcy Code.

21.     Chapter 11 Cases. "Chapter 11 Cases" means the above-captioned cases.

22.     Claim.  "Claim" means a claim, as defined by Bankruptcy Code section 101(5), against the Debtor, whether or not asserted.

23.     Claims Bar Date.  "Bar Date" means July 20, 2007.

24.     Class.   "Class" means a class or category of Claims as classified and described in Article III of this Plan.

25.     Commercial Tort Claims.  "Commercial Tort Claims" means claims of the Debtor arising in tort that arose prior to the Petition Date in the course of the Debtor's business.

26.     Committee.  "Committee" means the Official Committee of Unsecured Creditors appointed in these Cases on November 28, 2006.

27.     Confirmation Date.  "Confirmation Date" means the date on which the clerk of the Court enters the Confirmation Order on the Court's docket.

28.     Confirmation Hearing.  "Confirmation Hearing" means the hearing on confirmation of this Plan pursuant to Bankruptcy Code section 1129.

29.     Confirmation Order.  "Confirmation Order" means the order entered by the Court confirming this Plan in accordance with Chapter 11 of the Bankruptcy Code.

30.     Court.  "Court" means the United States Bankruptcy Court for the Eastern District of New York, the United States District Court for the Eastern District of New York and/or the Second Circuit Court of Appeals, as applicable.

31.     Creditor.  "Creditor" means a holder of a Claim.

32.     Debtor.  "Debtor" means Victory Memorial Hospital, debtor and debtor in possession, and includes the Estate, where appropriate.

33.     Dervaal.  "Dervaal" means Dervaal LLC, a Delaware limited liability company or their successors in interest.

34.     DASNY.  "DASNY" means the Dormitory Authority of the State of New York.

35.     DASNY Bond Claim.  "DASNY Bond Claim" means DASNY's secured claim, which has been allowed by order of this Court, related to DASNY Bonds and DASNY Prepetition Loan Obligations. For the avoidance of doubt, DASNY Bond Claim includes, but is not limited to, all principal, interest and redemption premium on the DASNY Bonds, all fees and costs of or incurred by DASNY in connection with defeasance and redemption of the DASNY Bonds and all other amounts due and payable to DASNY under the Prepetition Loan Agreement.

NEWY1\8256199.6

36. <u>DASNY Bonds</u>.  "DASNY Bonds" means Victory Memorial Hospital FHA Insured Mortgage Hospital Revenue Bonds, Series 1999 and all of the obligations of Victory Memorial Hospital related to such bonds.

37. <u>DASNY DIP</u>.  "DASNY DIP" means that certain Amended and Restated Loan and Reimbursement Agreement by and between DASNY and the Debtor and the Other Debtors, dated November 14, 2007, as amended, whereby DASNY agreed to provide up to $9,000,000 in debtor in possession financing to the Debtor and Other Debtors.

38. <u>DASNY DIP Claim</u>.  "DASNY DIP Claim" means DASNY's postpetition secured and superpriority administrative claim related to the DASNY DIP as approved and allowed by orders of the Court.

39. <u>DASNY Payoff Date</u>.  "DASNY Payoff Date" means the date on which the Debtor transfers, or causes to be transferred, proceeds to the Trustee for the DASNY Bonds sufficient to defease and redeem the DASNY Bonds and satisfy the DASNY Bond Claim, which date shall be the earlier of: (a) the Primary Asset Sale Closing Date; or (b) the Debtor's receipt of the HEAL IV Award.

40. <u>DASNY Prepetition Loan Agreement</u>.  "DASNY Prepetition Loan Agreement" means, collectively, that certain loan agreement by and between DASNY and Victory Memorial Hospital, dated April 28, 1999, in the principal amount of $36,417,103.45 and the FHA Insured Note and Mortgage.

41. <u>DASNY Prepetition Loan Obligations</u>.  "DASNY Prepetition Loan Obligations" means those certain prepetition secured obligations owed to DASNY pursuant to the DASNY Prepetition Loan Agreement less payments received by DASNY through the earlier of the Effective Date or the DASNY Payoff Date.

NEWY1\8256199.6

42. <u>Disallowed Claim</u>. "Disallowed Claim" means any Claim or portion thereof which has been disallowed by a Final Order and includes any Claim which is not an Allowed Claim for any other reason.

43. <u>Disclosure Statement</u>. "Disclosure Statement" means the Second Amended Disclosure Statement with Respect to the Second Amended Plan of Reorganization For Victory Memorial Hospital, dated July 3, 2008, which was approved by the Court pursuant to Bankruptcy Code section 1125 by order entered July 7, 2008, 2008.

44. <u>Effective Date</u>. "Effective Date" means a Business Day selected by the Debtors, which is, unless the Confirmation Order directs otherwise, five (5) Business Days after the date on which each of the conditions to this Plan's Effective Date set forth herein has either been satisfied or waived in accordance with this Plan.

45. <u>ERISA</u>. "ERISA" means the Employee Retirement Income Security Act of 1974, as amended.

46. <u>Estate</u>. "Estate" means the estate of Victory Memorial Hospital created by Victory Memorial Hospital's Chapter 11 case pursuant to Bankruptcy Code section 541.

47. <u>Fee Claim</u>. "Fee Claim" has the meaning provided in Article IV of this Plan.

48. <u>Final Order</u>. "Final Order" means an order or judgment of the Court as to which: (a) any appeal or petition for review or rehearing that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal or petition for review or rehearing has been filed.

49. <u>Funds</u>. "Funds" means those jointly administered labor-management benefit trust funds, including, the 1199SEIU National Benefit Fund for Health and Human

NEWY1\8256199.6

Service Employees; 1199SEIU Healthcare Employees Pension Fund; League1199SEIU Training and Upgrading Fund; 1199SEIU/Employer Child Care Fund; and the 1199SEIU/League Job Security Fund.

50.     Heal IV Award.  "Heal IV Award" means that certain grant awarded, but not yet provided to Victory Memorial Hospital by the NYDOH in the amount of $25 million.

51.     Main Campus.  "Main Campus" means that certain medical facility owned by the Debtor located at 699 92nd Street (Tax Block 6094 Lot 1) in Brooklyn, NY.

52.     MIMO Claim.  "MIMO Claim" refers to the alleged Secured Claim asserted by Maimonides Medical Center in the amount of $5,250,000.

53.     NYDOH.  "NYDOH" means the New York State Department of Health.

54.     Other Debtors.  "Other Debtors" means both Victory Memorial Pharmacy Services, Inc. and Victory Memorial Ambulances Services, Inc.

55.     PBGC Claim.  "PBGC Claim" means that Claim asserted by the Pension Benefit Guaranty Corporation which will be allowed pursuant to this Plan in the amount of $5.8 million upon the Court's approval of the settlement reached by the Debtor, the Other Debtors and the Pension Benefit Guaranty Corporation.

56.     Person.  "Person" means an individual, corporation, partnership, limited liability company, joint venture, association, joint stock company, trust, estate, unincorporated organization, governmental unit, government (or agency or political subdivision thereof), or other entity, including, without limitation, the Debtor and the Other Debtors.

57.     Petition Date.  "Petition Date" means November 15, 2006.

     NEWY1\8256199.6

58.  Plan.  "Plan" means this Plan of Reorganization of Victory Memorial Hospital, dated May 15, 2008, as altered, modified, or amended in accordance with the Bankruptcy Code and the Bankruptcy Rules.

59.  Plan Administrator.  "Plan Administrator" means the Person designated by the Debtor and the Committee, as the representative of the Debtor and the Estate for purposes of administering and consummating this Plan.

60.  Primary Asset Sale.  "Primary Asset Sale" means the Debtor's sale of the Main Campus and Acquired Business, which sale was approved by order of the Court entered July 2, 2008, and, for purposes of Bankruptcy Code section 1146(a), was made and entered into, in furtherance of under, or in connection with this Plan.

61.  Primary Asset Sale Closing Date.  "Primary Asset Sale Closing Date" means the date on which the Debtor closes the Primary Asset Sale, which will be after confirmation of the Plan.

62.  Priority Claim.  "Priority Claim" means a Claim entitled to priority under Bankruptcy Code sections 507(a)(4) and 507(a)(5), if Allowed.

63.  Priority Tax Claim.  "Priority Tax Claim" means a Claim of a governmental unit of a kind entitled to priority under Bankruptcy Code section 507(a)(8), if Allowed.

64.  Professional Fee Reserve.  "Professional Fee Reserve" shall mean that reserve created on the Effective Date by the Debtor and held by an escrow agent representing Cash designated for the payment of Professionals and Allowed Fee Claims only.

65.  Professionals.  "Professionals" means all professionals employed in these Cases pursuant to Bankruptcy Code sections 327 and 1103.

NEWY1\8256199.6

66. <u>Resmac Adversary Proceeding</u>. "Resmac Adversary Proceeding" shall mean the adversary proceeding the Committee commenced against Resmac 2 LLC, as assignee of Madison Realty Capital, L.P.

67. <u>Resmac Claim</u>. "Resmac Claim" means the alleged Secured Claim of Resmac 2 LLC, as assignee of Madison Realty Capital, L.P., which Claim is disputed by the Debtor and the Committee and which Claim is the subject of the Resmac Adversary Proceeding that will continue to be prosecuted by the Committee after the Effective Date.

68. <u>Secured Claim</u>. "Secured Claim" means a Claim of a Creditor that is secured by property of the Estate, to the extent of the value of the Creditor's interest in the Estate's interest in such property, as provided in Bankruptcy Code section 506(a). Secured Claim also means a Claim of a creditor that is subject to setoff under Bankruptcy Code section 553, to the extent of the amount subject to setoff, as provided in Bankruptcy Code section 506(a).

69. <u>Secured Lender Claim</u>. "Secured Lender Claim" means the Secured Claim of any prepetition lender including the Resmac Claim, MIMO Claim, PBGC Claim and Union/Funds Claims, and any other mortgage-related claim other than the DASNY Bond Claim. Notwithstanding any of forgoing, to the extent that DASNY DIP Claim is not paid in Cash in full on the Effective Date as an Administrative Claim, DASNY DIP Claim will also constitute an Allowed Secured Lender Claim.

70. <u>State</u>. "State" means the State of New York.

71. <u>Subordinated Claim</u>. "Subordinated Claim" means a Claim subordinated under Bankruptcy Code Section 510.

NEWY1\8256199.6

72.     Trustee Fees.  "Trustee Fees" means all fees and charges assessed against the Estate of the Debtor under 28 U.S.C. § 1930 of the United States Code.

73.     Unsecured Claim.  "Unsecured Claim" means a Claim that is not secured by property of the Estate or otherwise entitled to treatment as a secured Claim under Bankruptcy Code section 506, is not an Administrative Claim, Secured Claim, Priority Claim or a Priority Tax Claim, and is not otherwise entitled to priority under Bankruptcy Code sections 503 or 507.

74.     Victory Memorial Ambulance.  "Victory Memorial Ambulance" means Victory Memorial Ambulance Services, Inc.

75.     Victory Memorial Pharmacy.   "Victory Memorial Pharmacy" means Victory Memorial Pharmacy Services, Inc.

76.     Union.  "Union" means 1199SEIU United Healthcare Workers East.

77.     Union/Funds Claims.  "Union/Funds Claims" means those Claims asserted in the approximate amount of $4.1 million asserted by the Union and/or Funds which Claims the Debtor is reviewing to determine possible defenses.

78.     Unsecured Deficiency Claim.  "Unsecured Deficiency Claim" means any portion of a Claim to the extent that the value of the Estate's interest in any property securing the Claim is less than the amount of the Claim, or to the extent that the amount of any such Claim subject to setoff is less than the amount of such Claim, as determined pursuant to Bankruptcy Code section 506(a).

## ARTICLE II

### TREATMENT OF ADMINISTRATIVE CLAIMS,
### PRIORITY TAX CLAIMS, AND TRUSTEE FEES

1.     DASNY DIP Claim.  In full and final satisfaction, settlement, release, and discharge of, and in exchange for any Allowed Claim related to the DASNY DIP, DASNY will

NEWY1\8256199.6

receive Cash equal to the amount due pursuant to the terms of the DASNY DIP on the Effective Date or as soon as practicable thereafter.  The Debtor estimates that the DASNY DIP Claim will be approximately $9,000,000 plus interest on the Effective Date.

2.    Administrative Claims.  In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims have not been classified and are treated as described herein. Except as otherwise provided in this Plan, by written agreement of the holder of an Allowed Administrative Claim to accept different treatment than provided under this Plan, or by order of the Court, a Person holding an Allowed Administrative Claim will receive Cash equal to the unpaid portion of such Allowed Administrative Claim which has come due for payment under any applicable order or law, as soon as practicable after the later of:  (a) the third Business Day after the Effective Date; (b) the date on which such Person becomes the holder of such an Allowed Administrative Claim; or (c) the date or dates when that Claim is payable by its terms, consistent with past practice and in accordance with past terms.  Allowed Administrative Claims and payments for Allowed Fee Claims shall only be made in accordance with any Final Order of the Court.

3.    Priority Tax Claims.  In accordance with Bankruptcy Code section 1123(a)(1), Priority Tax Claims have not been classified and are treated as described in this Section of this Plan.  Allowed Priority Tax Claims shall be paid by the Debtor.  Unless otherwise agreed by the holders of the Allowed Priority Tax Claims, any Person holding an Allowed Priority Tax Claim will receive, as determined by the Plan Administrator in its sole discretion and in full satisfaction of such Claim:  (a) payment in Cash in full on the later of the Effective Date or the date such Claim becomes an Allowed Claim; or (b)  Cash over a period not exceeding six (6) years after date of assessment of such Claim, with interest at a rate equal to

four percent (4%) per year, payable monthly, in periodic payments, having the value of such Claim as of the Effective Date.

4. <u>Trustee Fees</u>. Trustee Fees include all fees and charges assessed against the Debtor and the Other Debtors under chapter 1930 of title 28, United States Code. All Trustee Fees will be paid in full by the Debtor or Plan Administrator, as the case may be, as they become due and owing.

## ARTICLE III

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

1. <u>Classification and Specification of Treatment of Claims</u>. All Claims, except those described in Article II, are placed in the following Classes of Claims, pursuant to Bankruptcy Code section 1123(a)(1), which section specifies the treatment of such Classes of Claims and of their impaired or unimpaired status, pursuant to Bankruptcy Code sections 1123(a)(2) and 1123(a)(3). A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of the Class and is classified in a different Class to the extent that the Claim qualifies within the description of that different Class. A Claim is in a particular Class only to the extent that the Claim is an Allowed Claim in that Class and has not been paid, released, withdrawn, waived, or otherwise satisfied under this Plan. Unless this Plan expressly provides otherwise, when a Class includes a subclass, each subclass is a separate Class for all purposes under the Bankruptcy Code, including, without limitation, voting and distribution.

Subject to all other applicable provisions of this Plan (including its distribution provisions), classified Claims shall receive the treatment set forth below. This Plan will not provide any distributions on account of a Claim to the extent that such Claim has been disallowed, released, withdrawn, waived, or otherwise satisfied or paid as of the Effective Date,

including, without limitation, payments by third parties. Except as specifically provided in this Plan, this Plan will not provide any distributions on account of a Claim, the payment of which has been assumed by a third party. Except as otherwise specifically provided in this Plan or by further order of the Court, all treatment, allowances, or payments of Claims which have been specified or otherwise fixed or required by order of the Court shall not be impaired by this Plan, the rights of the holders of such Claims as provided in such orders shall not be altered by this Plan. Any holder of any Claim in any Class may agree, pursuant to Bankruptcy Code section 1123(a)(4), to a treatment of such Claim that is less favorable (but not more favorable) than any other Claim in such Class.

Classes of Claims

Class 1 – Secured Tax Claims. This Class consists of all Allowed Secured Tax Claims for federal, state and local taxes. Each Allowed Claim in this Class shall be in a separate subclass. Unless otherwise agreed by the holder of any Allowed Claim in this Class, each holder of an Allowed Claim in this Class shall receive Cash payments totaling the Allowed Claim on the later of (a) the third (3rd) Business Day after the Effective Date; or (b) the date on which there is a Final Order allowing such Claim. The Debtor estimates that there will be no Allowed Class 1 Claims on the Effective Date.

Class 2 – DASNY Bond Claim. This Class consists of the amount of the Allowed DASNY Bond Claim as of the DASNY Payoff Date. On the DASNY Payoff Date, the Allowed DASNY Bond Claim shall be satisfied and paid in Cash in full by the Debtor or the Plan Administrator, as the case may be. The Debtor estimates that the Allowed DASNY Bond Claim

will be approximately $21,000,000 [1] on the Effective Date, unless such DASNY Bond Claim has been paid in Cash in full prior to the occurrence of the Effective Date.

Class 3 – Secured Lender Claims.  This Class consists of all Allowed Secured Lender Claims, including, but not limited to, the Resmac Claim, MIMO Claim, PBGC Claim and Union/Funds Claims, to the extent they are Allowed as Secured Claims.  Each Allowed Claim in this Class shall be in a separate subclass.  Unless otherwise agreed by the holder of any Allowed Claim in this Class, each holder of an Allowed Secured Lender Claim will be satisfied by payment in Cash in full by the Plan Administrator on the later of (a) the third (3rd) Business Day after the Effective Date; or (b) the date on which there is a Final Order allowing such Claim. The Debtor estimates that the Allowed Class 3 Claims will be approximately $12,650,000 on the Effective Date.  Notwithstanding any of the forgoing, consistent with the definition of Secured Lender Claims, to the extent the DASNY DIP Claim is not paid in Cash in full on the Effective Date as an Administrative Claim, the DASNY DIP Claim will also constitute an Allowed Secured Lender Claim.

Class 4 – Other Secured Claims.  This Class consists of all Allowed Secured Claims, other than Secured Lender Claims and the DASNY DIP Claim, and includes, but is not limited to, obligations to capital equipment lessors or other holders of Secured Claims.  Each Allowed Claim in this Class shall be in a separate subclass.  Unless otherwise agreed by the holder of any Allowed Claim in this Class, each holder of an Allowed Claim in this Class will be satisfied by: (a) the return of the property subject to the senior, perfected and indefeasible lien or security interest; or (b) the payment of any amounts owed by Dervaal as assignee pursuant to the Primary Asset Sale.  Any difference with respect to the amount of a Class 4 Claim and the fair

---

[1] The precise amount of the DASNY Bond Claim cannot be determined until on or about the DASNY Payoff Date and a reconciliation of what is required to fully defease and redeem the DASNY Bonds is conducted.

NEWY1\8256199.6

market value of the equipment shall constitute an Unsecured Deficiency Claim, which Claim shall be classified as a Class 6 Claim. The Debtor estimates that there will be approximately $0 in Allowed Claims in Class 4.

Class 5 – Unsecured Priority Claims. This Class consists of all Allowed Unsecured Priority Claims that are specified as having priority in Bankruptcy Code sections 507(a)(4) and 507(a)(5), if any such Claims still exist as of the Effective Date. Unless otherwise agreed by the holder of any Allowed Claim in this Class, each Allowed Claim under Bankruptcy Code sections 507(a)(4) and 507(a)(5), which has not been satisfied as of the Effective Date, shall be paid in full in Cash on the later of: (a) the third (3rd) Business Day after the Effective Date or such other date the Plan Administrator deems appropriate; or (b) the date on which there is a Final Order allowing such Claim. The Debtor estimates that there will be approximately a total of $200,000 of Allowed Claims in Class 5.

Class 6 – Unsecured Claims. This Class consists of all Allowed Unsecured Claims, including, without limitation, Allowed Unsecured Claims arising from the rejection of executory contracts and unexpired leases and any Unsecured Deficiency Claims. Unless otherwise agreed by the holder of any Allowed Claim in this Class, each holder of an Allowed Unsecured Claim shall be entitled to receive Cash equal to such holder's pro rata share of Available Cash after the payment of (or after an adequate reserve having been made for the payment of) Allowed Administrative Claims, Allowed Secured Claims, Allowed Priority Tax Claims, Allowed Priority Claims, and the costs for administering the Plan (including all professional fees and expenses payable under the Plan), on the later of: (a) the third (3rd) Business Day after the Effective Date or as a soon as reasonably practicable thereafter as determined by the Plan Administrator; and (b) the date on which there is a Final Order allowing

NEWY1\8256199.6

such Claim.  The Debtor estimates that, after post-Effective Date settlement and liquidation of the Allowed Unsecured Claims, there will be approximately $49,768,000 in Allowed Claims in Class 6.

Class 7 – Subordinated Claims.  This Class consists of subordinated Claims under Bankruptcy Code section 510 against the Debtor.  Subordinated Claims holders under Bankruptcy Code section 510 shall receive no distribution on account of such claims.  The Debtor estimates that there will be no Allowed Class 7 Claims on the Effective Date.

## ARTICLE IV

## MEANS FOR IMPLEMENTATION OF PLAN

1.      Implementation.  This Plan will be implemented by the Plan Administrator in a manner consistent with the terms and conditions set forth in this Plan and the Confirmation Order.

2.      Funding for this Plan.  This Plan will be funded from the proceeds of the Assets, including, but not limited to, the proceeds from the Primary Asset Sale, the proceeds of the sale of the Ancillary Real Estate, and the proceeds of the liquidation of any other Assets. With respect to the Assets that have not been converted to Cash, the Debtor or the Plan Administrator shall liquidate and convert into Cash the Assets (other than those Assets abandoned) and such Cash shall be distributed by the Plan Administrator in accordance with this Plan.

3.      Vesting of Assets in the Debtor.  As of the Effective Date, pursuant to the provisions of Bankruptcy Code section 1141(b) and (c), all Assets shall vest in the post-Effective Date Debtor free and clear of all Claims, liens, encumbrances, charges, membership interests and other interests, except as otherwise expressly provided in this Plan or the Confirmation Order, and subject to the terms and conditions of this Plan and the Confirmation Order.

4.	_Continuing Existence_.  From and after the Effective Date, the Debtor shall continue in existence for the purposes of (i) winding up its affairs as expeditiously as reasonably possible, (ii) liquidating, by conversion to Cash, or other methods, all remaining Assets, as expeditiously as reasonably possible, (iii) enforcing and prosecuting claims, interests, rights and privileges of the Debtor, including, without limitation, the prosecution of Avoidance and Other Actions, (iv) resolving disputed Claims, (v) administering this Plan and (vi) filing appropriate tax returns.  All of the foregoing actions shall be taken by the Plan Administrator on behalf of the Debtor.

5.	_Closing of the Debtor's Chapter 11 case_.  When all disputed Claims filed against the Debtor have become Allowed Claims or have been disallowed, and all Assets have been liquidated and converted into Cash (other than those Assets abandoned), and such Cash has been distributed in accordance with this Plan, or at such earlier time as the Plan Administrator deems appropriate, the Plan Administrator shall seek authority from the Court to close the Debtor's Chapter 11 case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

6.	_Corporate Action_.  This Plan will be administered by the Plan Administrator and all actions taken under this Plan in the name of the Debtor shall be taken through the Plan Administrator.  Upon the distribution of all Assets pursuant to this Plan and the filing by the Plan Administrator of a certification to that effect with the Court (which may be included in the application for the entry of the final decree), the Debtor shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of Debtor or payments to be made in connection therewith, _provided_, _however_, that the Debtor may take appropriate action to dissolve under applicable law and provide for the appropriate disposition of any restricted charitable donations.  From and after the Effective Date,

the Debtor shall not be required to file any document, or take any action, to withdraw its business operations from any states where the Debtor previously conducted business.

7.    Winding Up Affairs.  Following the Effective Date, the post-Effective Date Debtor shall not engage in any business activities or take any actions, except those necessary to consummate this Plan and wind up the affairs of the Debtor.

8.    Powers and Duties of the Plan Administrator.  The Plan Administrator will act for the Debtor in a fiduciary capacity as applicable to a board of directors and shall be responsible for the liquidation of the Debtor's remaining Assets, administration of the Plan and wind-down of the Debtor and its Estate post-Effective Date, subject to the provisions of this Plan.  The powers and duties of the Plan Administrator shall include:

(i)    the power to invest Cash in accordance with Bankruptcy Code section 345, and withdraw and make distributions of Cash to holders of Allowed Claims and pay taxes and other obligations owed by the Debtor or incurred by the Plan Administrator in connection with the wind-down of the Estate, from Available Cash in accordance with this Plan;

(ii)    subject to the approval of the Committee (which approval shall not be unreasonably withheld), the power to engage attorneys, consultants, agents, employees and all professional persons, to assist the Plan Administrator with respect to the Plan Administrator's responsibilities;

(iii)    the authority to pay the fees and expenses of the attorneys, consultants, agents, employees and professional persons engaged by the Plan Administrator and the Committee and to pay all other expenses for winding down the affairs of the Debtor in each case in accordance with a wind-down budget, or as otherwise agreed to by the Plan Administrator or determined by the Court, and subject to the approval of the Committee (which approval shall not be unreasonably withheld);

(iv)    subject to the approval of the Committee (which approval shall not be unreasonably withheld), the power to dispose of, and deliver title to others of, or otherwise realize the maximum value of all the remaining Assets;

(v)    subject to the approval of the Committee (which approval shall not be unreasonably withheld), the power to object to, compromise (subject to the approval of the Court) and settle (subject to the approval of the Court) Claims;

(vi)    the authority to act on behalf of the Debtor in all adversary proceedings and contested matters (including, without limitation, any Avoidance and Other

Actions), then pending or that can be commenced in the Court and in all actions and proceedings pending or commenced elsewhere, and, subject to the approval of the Committee (which approval shall not be unreasonably withheld), to settle (subject to the approval of the Court), retain, dispute or enforce any claim and otherwise pursue actions involving Assets of the Debtor that could arise or be asserted at any time under the Bankruptcy Code, unless otherwise waived or relinquished in this Plan;

(vii)    the power to implement and/or enforce all provisions of this Plan; and

(viii)    such other powers as may be vested in or assumed by the Plan Administrator pursuant to this Plan or Court Order or as may be necessary and proper to carry out the provisions of this Plan.

9.    <u>Avoidance and Other Actions</u>.  On and after the Effective Date, the Plan Administrator and Committee shall have the exclusive right to commence and to continue the prosecution of all Avoidance and Other Actions; <u>provided</u>, <u>however</u>, that, notwithstanding anything to the contrary in this Plan, the Committee shall continue to prosecute the Resmac Adversary Proceeding.  The Plan Administrator and the Committee shall not prosecute the same Avoidance and Other Actions.  The Plan Administrator and the Committee shall coordinate their efforts with respect to the prosecution of Avoidance and Other Actions so as to avoid any duplication of effort.  Except as otherwise set forth in this Plan, all Avoidance and Other Actions shall survive confirmation and the commencement and/or prosecution of Avoidance and Other Actions shall not be barred or limited by any estopppel, whether judicial, equitable or otherwise. In reviewing the Disclosure Statement and this Plan, and in determining whether to vote for or against this Plan, Creditors (including parties that received payments or transfers from the Debtor within ninety (90) days prior to the Petition Date and insiders that received payments or transfers from the Debtor within one (1) year prior to the Petition Date) and other parties should consider that Avoidance and Other Actions may exist against them, that, except as otherwise set forth in this Plan, this Plan preserves all Avoidance and Other Actions, and that this Plan authorizes the Plan Administrator and the Committee to prosecute same.

NEWY1\8256199.6

10. <u>Corporate Documents, Employment Related Agreements and Compensation Programs</u>.

<u>Agreements, Instruments, and Documents</u>.   All organizational agreements, charter documents, instruments, and documents required under this Plan to be executed or implemented, together with such others as may be necessary, useful or appropriate in order to effectuate this Plan shall be executed on or before the Effective Date or as soon thereafter as is practicable.

<u>Prepetition Employment Agreements and Compensation Programs</u>.   As of the Effective Date, with the exception of the collective bargaining agreements, all employment, severance, retirement, indemnification, employee benefit, profit-sharing and related plans or agreements, whether or not qualified under ERISA, health care plans, disability plans and incentive plans, that were in effect on the Petition Date and that have not previously been terminated or superseded shall be terminated and deemed rejected.   All employees currently employed by the Debtor under such agreements as of the Effective Date shall be terminated thereon.

<u>Corporate Action</u>.   All matters provided under this Plan involving the corporate structure of the Debtor or corporate action to be taken by or required of the Debtor, shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement or further action by directors of the Debtor.

11. <u>Plan Distributions</u>.   All Cash necessary for the Plan Administrator to make payments pursuant to this Plan shall be obtained from the Primary Asset Sale, the sale of the Ancillary Real Estate, Available Cash, the HEAL IV Award and the remaining Assets.

NEWY1\8256199.6

12.     <u>Preservation of Avoidance and Other Actions</u>.   Except as otherwise provided in this Plan, the Plan Administrator and Committee shall retain and hold all rights on behalf of the Debtor, the Estate, and post-confirmation Estate, to any and all Avoidance and Other Actions, rights and causes of action that they or the Estate may hold against any entity or Person; <u>provided</u>, <u>however</u>, that, notwithstanding anything to the contrary in this Plan, the Committee shall continue to prosecute the Resmac Adversary Proceeding.   The Plan Administrator and the Committee shall not prosecute the same Avoidance and Other Actions. The Plan Administrator and the Committee shall coordinate their efforts with respect to the prosecution of Avoidance and Other Actions so as to avoid any duplication of effort.   Except as otherwise set forth in this Plan, all Avoidance and Other Actions shall survive confirmation and the commencement and/or prosecution of Avoidance and Other Actions shall not be barred or limited by any estopppel, whether judicial, equitable or otherwise.

13.     <u>Bar Date for Certain Fee Claims</u>.   Each Person retained or requesting compensation in these Cases, pursuant to Bankruptcy Code sections 327, 328, 330, 331, 503(b) and/or 1103, must file with the Court an application for allowance of such Claims ("<u>Fee Claims</u>") within sixty (60) days after the Effective Date.   All such Fee Claims for which an application is not timely filed shall be forever barred.   Objections to each such application may be filed in accordance with the Bankruptcy Rules.   The Court shall determine all such Fee Claims.

14.     <u>Professional Fee Reserve</u>.   Two (2) Business Days after the Confirmation Date, each Professional shall provide the Debtor with estimates of all fees and disbursements that will be incurred by each Professional up to and including the Effective Date, which estimates shall be updated by an additional estimate provided to the Debtor one (1) Business Day prior to

the Effective Date. The Debtor and Plan Administrator, as applicable, shall reserve, in an escrow account held by a reputable escrow agent, the aggregate amount of these estimates and no liens shall attach to said proceeds to the extent of unpaid Allowed Fee Claims of the Professionals, including, but not limited to, unpaid holdbacks until such fees are paid. The balance of the funds in the Professional Fee Reserve, after the payment of all final Allowed Fee Claims of the Professionals, shall be returned to the Debtor and shall constitute Available Cash and shall be distributed by the Plan Administrator in accordance with this Plan.

15.     <u>Bar Date for Other Administrative Claims</u>. Unless this Plan or the Court fixes a different date, with the exception of Fee Claims, must be filed no later than thirty (30) days after the Effective Date. All such Claims not timely filed shall be forever barred. The Debtor, the Plan Administrator or any other party in interest may object to the allowance of any such Claim filed before, on, or after the Effective Date.

16.     <u>Further Authorization</u>. The Debtor or the Plan Administrator shall be entitled to seek such orders, judgments, injunctions and rulings from the Court, in addition to those specifically listed in this Plan, as may be necessary to carry out the intentions and purposes, and to give full effect to the provisions of this Plan. The Court shall retain jurisdiction to enter such orders, judgments, injunctions and rulings.

## ARTICLE V

## PLAN ADMINISTRATOR

1.     <u>Appointment of the Plan Administrator</u>. The Confirmation Order shall provide for the appointment of the Plan Administrator. The Plan Administrator shall be responsible for the liquidation of the Debtor's remaining Assets, administration of the Plan and the wind-down of the Debtor and its Estate post-Effective Date. The Debtor shall file notice of appointment of the Plan Administrator and the Plan Administrator's hourly rate on or before

NEWY1\8256199.6

August 1, 2008.  The Plan Administrator shall be a third-party non-affiliate of the Debtor with sufficient expertise and experience liquidating a Chapter 11 case.  The compensation of the Plan Administrator shall be at the Plan Administrator's customary hourly rate.  The payment of the Plan Administrator's compensation shall be subject to the review and approval of the Committee. The Plan Administrator shall be deemed the Estate's representative in accordance with Bankruptcy Code section 1123 and shall have all powers, authority and responsibilities specified in this Plan, including, without limitation, the powers of a trustee under Bankruptcy Code sections 704 and 1106.

2.    Employment of Professionals.   The Plan Administrator is authorized, without further order of the Court, but subject to the approval of the Committee, to employ such Persons, including Professionals, as the Plan Administrator may deem necessary to enable it to perform its functions hereunder.  Such Persons shall be compensated and reimbursed for their reasonable and necessary fees and out-of-pocket expenses on a monthly basis from the Debtor's Estate without further notice, hearing or approval of the Court, subject to the approval of the Committee.

3.    Exemption from Certain Taxes.   Pursuant to Bankruptcy Code section 1146(a), all transactions, including the transfers described herein, and the delivery and recordation of any instrument, under, in furtherance of, or in connection with this Plan shall not be subject to any stamp tax, real estate transfer tax or similar transfer fee or tax.

4.    Resignation, Death or Removal of the Plan Administrator.   The Plan Administrator may resign at any time upon not less than thirty (30) days' written notice to the Debtor and the Committee.  The Plan Administrator may be removed at any time by the Committee for cause upon application to the Court on five (5) days' written notice to the Plan

NEWY1\8256199.6

Administrator.   In the event of resignation, removal, death or incapacity of the Plan Administrator and thereupon the successor Plan Administrator, without further act, shall become fully vested with all of the rights, powers, duties and obligations of his predecessor.   No successor Plan Administrator hereunder shall in any event have any liability or responsibility for the acts or omissions of any of his or her predecessors.

5.     No Agency Relationship.  The Plan Administrator shall not be deemed to be the agent of any of the holders of Claims in connection with the funds held or distributed pursuant to this Plan.  The Plan Administrator shall not be liable for any mistake of fact or law or error in judgment or any act or omission of any kind unless it constitutes gross negligence or willful misconduct or breach of fiduciary duty on the part of the Plan Administrator.  The Plan Administrator shall be indemnified and held harmless, including the cost of defending such claims and attorneys' fees in seeking indemnification, by the Estate against any and all claims arising out of his duties under the Plan, except to the extent his actions constituted gross negligence or willful misconduct or breach of fiduciary duty.  The Plan Administrator may conclusively rely, and shall be fully protected personally in acting upon any statement, instrument, opinion, report, notice, request, consent, order, or other instrument or document which he believes to be genuine and to have been signed or presented by the proper party or parties.  The Plan Administrator may rely upon information previously generated by the Debtor and such additional information provided to him by former employees of the Debtor.

6.     Plan Administrator's Bond.  The Plan Administrator shall obtain a bond in an amount equal to 110% of Available Cash.

NEWY1\8256199.6

# ARTICLE VI

## CONDITIONS PRECEDENT

1.      Conditions to Confirmation.  Confirmation of this Plan shall not occur and the Court shall not enter the Confirmation Order unless all of the requirements of the Bankruptcy Code for Confirmation of this Plan with respect to the Debtor shall have been satisfied.  If Confirmation shall not occur, this Plan shall be null and void and shall have no force nor effect, and this Plan shall be deemed withdrawn unless the Court shall have entered all orders (which may be orders included within the Confirmation Order) required to implement this Plan.

2.      Waiver and Nonfulfillment of Conditions to Confirmation.  In the event that the Debtor determines that the conditions to confirmation which it may waive cannot be satisfied and should not, in its sole discretion, be waived, the Debtor may propose a new plan, may modify this Plan as permitted by law, or may request other appropriate relief.

3.      Confirmation Order Provisions for Pre-Effective Date Actions.   The Confirmation Order shall empower and authorize the Debtor to take or cause to be taken, prior to the Effective Date, all actions which are necessary to enable it to implement the provisions of this Plan and satisfy all other conditions precedent to the effectiveness of this Plan.

4.      Conditions to Effective Date.  The Effective Date shall not occur unless: (a) the Court shall have entered the Confirmation Order, in form and substance reasonably satisfactory to the Debtor and the Committee, which shall have become a Final Order; (b) no request for revocation of the Confirmation Order under Bankruptcy Code section 1144 shall have been made and still be pending; (c) the Primary Asset Sale Closing Date shall have occurred; and (d) the sale of the Ancillary Real Estate shall have closed.

5.      Nonfulfillment of Conditions to Effective Date.   In the event that the Debtor determines that the conditions to the Effective Date set forth in the immediately

NEWY1\8256199.6

foregoing paragraph of this Plan cannot be satisfied, the Debtor may propose a new plan, may modify this Plan as permitted by law, or may request other appropriate relief.

6.     Effective Date Events.  On the Effective Date, the following actions shall have taken place: (a) all payments to be made on the Effective Date and all other actions to be taken on or before the Effective Date pursuant to this Plan by the Debtor shall be made or taken or duly provided for; (b) any documents, including orders or agreements, necessary to implement this Plan as of the Effective Date must be executed; and (c) all other events and actions specified in this Plan to occur on the Effective Date.

## ARTICLE VII

## EFFECTS OF PLAN CONFIRMATION

1.     Satisfaction of Claims.  Holders of Claims shall receive the distributions provided for in this Plan, if any, in full settlement and satisfaction of all such Claims, and any interest accrued thereon.

2.     Releases.  Except as otherwise specifically provided in this Plan, (a) the Debtor, together with its current and prior officers and directors and their respective agents, counsel and advisors (all in their respective capacities as such); and (b) the Committee, together with its current and prior members (solely in their capacity as members of the Committee), agents, counsel and advisors, and their respective employees, officers, directors, and their respective agents, advisors and counsel (all in their respective capacities as such) (collectively, the "Plan Releasees"), are released and discharged from any and all claims, obligations, rights, causes of action and liabilities relating to the Debtor, the Other Debtors, these Chapter 11 Cases, the formulation, negotiation, preparation, confirmation, implementation and administration of this Plan or any consent, action, omission, transaction or business dealing from and after the Petition Date and prior to the Effective Date; provided, however, that this Plan Releasees shall

not be released from claims arising under (a) the Internal Revenue Code, or any state, city or municipal tax code; (b) the environmental laws of the United States, any state, city or municipality; (c) any criminal laws of the United States, any state, city or municipality; (d) this Plan; or (e) actions related to willful misconduct, gross negligence, misuse of confidential information that causes damages, breach of fiduciary duty and ultra vires acts. Any of the foregoing parties in all respects shall be entitled to rely on the advice of counsel with respect to any of the foregoing. With respect to Plan Releasees that are attorney Professionals, such Professionals shall not be released from any violations of the Code of Professional Responsibility. From and after the Effective Date, except as otherwise provided under this section, all holders of Claims or membership and other interests in the Debtor shall be permanently enjoined from commencing or continuing in any manner any suit, action or other proceeding, on account of or respecting, any Claim or membership or other interest in the Debtor.

3.     <u>Releases By the Debtors and Holders of Claims</u>.  Except as otherwise specifically provided by this Plan, for good and valuable consideration, including the services and agreements to facilitate the expeditious reorganization of the Debtor, the implementation of the restructuring contemplated by this Plan, on and after the Effective Date, this Plan Releasees shall be deemed released by the Debtor, the Plan Administrator and holders of Claims and membership and other interests in the Debtor from any and all claims, obligations, rights, suits and causes of action whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that the Debtor, the Estate or such Person or entity would have been entitled to assert whether directly, indirectly, derivative or otherwise, based in whole or in part upon any action, omission, transaction, agreement, event, conduct or other

NEWY1\8256199.6

occurrence taking place on or before the Effective Date in any way relating or pertaining to or dealings in connection with the Debtor, its officers (in their capacity as such), directors (in their capacity as such) and shareholders (in their capacity as such), the Estate or these Cases; provided, however, that nothing in this section shall constitute a release of any party from Claims arising under (a) the Internal Revenue Code, or any state, city or municipal tax code; (b) the environmental laws of the United States, any state, city or municipality; (c) any criminal laws of the United States, any state, city or municipality; and (d) actions related to willful misconduct, gross negligence, misuse of confidential information that causes damages, breach of fiduciary duty and ultra vires acts.  With respect to releases of attorney professionals, such professionals shall not be released from any violations of the Code of Professional Responsibility.

4.      Prior Directors and Officers.  Notwithstanding anything in the Plan to the contrary, nothing in the Plan shall release any entity or Person who served prepetition in the capacity of director, officer or trustee of the Debtor and was removed, voluntarily resigned from or otherwise vacated their position as director, officer or trustee with Debtor within the six (6) months prior to the Petition Date from liability arising from any action or inaction in such capacity for any pending or potential cause of action, claim, obligation, right, suit and/or cause of action whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that the Debtor, the Committee, Plan Administrator, the Estate or such other Person or entity would be entitled to assert whether directly, indirectly, derivative or otherwise.

5.      Abandoned Property.  Any and all property whose abandonment is or has been approved by the Court pursuant to the Bankruptcy Code shall remain abandoned forever; shall not thereafter be deemed to be property of the Debtor or the Plan Administrator; shall not at

NEWY1\8256199.6

any time re-vest in the Debtor, and shall not otherwise, whether by conveyance or otherwise, ever become the property of the Debtor or its Estate.

6.      Post-Effective Date Effect of Evidences of Claims.   Notes, shareholder certificates, and other evidences of liens or Claims against the Debtor shall, effective upon the Effective Date, represent only the right to participate in the distributions or rights, if any, contemplated by this Plan.

7.      Surrender of Instruments and Release of Liens.   Except as otherwise provided in this Plan or the Confirmation Order, each holder of an instrument evidencing a Claim against the Debtor or any of the property of the Debtor shall surrender such instrument to the Debtor or Plan Administrator, as applicable, and the Debtor or Plan Administrator shall distribute to the holder thereof the distributions provided for in this Plan.  No distribution under this Plan shall be made to or on behalf of any holder of such Claim unless and until such instrument is received or the non-availability of such instrument is established to the satisfaction of the Debtor or Plan Administrator, provided, however, that DASNY shall release its liens in accordance with the terms and conditions set forth in the DASNY Prepetition Loan Agreement. Each Person who is to receive distributions under this Plan in complete satisfaction of a Secured Claim shall not receive such distributions until such creditor executes the release of its liens (in recordable form if requested by the Plan Administrator) and delivers the release to the Plan Administrator.  Any such Person who fails to surrender such instrument or satisfactorily explain its non-availability or execute and deliver such release of liens within ten (10) days of the date such surrender, explanation, execution, or delivery as requested by the Plan Administrator shall be deemed to have no further Claim against the Debtor or property of the Debtor, shall not participate in any distribution under this Plan, and in such event upon motion of the Debtor

     NEWY1\8256199.6

and/or the Plan Administrator accompanied by appropriate evidence of such failure by affidavit or otherwise, the Court may enter an order requiring the act to be done at the cost of such Person by the Debtor and providing that such act when so done shall have like effect as if done by such Person or any other appropriate order.

8. <u>Term of Stays</u>. Except as otherwise provided in this Plan, all injunctions and the stay provided for in the Debtor's Chapter 11 case pursuant to Bankruptcy Code section 362, shall remain in full force and effect until the Debtor's Chapter 11 case is closed.

Except as otherwise provided in this Plan, upon entry of the Confirmation Order, all Persons or entities who have held, hold, or may hold Claims or membership or other interests in the Debtor are permanently enjoined, on and after the Effective Date, with respect to all Claims and membership and other interests in the Debtor from (a) commencing, conducting or continuing in any manner, directly or indirectly, any proceeding of any kind against or affecting the Debtor, the Plan Releasees, the Plan Administrator, or their property, (b) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting or otherwise recovering by any means or manner, whether directly or indirectly, any judgment, award, decree, or order against the Debtor, the Plan Releasees, the Plan Administrator, or their property, (c) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, the Plan Releasees, the Plan Administrator, or their property, (d) asserting any right of setoff, directly or indirectly, against any obligation due the Debtor, the Plan Releasees, the Plan Administrator, or their property, except as contemplated or allowed by this Plan, the Bankruptcy Code, or applicable law, (e) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan, (f) commencing, continuing or asserting in any manner any action or other proceeding of

NEWY1\8256199.6

any kind with respect to any Claims and causes of action which are extinguished or released pursuant to this Plan, and (g) taking any action to interfere with the implementation and consummation of this Plan.

9.     Post-Confirmation Date Employment and Payment of Professionals.  The Plan Administrator is authorized, without further order of the Court, to employ such persons, including professionals (which may include the Debtor's Professionals), as the Plan Administrator may deem necessary to enable it to perform its functions hereunder, subject to the approval of the Committee.  Such persons, shall be compensated and reimbursed for their reasonable and necessary fees and out-of-pocket expenses on a monthly basis from the Debtor's estates without further notice, hearing or approval of the Court, subject to approval of the Committee.

10.     Retention of Jurisdiction.  Notwithstanding entry of the Confirmation Order or the Effective Date having occurred, the Court will retain jurisdiction to the fullest extent permitted by law, including jurisdiction to enter any orders or to take any action specified in this Plan, and including, without limitation, the following:

(a)     To determine any motion, adversary proceeding, avoidance action, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

(b)     To hear and determine applications for the assumption or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

(c)     To ensure that distributions to holders of Allowed Claims are accomplished as provided in this Plan;

(d)     To hear and determine objections to the allowance of Claims, whether Filed, asserted or made before or after the Effective Date, including, without limitation, to hear and determine objections to the classification of Claims and the allowance or disallowance of disputed Claims, in whole or in part;

NEWY1\8256199.6

(e)     To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim;

(f)     To enter, implement, or enforce such Orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(g)     To issue injunctions, enter and implement other Orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of this Plan, the Confirmation Order or any other Order of the Bankruptcy Court;

(h)     To hear and determine any application to modify this Plan in accordance with Bankruptcy Code section 1127, to remedy any defect or omission or reconcile any inconsistency in this Plan, the Disclosure Statement, or any Order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(i)     To hear and determine all Professional Fee Claims;

(j)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Confirmation Order, or any transactions or payments contemplated hereby or thereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(k)     To take any action and issue such Orders as may be necessary to construe, enforce, implement, execute, and consummate this Plan, including any release or injunction provisions set forth herein or in this Plan, or to maintain the integrity of this Plan following consummation;

(l)     To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)     To hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146;

(n)     To enter a final decree closing the Debtor's Chapter 11 case;

(o)     To recover all assets of the Debtor and property of the Estate, wherever located; and

(p)     To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code, title 28 of the United States Code and other applicable law.

11.      Continuation of the Committee.  Until all distributions have been made to holders of Allowed Unsecured Claims pursuant to this Plan and the entry of a final decree closing the Debtor's Chapter 11 case, the Committee shall continue to exist and shall continue to exercise all of the rights and powers conferred upon it by the Bankruptcy Code and this Plan. Upon all distributions to holders of Allowed Unsecured Claims having been made pursuant to this Plan and the entry of a final decree closing the Debtor's Chapter 11 case, the Committee shall be deemed dissolved and shall have no further duties, powers, rights or responsibilities. Notwithstanding anything to the contrary in this Plan, the Committee shall continue to prosecute the Resmac Adversary Proceding.

12.      Resignation and Vacancy on the Committee.  If any creditor represented on the Committee shall assign its Claim or release the Debtor from the payment of the balance of its Claim, the member of the Committee representing that creditor shall be deemed to have resigned from the Committee.  In the event that a vacancy occurs on the Committee by reason of the death or resignation of a member, then with respect to any vacancy thereby created, the remaining members of the Committee may (i) fill the vacancy with the representative of another holder of an Allowed Unsecured Claim or (ii) reduce the size of the Committee to the number of the remaining Committee members.  If the Committee members elect the latter, then no Committee vacancy shall be deemed to exist.  The Committee shall function whether or not a vacancy exists.  In any event, no Person may be designated to serve on the Committee without notice having been given to the Plan Administrator.

13.      Committee's Professionals.      Subsequent to the Effective Date, the Committee shall have the power and authority to utilize the services of its counsel and financial

NEWY1\8256199.6

advisor as necessary to perform the duties of the Committee and to authorize and direct such Persons to act on behalf of the Committee in connection with any matter requiring its attention or action. The Debtor and its Estate shall be responsible for the payment of all reasonable and necessary fees and expenses of such counsel and financial advisor. The Plan Administrator shall pay the reasonable and necessary fees and expenses of the Committee's counsel and financial advisor without the need for Court approval.

14. <u>Dismissal and Dissolution of the Other Debtors</u>. The Debtor and the Other Debtors believe that there are approximately $300,000 in claims against the Other Debtors, primarily representing tax claims against the Other Debtors. Upon review of such claims, the Debtor and the Other Debtors have determined these claims are invalid and should be disallowed. The Debtor and the Other Debtors intend to move to have these claims expunged and disallowed. By separate motion returnable upon the date of the Confirmation Hearing, the Debtor and the Other Debtors will request that the Court enter an order dissolving Victory Memorial Ambulance and Victory Memorial Pharmacy, and dismissing their respective Chapter 11 cases. Upon the dissolution of the Other Debtors, all remaining assets of the Other Debtors shall be deemed transferred to the Debtor and shall be liquidated and distributed in accordance with this Plan.

## ARTICLE VIII

## MISCELLANEOUS PROVISIONS

1. <u>Executory Contracts and Unexpired Leases</u>. With the exception of the collective bargaining agreements, the executory contracts and unexpired leases designated for assumption pursuant to Bankruptcy Code section 365(a) by separate motion in connection with the Primary Asset Sale or the sale of the Ancillary Real Estate, each executory contract or unexpired lease of the Debtor that has not previously been rejected by the Debtor is deemed

 NEWY1\8256199.6

rejected as of the Confirmation Date, subject to the occurrence of the Effective Date, <u>provided</u>, <u>however</u>, in the event that either the Primary Asset Sale or the sale of the Ancillary Real Estate fail to close for any reason, the Debtor reserves its right to subsequently seek rejection of any executory contracts or unexpired leases previously designated for conditional assumption pursuant to either the Primary Asset Sale or the sale of the Ancillary Real Estate.  Prior to the Effective Date, the Debtor shall provide the non-debtor parties to any executory contract or unexpired lease, or any transferee enumerated on the 3001(e) list of transferred Claims with respect thereto, notice that it intends to reject such executory contract or unexpired lease on the Effective Date.

Buyer or Operator (as defined in the APA) shall be responsible for the cure amounts related to their respective assigned contracts, if any, upon their respective closing date. Nothing in any attachment thereto or any document executed or delivered in connection therewith, shall be deemed to create any obligation or liability with respect to any executory contract or unexpired lease on the part of the Debtor or other Person that is not presently liable thereon.

2.      <u>Rejection Damages</u>.  Any Claim for damages arising from the rejection of an executory contract or unexpired lease under this Plan, must be filed with the Court and served upon the Debtor within thirty (30) days after the mailing of notice of entry of the Confirmation Order or such other deadline established by the Court.  Any Claim arising from the rejection of an executory contract or unexpired lease not filed within such time will be forever barred from receiving any distribution under this Plan or asserting any Claims against the Debtor, the Estate or the Plan Administrator.

NEWY1\8256199.6

3. <u>Claims Arising from Certain Judgments</u>. A Claim that arises in favor of an entity as a result of a judgment entered against the Debtor after the Petition Date for the recovery of money or property must be filed within thirty (30) days after the later of (a) the date the judgment becomes final or (b) the mailing of the notice of Confirmation hearing.

4. <u>Objections to Claims</u>. The Plan Administrator and/or the Committee may object to the allowance of any Claim on or after the Effective Date of this Plan. As soon as practicable, but in no event later than one hundred and eighty (180) days after the Effective Date, the Plan Administrator and/or the Committee may object to the allowance of any Claim. The foregoing deadline may be extended by the Court upon request of the Plan Administrator or Committee upon notice to the Plan Administrator, the Committee, ASM, and such other parties as shall request such notice after the confirmation of this Plan. Nothing contained herein, however, shall limit the right of the Plan Administrator or the Committee to object to Claims, if any, filed or amended after the Effective Date.

5. <u>Distributions Under this Plan</u>. Except as otherwise provided in this Plan, in the Confirmation Order, or in any Order of the Court in aid of consummation of this Plan, the following provisions shall govern distributions pursuant to this Plan:

<u>Provisions for Distributions Pending Determination of Certain Claims for Income Taxes</u>. Notwithstanding any other provision of this Plan, and unless the Court orders otherwise, prior to making distributions on account of Allowed Claims other than Administrative Claims and Priority Tax Claims, the Plan Administrator shall make adequate provision for the satisfaction of Claims for income taxes entitled to treatment as administrative expenses; <u>provided</u>, <u>however</u>, that unless otherwise ordered by a court, the Plan Administrator shall have no obligation to withhold funds, designate reserves, or make

NEWY1\8256199.6

other provisions for the payment of any Claims for taxes that have been disallowed by order of the Court.

No Distributions on Account of Claims That Have Not Become Allowed Claims. Notwithstanding any other provision of this Plan, no payment or distribution shall be made with respect to any Claim that has not become an Allowed Claim, except that the Plan Administrator may distribute consideration attributable to any undisputed portion of a Claim and withhold the remainder.

Reserves for Claims That Have Not Become Allowed Claims. Distributions on account of Claims that have not become Allowed Claims shall be governed by the following provisions:

   (i) Except as otherwise provided under this Plan, the Debtor shall not be required to withhold funds or consideration, designate reserves, or make other provisions for the payment of any Claims that have been disallowed by a Final Order of the Court.

   (ii) Except as otherwise provided in this Plan, the Debtor, or the Plan Administrator, as applicable, shall be required to reserve funds, designate reserves, or make other provisions for the payment of any Claims that have been disallowed by an order of the Court until such order becomes a Final Order.

   (iii) With respect to Claims that have not become Allowed Claims and that are not governed by subparagraph (1) or subparagraph (2) above, the Plan Administrator, as applicable, shall reserve sufficient funds to allow for a distribution in accordance with the terms of this Plan, on account of the distribution attributable to such holders' Claims or as otherwise provided pursuant to any order of the Court with respect to the amount, if any, to be reserved; provided, however, that the Plan Administrator, as applicable, shall distribute consideration attributable to any undisputed portion and shall withhold and reserve the remainder. The Court may, after notice and a hearing (as defined in Bankruptcy Code section 102), fix a lesser amount than the distribution amount as the amount on account of which consideration shall be withheld. In the case of Claims not stating an amount, the Plan Administrator, or any holder of such Claims may request that the Court, after notice and a hearing (as defined in Bankruptcy Code section 102), determine an amount. Cash withheld pursuant to this subparagraph will be held in a segregated, interest-bearing fund or funds. Such Cash will be released when and if Claims are Allowed and disallowed and shall be distributed in accordance with this Plan.

NEWY1\8256199.6

<u>Persons Responsible for Distribution of Plan Consideration</u>.  The Plan Administrator shall disburse all consideration to be distributed under this Plan and shall act as a disbursing agent.

<u>Unclaimed Cash</u>.  If any Person entitled to receive Cash under this Plan cannot be located on the date a distribution under this Plan is due, such Cash will be set aside and held in a segregated, interest-bearing fund to be maintained by the Plan Administrator.  If such Person is located within one hundred and twenty (120) days of the date of distribution, such Cash, together with any interest earned thereon, will be paid to such Person.  If such Person cannot be located within one hundred and twenty (120) days of the date of distribution, any such Cash and accrued interest thereon shall be released to the Plan Administrator and distributed in accordance with this Plan.  Nothing contained in this Plan shall require the Plan Administrator to attempt to locate such Person.  It is the obligation of each Person claiming rights under this Plan to keep the Plan Administrator advised of their current address by sending written notice of any changes to the Plan Administrator.

<u>Unnegotiated Distribution Checks</u>.  Checks or drafts issued pursuant to this Plan to Persons holding Allowed Claims and not presented for payment within one hundred and twenty (120) days following mailing thereof to the last known address of such Person shall be deemed nonnegotiable thereafter.

<u>Fractional Dollars</u>.  Any other provision of this Plan notwithstanding, no payments of fractional dollars will be made to any holder of an Allowed Claim.  Whenever any payment of a fraction of a dollar to any holder of an Allowed Claim would otherwise be

NEWY1\8256199.6

called for, the actual payment made will reflect a rounding of such fraction to the nearest whole dollar (up or down).

Distribution Dates.  Whenever any distribution to be made under this Plan is due on a day other than a Business Day, such distribution will instead be made, without penalty or interest, on the next Business Day.  The Court shall retain power, after the Confirmation Date, to extend distribution dates for cause, upon motion and after notice and a hearing (as defined in Bankruptcy Code section 102) to affected parties.

Bankruptcy Code Sections 508, 509, and 510.  Distributions under this Plan will be governed by the provisions of Bankruptcy Code sections 508, 509 or 510 where applicable.

Distributions to be Applied First to Administrative and Priority Claims.  Any distribution under this Plan by the Plan Administrator on account of any Allowed Claim for which the Debtor is liable under any applicable law or order of the Court shall be applied by the recipient first to satisfy the DASNY Bond Claim, to the extent not already paid in Cash in full, and the DASNY DIP Claim, then to satisfy any Allowed Administrative Claims, Allowed Priority Tax Claims, or other Allowed Claims of the recipient against the Debtor which are entitled to priority under Bankruptcy Code sections 503 or 507 and, only after all such priority Claims are fully satisfied, to any Allowed Claims not entitled to such priority.

Orders Respecting Claims Distribution.  After confirmation of this Plan, the Court shall retain jurisdiction to enter orders in aid of consummation of this Plan with respect to distributions under this Plan and to resolve any disputes concerning distributions under this Plan.

NEWY1\8256199.6

Allocation.  To the extent that any Allowed Claim entitled to a distribution under this Plan is comprised of indebtedness and accrued and unpaid interest thereon, such distribution shall be allocated first to the principal amount of such Claim and then, to the extent the consideration exceeds the principal amount of such Claim, to accrued and unpaid interest.

6.     Setoffs.  The Plan Administrator may, pursuant to and in accordance with Bankruptcy Code section 553 or applicable nonbankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant to this Plan on account of such Claim, the claims, rights and causes of action of any nature that the Debtor may hold against the holder of such Allowed Claim, provided that the Plan Administrator gives the holder of such Allowed Claim notice of the proposed setoff and the holder of such Allowed Claim does not object to the proposed setoff within thirty (30) days; provided further, however, if the holder of such Allowed Claim timely objects to the proposed setoff, the setoff may not be effectuated without prior approval of the Court; provided further, however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or Plan Administrator of any such claims, rights and causes of action that the Debtor may possess against such holder.

7.     Exemption from Transfer Taxes.  Pursuant to Bankruptcy Code section 1146(a), the issuance, transfer or exchange of notes or equity securities under this Plan, the creation or amendment of any mortgage, deed of trust or other security interest, the making or assignment of any lease or the making or delivery of any deed or other instrument of transfer, under, in furtherance of or in connection with this Plan, and any sale of the Assets pursuant

NEWY1\8256199.6

thereto or in furtherance of or in connection therewith, shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

        8.    <u>Limitation of Liability</u>.  Without limiting any other provision or term hereunder, the Debtor and its directors, officers, trustees, employees and professionals (acting in such capacity) and the Committee and its members, agents and professionals, shall neither have nor incur any liability to any Person for any act taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, confirmation or consummation of this Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other act taken or omitted to be taken in connection with this Plan or these Chapter 11 Cases; <u>provided</u>, <u>however</u>, that the foregoing provisions shall have no effect on the liability of any entity from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.

        9.    <u>Modification of Plan</u>.  The Debtor reserves the right, in accordance with the Bankruptcy Code, to amend or modify this Plan.

        10.    <u>Revocation of this Plan</u>.  The Debtor reserves the right to revoke or withdraw this Plan, prior to the Confirmation Date, for any reason deemed appropriate by the Debtors.  If the Debtor revokes or withdraws this Plan, or if confirmation does not occur, then this Plan shall be null and void in all respects and nothing contained in this Plan shall constitute a waiver or release of any claims by or against, the Debtor, or prejudice in any manner the rights of the Debtor.

NEWY1\8256199.6

11. <u>Successors and Assigns</u>. The rights, benefits and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person.

12. <u>Notices</u>. All notices or requests in connection with this Plan shall be in writing and given by mail addressed to:

> Victory Memorial Hospital
> 699 92nd Street
> Brooklyn, NY 11228
> Attn: Vincent J. Calamia, M.D.

with copies to:

> DLA Piper US LLP
> 1251 Avenue of the Americas
> New York, NY 10020
> Attn: Timothy W. Walsh, Esq.

If to the Committee:

> Alston & Bird LLP
> 90 Park Avenue
> New York, NY 10016
> Attn: Martin G. Bunin, Esq.
>    Craig E. Freeman, Esq.

All notices and requests to Persons holding any Claim in any Class shall be sent to them at their last known address or to the last known address of their attorney of record in these Cases. Any such holder of a Claim may designate in writing any other address for purposes of this Section, which designation will be effective upon receipt by the Debtor.

13. <u>Headings</u>. The headings used in this Plan are inserted for convenience only and neither constitute a portion of this Plan nor in any manner affect the construction of the provisions of this Plan.

14. <u>Severability</u>. If, prior to confirmation, any term or provision of this Plan is held by the Court to be invalid, void or unenforceable, the Court shall have the power to alter and

interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.

15. <u>Validity and Enforceability</u>. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms. Should any provision in this Plan be determined by the Court or any appellate court to be unenforceable following the Effective Date, such determination shall in no way limit the enforceability and operative effect of any and all other provisions of this Plan.

16. <u>Plan Supplement</u>. Any exhibits or schedules not filed with this Plan may be contained in the Plan Supplement, if any, and the Debtor hereby reserves the right to file such a Plan Supplement.

17. <u>Governing Law</u>. Unless a rule of law or procedure by federal law (including the Bankruptcy Code and Bankruptcy Rules) governs, or except if an exhibit, schedule or document in this Plan Supplement provides otherwise, the rights, duties and obligations under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State without giving effect to the principles of conflict of law thereof.

NEWY1\8256199.6

18.     <u>Request for Confirmation Pursuant to Bankruptcy Code Sections 1129(a)</u>

<u>and 1129(b)</u>.  The Debtor requests entry of a Confirmation Order under Bankruptcy Code section

1129(a) and, to the extent necessary, Bankruptcy Code section 1129(b).


Dated:     July 3, 2008
           Brooklyn, New York

                              Respectfully submitted,

                              **VICTORY MEMORIAL HOSPITAL**

                              By:  ___/s/ Vincent J. Calamia_____
                                     Vincent J. Calamia, M.D.
                                     Chief Executive Officer

NEWY1\8256199.6