# CONSULTING SERVICES AGREEMENT

This Consulting Services Agreement, dated as of June 16, 2009 (together with all Schedules, Exhibits and attachments hereto, collectively, the "Agreement"), is made by and between Great American Group, LLC, a California limited liability company, with a principal place of business at 21860 Burbank Boulevard, Suite 300 South, Woodland Hills, California 91367 (the "Consultant") and Victory Memorial Hospital (the "Company"), with a principal place of business at 699 92nd Street, Brooklyn, NY 11228, (Federal Identification Number 11-1630991) ("Facility").

## WITNESSETH:

**WHEREAS,** the Company filed for bankruptcy protection under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") before the United States Bankruptcy Court for the Eastern District of New York (Brooklyn) (the "Bankruptcy Court") on November 15, 2006, and its case is pending as Case No. 06-44387;

**WHEREAS,** Company desires to retain Consultant to provide liquidation and consulting services to Company with respect to the management, sale and disposition of certain Assets (as defined below); and

**WHEREAS**, Consultant is willing to serve as Company's Consultant and liquidating agent, for the purpose of providing such services, upon the terms and conditions and in the manner set forth in this Agreement.

**NOW, THEREFORE,** in consideration of the mutual covenants and agreements hereinafter set forth and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **DEFINITIONS**

For the purpose of this Agreement, the terms listed below shall have the respective meanings indicated:

1.1 "Assets" shall mean all Assets of the Company, found or located at the Facility, including but not limited to supplies, equipment and vehicles (excluding leased assets), identified on **Exhibit "A"** hereto.

1.2 "Facility" shall mean 699 92nd Street, Brooklyn, New York 11228.

1.3 "Sale" shall mean a liquidation sale of all the Assets to be conducted by Consultant on behalf of Company, which may include any combination of a liquidation sale of the Assets, a sale of substantially all of the Assets, and/or an auction of the Assets at the Sale Site or on the internet.

1.4     "Sale Commencement Date" shall mean one (1) business day following entry of the Sale Order pursuant to Section 9.1(c).

1.5     "Sale Expenses" shall mean, with respect to the Sale, actual, direct and commercially reasonable operating expenses incurred in connection with the Sale, and shall include marketing and advertising, support labor, a supervisor and crew, travel, webcast expenses and certain miscellaneous expenses.  Notwithstanding anything to the contrary contained herein, the Sale Expenses for which Consultant shall be entitled to compensation or reimbursement shall not exceed $45,000 in the aggregate.

1.6     "Sale Order" shall have the meaning set forth in Section 9.1(c).

1.7     "Sale Site" shall mean a portion of the Facility designated by Company from which the Sale will be conducted.

1.8     "Sale Term" shall mean the period of time beginning with the Sale Commencement Date and ending on the Sale Termination Date.

1.9     "Sale Termination Date" shall be a date agreed to by the parties no later than ninety (90) days from the later of the entry of the Sale Order or the completion of the transfer of the Assets to the Facility, unless mutually agreed by Consultant and Company.

1.10    "Services" shall mean the services to be performed by Consultant pursuant to Section 2.2 of this Agreement.

1.11    "Supervisors" shall mean the individual or individuals whom shall provide Services at the Facility as set forth in Sections 2.2 and 2.3 of this Agreement.

**2.    RETENTION**

2.1     Subject to the condition that the Company obtain authorization by order of the Bankruptcy Court as provided in Section 9.1 (c) below, Company hereby retains Consultant, and Consultant hereby agrees to serve as an independent consultant to Company in connection with conducting the Sale as set forth herein. With respect to the Sale, Consultant shall serve as Company's sole and exclusive Consultant designed to assist in the marketing and sale of its Assets throughout the Sale Term. Consultant shall develop and implement a strategy designed to sell the Assets for the highest and best price.

2.2     On the terms and conditions set forth herein, commencing as of the Sale Commencement Date, Consultant shall provide Company with the following Services with respect to the conduct of the Sale:

>   (i)     provide a full time Supervisor or Supervisors to supervise and conduct the Sale as further described in Section 2.3 below;
>
>   (ii)    coordinate the sale of the Assets, including marketing the Assets, utilizing

> Consultant's database of contacts for such marketing, and implementing a sale strategy designed to maximize the sale proceeds to the Company;

    (iii)    oversee the liquidation and disposal of the Assets from the Facility; <u>provided however</u>, Consultant reserves the right to abandon at the Facility any Assets that have not been removed by the end of the Sale Term;

    (iv)    provide such other related service deemed necessary or prudent by Company and Consultant under the circumstances giving rise to the Sale; and

    (v)    provide Company with reporting and reconciliation of all accounting information in a form reasonably acceptable to Company.

2.3    In connection with the Sale, Consultant shall directly retain and engage Supervisor(s). Supervisors are independent contractors engaged as agents of Consultant, and are not and shall not be deemed to be employees of Company in any manner whatsoever. In consideration of Consultant's engagement of the Supervisors, Sale Expenses shall include reasonable Supervisor-related expenses.

2.4    Consultant shall be the sole party authorized to sell the Assets and may sell Assets in such lots as Consultant may determine.

2.5    Consultant is authorized to accept cash or guaranteed checks as payment for the Assets sold, and to charge purchasers and retain a reasonable and customary buyer's premium.

2.6    Consultant shall sell the Assets "as is", without any representations of any kind or nature whatsoever, including as to merchantability or fitness for a particular purpose, and without warranty or agreement as to the condition of such Assets. Consultant is acting solely in the capacity of agent for Company and has no knowledge with respect to the fitness for a particular purpose or usability of any of the Assets. Consultant will not use, alter or repair any of the Assets for any particular purpose or otherwise.

**3.    EXPENSES**

3.1    Consultant shall advance all Sale Expenses, and shall pay such expenses on or prior to the date on which they are due. Consultant shall be reimbursed for all Sale Expenses up to $45,000 in the aggregate from the proceeds of the Sale.

**4.    CONSULTANT'S FEES**

4.1    Consultant shall be entitled as a commission to five per cent (5%) of the gross proceeds (e.g., all proceeds less sales taxes, if any) of the Sale. Consultant will waive the five per cent (5%) commission on any items sold through the Company's own independent channels.

4.2    Consultant shall also be entitled to charge and retain the buyer's premium charged

to purchasers of up to thirteen percent (13%) to bidders (the "Buyer's Premium"). Any Buyer's Premium collected shall not be considered as part of the commission to be paid to Consultant and may be retained by Consultant without further order of the Bankruptcy Court as not part of the compensation hereunder.

4.3  Within twelve (12) business days of the final part of the Sale, Consultant shall transfer and/or pay over to Company all proceeds of the Sale (excluding the payment of all receipts identified as Buyer's Premium set out in paragraph 4.1 above and payment of Sale Expenses up to $45,000 as set forth in paragraph 3.1 above).

4.4  Consultant shall keep records of the sale price and proceeds of the Sale Assets, as well as all Sale Expenses incurred by Consultant. Within twenty (20) business days following the completion of the Sale, Consultant shall provide Company with a final written accounting of the proceeds of the Sale and Sale Expenses and a statement of the specific services rendered and calculation of the balance due the Consultant ("Report of Sale"). Such Report of Sale shall satisfy any requirements of Consultant regarding requirements with Bankruptcy Code under §§327, 328, 330, 331 and 363 of the Bankruptcy Code and Rule 2016 of the Federal Rules of Bankruptcy Procedure in terms of Consultant's compensation above. Company shall, promptly after receipt of the Report of Sale, shall file same as provided in Rule 6004 of the Federal Rules of Bankruptcy Procedure. No hearing on the Report of Sale shall be required and payment shall be made after ten (10) business days after filing absent objection to same. In the event of an objection, a hearing may be held. Upon request, Consultant shall provide Company with copies of any and all bills and vouchers relating to the Sale Expenses or other documentation thereof to enable Company to reasonably verify the correctness of any such accounting.

## 5.  REPRESENTATIONS AND WARRANTIES OF CONSULTANT

5.1  Consultant hereby represents, warrants and covenants in favor of Company as follows:

(a) Consultant has taken all necessary action required to authorize the execution, performance and delivery of this Agreement, and to consummate the transactions contemplated hereby;

(b) Subject to the entry of the Sale Order, this Agreement is a valid binding obligation of Consultant enforceable in accordance with its terms; and

(c) To the best of Consultant's knowledge, no action or proceeding has been instituted or threatened affecting the consummation of this Agreement or the transactions contemplated herein.

## 6. REPRESENTATIONS AND WARRANTIES OF COMPANY

Company hereby represents, warrants and covenants in favor of Consultant as follows:

(a) Subject to the entry of the Sale Order, Company has taken all necessary action required to authorize the execution, performance and delivery of this Agreement,

and has taken all steps necessary and has good and valid authority to consummate the transactions contemplated hereby, including the conduct of the Sale;

(b)  Pursuant to entry of the Sale Order, Company shall be authorized to sell the Sale Assets;

(c)  Upon search and reasonable diligence, Company has knowledge of liens and encumbrances against the Sale Assets as set forth on **Exhibit "C"**;

(d)  Subject to the terms, conditions and entry of the Sale Order, this Agreement is a valid and binding obligation of Company enforceable in accordance with its terms;

(e)  To the best of Company's knowledge, the Assets comply with all applicable federal, state, or local product safety laws, rules and standards; and

(f)  Throughout the Sale Term, Consultant shall have the right to the uninterrupted use, access and possession of the Sale Site to conduct the Sale and to allow the removal and sale of the Sale Assets from the Facility. Company shall use its best efforts to maintain the Assets and Premises in good working order, condition and repair which shall include all heating systems, air conditioning systems, elevators and all other mechanical devices reasonably necessary to allow for the conduct of the Sale and the removal of the Assets from the Facility. Consultant shall conduct the Sale in a manner reasonably designed not to otherwise interfere with the use and/or occupancy of the Facility by the Company.

**7.     AFFIRMATIVE DUTIES OF CONSULTANT**

7.1     Consultant shall reimburse, indemnify, defend and hold Company and its officers, directors, agents, and employees, harmless from and against any and all known or unknown losses, damages (including without limitation, any personal injury, death or property damages), liabilities, claims, actions, judgments, penalties and fines, court costs and legal or other expenses, or any claim or action therefore, by or on behalf of any person, which Company may incur as a direct or indirect result of: (i) Consultant's breach of this Agreement or any of its representations or warranties hereunder; (ii) any claims asserted by the Consultant's employees or agents (including, without limitation, the Supervisors), including, but not limited to, the Consultant's employees' or agents' payroll claims (wage claims, claims for taxes required to be withheld from wages, social security, etc.), or unemployment or workers' compensation claims; and (iii) negligent or intentional acts or omissions of Consultant or its agents (including, without limitation, the Supervisors), employees, representatives or principals in connection with the Sale or this Agreement.

7.2     Consultant shall complete the Sale on or before the Sale Termination Date.

7.3     Subject to Company's obligation to provide access to the Facility as provided above, and without altering Consultant's right to abandonment as provided above, Consultant shall advise all buyers that the Assets that are sold pursuant to this Agreement are to be removed at buyer's cost from the Sale Site within ten (10) days of the purchase thereof or shall be deemed

abandoned by buyer with no refund to be paid to buyer in such instance. Consultant shall provide adequate supervision of the removal of Assets to ensure that same is completed without damage to the Assets.

7.4    Except to the extent excused in the Sale Order, Consultant shall be responsible for obtaining, in the name of and with the assistance of Company, any permits or licenses necessary to conduct the Sale.

**8.    AFFIRMATIVE DUTIES OF COMPANY**

8.1    Consultant will not be liable for any expenses (other than the Sale Expenses) incurred in connection with the routine maintenance or operation of the Facility, including but not limited to occupancy costs, utilities, security, local telephone, trash services, property taxes and any other related costs. Company shall ensure that such services and access to the Facility will be available throughout the Sale Term.

8.2    Consultant shall collect any applicable sales tax from buyers, and prepare all reporting forms, certificates, reports and other documentation required in connection with the payment of all applicable sales taxes to the appropriate taxing authorities, and Company shall process all of the foregoing. Company shall pay the same to the appropriate taxing authorities in accordance with applicable law.

8.3    Company shall use its reasonable and best efforts to obtain entry of the Sale Order approving employment of the Consultant pursuant to the terms of this Agreement and order approving sale of the Assets free and clear of all liens and encumbrances.

**9.    CONDITIONS PRECEDENT**

9.1    The willingness of Consultant and Company to enter into the transactions contemplated under this Agreement is directly conditioned upon the satisfaction of the following conditions at the time or during the time periods indicated, unless specifically waived in writing by the applicable party:

(a) All representations and warranties of Consultant and Company hereunder shall be true and correct in all material respects, and no Event of Default (as defined below) shall have occurred as of the date hereof and as of the Sale Commencement Date;

(b) The Assets set forth on Exhibit A shall be available for sale by Consultant on the date the Sale Order is entered; and

(c) No later than June 30, 2009, the Bankruptcy Court shall have entered an order(s) pursuant to Bankruptcy Code sections 327(a), 328, 330 and 363 (the "Sale Order") authorizing Company to retain Consultant upon the terms set forth herein, authorizing the Sale of the Assets free and clear of all liens and encumbrances, and authorizing the payment of Consultant's commission and expenses pursuant to the terms hereof without further order of court.

## 10. INSURANCE

10.1    Company warrants that he will maintain throughout the Sale Term casualty and liability insurance policies (including comprehensive public liability insurance) covering injuries to persons and property in or in connection with the operation of the Facility.

## 11. DEFAULTS

11.1    The following shall constitute "Events of Default" hereunder:

(a)    The failure by Consultant or Company to perform any of the respective material obligations hereunder, which failure shall continue uncured seven (7) days after receipt of written notice thereof to the defaulting party; or

(b)    Any representation or warranty made by Company or Consultant proves untrue in any material respect as of the date made and throughout the Sale Term; or

(c)    The Sale is terminated, materially interrupted or impaired at the Facility for any reason other than (i) an Event of Default by Consultant or (ii) any other material breach or action by Consultant not authorized hereunder.

11.2    In the event of an Event of Default, the non-defaulting party may, in its discretion, elect to terminate this Agreement upon seven (7) business day's written notice to the other party. In the event of termination of this Agreement, Consultant shall be entitled to reimbursement of its actual expenses incurred and payable in accordance with the provisions of this Agreement through the date of such termination.

## 12. MISCELLANEOUS

12.1    Any notice or other communication under this Agreement shall be in writing and may be delivered personally or sent by facsimile or by prepaid registered or certified mail, addressed as follows:

(i)    in the case of Consultant:

Great American Group
Nine Parkway North Suite 300
Deerfield, IL 60015
Attn: Mark P. Naughton
Vice President/General Counsel
Fax: (847) 444-1401
e-mail: mnaughton@greatamerican.com

      (ii)      in the case of Company:

           Victory Memorial Hospital
           c/o JH Cohn
           333 Thornall Street
           Edison, NJ 08837
           Attn: Cliff Zucker
           Facsimile:
           Email:

12.2    This Agreement shall be governed by and interpreted in accordance with the laws of the State of New York except as superseded by the Bankruptcy Code. The parties hereby consent to the core jurisdiction of the Bankruptcy Court over any dispute arising in relation to the Agreement.

12.3    In the event any term or provision contained within this Agreement shall be deemed illegal or unenforceable, then such offending term or provision shall be considered deleted from this Agreement and the remaining terms shall continue to be in full force and effect.

12.4    This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes all prior negotiations and understandings, and can only be modified by a writing signed by Company and Consultant.

12.5    Neither Company nor Consultant shall assign this Agreement without the express written consent of the other. This Agreement shall inure to the benefit of, and be binding upon, he parties and their respective successors and permitted assigns.

12.6    This Agreement may be executed in several counterparts, each of which when so executed shall be deemed to be an original and such counterparts, together, shall constitute one and the same instrument. Delivery by facsimile of this Agreement or an executed counterpart hereof shall be deemed a good and valid execution and delivery hereof or thereof.

12.7    Nothing contained herein shall be deemed to create any relationship between Consultant and Company other than a consulting relationship. It is stipulated that the parties are not partners or joint venturers.

**GREAT AMERICAN GROUP, LLC**

By: _____

Name: _____

Its: _____

**VICTORY MEMORIAL HOSPITAL**

By: _____

Name:  _Dr. Vincent J. Calamia_____

Its:  _Chief Executive Officer_____

# EXHIBIT LIST

**EXHIBIT A**        **ASSET LIST**

**EXHIBIT B**        **BUDGET**

**EXHIBIT C**        **PARTIES ASSERTING LIENS**

C:\DOCUME~1\at17805\LOCALS~1\Temp\tmp2B8\EASTDMS_EAST_42475626_1.TMP