**Exhibit A**

**DLA PIPER US LLP**
1251 Avenue of the Americas
New York, New York 10020-1104
Tel: (212) 335-4500
Fax: (212) 335-4501
Timothy Walsh (TW-7409)
Jeremy Johnson (JJ-9269)

Attorneys for Debtors and
Debtors in Possession

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

```
------------------------------------------------------------- X
In re:                                          :    Chapter 11
                                                :
VICTORY MEMORIAL HOSPITAL, et al.,              :    Case Nos.:    06-44387
                                                :                  06-44388
                                                :                  06-44389
                      Debtors.                  :
------------------------------------------------------------- X    (Jointly Administered)
```

### ORDER AUTHORIZING DEBTORS TO ENTER INTO
### AMENDMENT TO ASSET PURCHASE AGREEMENT

Pursuant to section 11.9 of the asset purchase agreement, dated April 18, 2008 (as amended from time to time, the "Asset Purchase Agreement"), between Victory Memorial Hospital and its subsidiaries (the "Debtors"), Sunset LG Realty LLC (as successor in interest to Dervaal LLC) and Hamilton Park Multicare, LLC (as successor in interest to Chaim Sieger); and pursuant to the attached Amendment to Asset Purchase Agreement ("Amendment"); and upon consent of the Official Committee for Unsecured Creditors (the "Committee); and the Court having jurisdiction to consider the requested relief; and the Court having determined that the relief requested is in the best interests of the Debtors, their estates, creditors and all parties-in-interest in the above-captioned chapter 11 cases (the "Chapter 11 Cases"); and it appearing that

no other or further notice need be given; and after due deliberation and sufficient cause therefore _(CEC)_, it is hereby,

ORDERED that the Debtors are authorized to enter into the Amendment to the Asset Purchase Agreement; and it is further

ORDERED that notice of entry of this Order shall be served within five (5) business days on (i) attorneys for the Debtor, DLA Piper US LLP, 1251 Avenue of the Americas, New York, New York 10020, Attn: Timothy W. Walsh, Esq. and Jeremy R. Johnson, Esq.; (ii) the Office of the United States Trustee for the Eastern District of New York, 271 Cadman Plaza East, Suite 4529, Brooklyn, New York 11201, Attn.: Lisa Lambert, Esq. and Brian Hufnagel, Esq.; (iii) the attorneys for the Official Committee of Unsecured Creditors, Alston & Bird LLP, 90 Park Avenue, New York, New York 10016, Attn: Martin G. Bunin, Esq. and Craig E. Freeman, Esq.; (iv) counsel to the Dormitory Authority of the State of New York, Sidley Austin LLP, 787 Seventh Avenue, New York, New York 10019, Attn: Geoffrey Raicht, Esq.; (v) Office of the Attorney General, 120 Broadway, New York, NY 10271-0332, Attn: Paula Gellman, Assistant Attorney General.

Dated: Brooklyn, New York
August [_24_], 2009

_s/Carla E. Craig_
HONORABLE CARLA E. CRAIG
CHIEF UNITED STATES BANKRUPTCY JUDGE

**Amendment**

**(Exhibits to this order omitted)**

**Exhibit B**

## ASSET PURCHASE AGREEMENT

**ASSET PURCHASE AGREEMENT** (this "Agreement"), dated November ___, 2009, by and among **HAMILTON PARK MULTICARE, LLC**, a New York limited liability company ("Seller"), **PERSONAL-TOUCH HOME AIDES OF NEW YORK, INC.**, a New York corporation ("Buyer"), **VICTORY MEMORIAL HOSPITAL**, a New York not-for-profit corporation and its subsidiaries (collectively, "Victory"), and **SUNSET LG REALTY LLC**, a New York limited liability company ("Sunset"). Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Original Purchase Agreement (defined below). All references to the Original Purchase Agreement shall be deemed to refer to the Original Purchase Agreement as amended through the date hereof.

## RECITALS

A.     Seller, Victory and Sunset are parties to that certain Asset Purchase Agreement (the "Original Purchase Agreement"), dated as of April 18, 2008 (as amended to date), pursuant to which, among other things, Victory sold and Seller purchased certain assets related to a long-term home health care program known as the LTHHCP Assets (as hereinafter defined) (the "Original Transaction").

B.     The sale of the LTHHCP Assets pursuant to the Original Purchase Agreement occurred on September 1, 2009 (the "Original Closing").

C.     At the Original Closing, among other things, Seller acquired the LTHHCP Assets and a skilled nursing facility, Sunset acquired certain real and personal property assets related to a hospital facility and Victory received approximately $45,000,000 as compensation therefor.

D.     Buyer now desires to purchase from Seller, and Seller desires to sell to Buyer, the LTHHCP Assets.

E.     In connection with the Original Transaction, Sunset issued a Promissory Note (the "Note") to Victory, in the principal amount of $5,000,000 and maturing on May 16, 2010, as part of the total consideration for the assets sold by Victory pursuant to the Original Purchase Agreement.

F.     In connection with the Original Transaction, Seller is indebted to Sunset for certain amounts paid by Sunset to Victory on behalf of Seller (the "Debt").

G.     The Seller and Sunset desire to direct to Victory a portion of the purchase price of the LTHHCP Assets to be received by Seller from Buyer pursuant to this Agreement in order to offset any outstanding payment obligations of Sunset under the Note and as partial payment of the Debt.

NOW, THEREFORE, in consideration of the foregoing and the mutual covenants and agreements hereinafter set forth, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1.    PURCHASE AND SALE OF ASSETS.

1.1    Assets to be Transferred. Subject to the terms and conditions of this Agreement, on the Closing Date (as hereinafter defined) Seller shall sell, transfer, convey, assign and deliver to Buyer, and Buyer shall purchase and accept, the following assets (collectively the "LTHHCP Assets"):

(a)    all tangible Operator Assets used by Seller in connection with the LTHHCP, including, without limitation, all files, documents, instruments, papers, books, medical books, reports, records, tapes, minute books, microfilms, photographs, letters, budgets, forecasts, ledgers, journals, title policies, customer lists, vendor lists and correspondence, regulatory filings, billing and financial records, personnel records of current and former employees and medical staff, student files for current and former students, operating data and plans, technical documentation (design specifications, functional requirements, operating instructions, logic manuals, flow charts, etc.), user documentation (installation guides, user manuals, training materials, release notes, working papers, etc.), marketing documentation (sales brochures, flyers, pamphlets, web pages, etc.), and other similar materials related to the LTHHCP in each case whether or not in electronic form, and, subject to any and all applicable laws, rules and regulations with respect to the confidentiality of patient medical records, custody of all LTHHCP patient medical records, patient charts and patient lists;

(b)    all goodwill and other intangible Operator Assets associated with the LTHHCP, including, without limitation, any telephone number(s), intellectual property rights and exclusive rights with respect to employing any employees associated with the LTHHCP; provided, however, that Buyer is not assuming any Liability relating to the prior use of the names or trade names used by Seller or Victory;

(c)    all medical or healthcare professional services, lease, vendor or other third party contracts related to operation of the LTHHCP;

(d)    all transferable licenses, permits, approvals, authorizations, consents, certificates of need, certificates of exemption, franchises, accreditations, registrations or certificates of any Governmental Entity or professional accrediting agency relating to the LTHHCP;

(e)    an Assignment by Seller to Buyer of all vendor contracts, leases and other agreements as Buyer deems necessary to operate the LTHHCP; and

(f)    all other assets, properties and rights of Seller related to the LTHHCP, except for the Excluded Assets (as hereinafter defined).

1.2    Assumption of Liabilities. (a) Buyer hereby assumes and agrees to perform, pay or discharge, and Seller shall be unconditionally released from liability for, from and after the Closing Date, all obligations or liabilities of Seller in connection with the LTHHCP Assets solely to the extent that such obligations or liabilities accrue after the Closing; and (b) Notwithstanding

the foregoing, Buyer shall not assume or agree to perform, pay or discharge, and Seller and Victory, as the case may be, shall remain unconditionally liable for, from and after the date hereof, any liabilities of Seller or Victory, including without limitation, any liability or obligation to Medicaid or Medicare that accrued prior to the date hereof, and any and all other liabilities of Seller set forth on Schedule 1.2(b) hereto.

1.3     Excluded Assets. Anything herein to the contrary notwithstanding, Seller is not selling to Buyer, and Buyer is not purchasing, any of the assets listed on Schedule 1.3 hereto (the "Excluded Assets"). At Buyer's sole discretion, Buyer may revise Schedule 1.3 to add to such Schedule other assets if Buyer determines that it is not in Buyer's best interest to purchase such assets; provided, Buyer shall deliver to Seller the final Schedule 1.3 on or before the Closing Date. Buyer shall not be obligated to purchase or assume, and shall not purchase or assume, any of such assets that are added to Schedule 1.3 by Buyer, and all of such assets shall be considered Excluded Assets hereunder. The revision of Schedule 1.3 by Purchaser pursuant to this Section 1.3 shall not result in any adjustment to the Purchase Price (as defined below).

1.4     Prorations. All of the expenses associated with the LTHHCP Assets that relate to periods commencing prior to the Closing Date and commencing after the Closing Date will be prorated between Buyer and Seller as of the close of business on the Closing Date, including but not limited to: (a) tax; (b) utilities expenses, including electricity, water, gas, and telephone; (c) salaries to employees; (d) service charges and (e) rent. All such prorations shall be calculated by Seller (with the approval of Buyer) and shall be allocated so that items related to time periods ending on or before the Closing Date shall be allocated to Seller and items relating to time periods after the Closing date shall be allocated to Buyer. Prorations shall be settled and paid on the Closing Date unless Seller cannot provide calculations on such date in which case, prorations shall be settled as soon as practicable thereafter.

2.     PURCHASE PRICE; PAYMENT.

2.1     Purchase Price. The purchase price (the "Purchase Price") for the LTHHCP Assets shall be Two Million Dollars ($2,000,000.00).Payment of Purchase Price. The Purchase Price shall be paid by Buyer as follows:

(a)     Payment into Escrow. Immediately upon the signing of this Agreement, Buyer shall deposit into escrow One Million Dollars ($1,000,000.00) (the "Escrowed Amount") in accordance with the terms and conditions of, and as further described in, the Escrow Agreement attached as Exhibit A hereto. If the Closing occurs in accordance with the terms and conditions of this Agreement, at Closing, the Escrowed Amount, along with accrued interest thereon (and less any fees incurred by the Escrow Agent) (the "Escrowed Funds"), shall be disbursed as provided in Section 2.2(c). If the Closing fails to occur in accordance with the terms and conditions of this Agreement, the Escrowed Funds shall be disbursed as provided in Section 9.2.

(b)     Cash to Seller at Closing. At the Closing, Buyer shall pay to Seller an amount equal to the Purchase Price minus the Escrowed Funds (the "Residual Amount").

(c)     Cash to Victory at Closing.  At the Closing, Seller, Buyer and Victory shall instruct the Escrow Agent (as defined in the Escrow Agreement) to release Escrowed Funds as follows:

(i)     if the Escrowed Funds are less than or equal to the total amount then outstanding on the Note, the Escrow Agent shall release the entire Escrowed Funds to Victory; and

(ii)    if the Escrowed Funds are greater than the total amount then outstanding on the Note, the Escrow Agent shall release an amount of the Escrowed Funds to Victory equal to the total amount then outstanding on the Note and release the balance of the Escrowed Funds to Sunset.

(d)     Application of Cash to Victory.  Any amounts released by the Escrow Agent to Victory pursuant to this Section 2.2(d) shall (i) as between Sunset and Seller, offset the Debt owed to Sunset by Seller and (ii) as between Sunset and Victory, be credited against amounts then outstanding on the Note and owed by Sunset.  With respect to the Note, any such payments shall be applied first to the payment of all fees, expenses or other amounts due to Victory under the Note (excluding principal and interest), then to accrued interest, and then the balance to outstanding principal.  Three business days prior to the Closing Date, Victory shall notify the other parties hereto in writing of its calculation of the total amount due under the Note as of the Closing Date (which shall be accompanied by such supporting documentation and information as are reasonably necessary for a review of such calculation).

(e)     Method of Payment.  All payments under this Section 2.2 shall be made by wire transfer of immediately available funds, to an account designated by the recipient.

## 3.     REPRESENTATIONS AND WARRANTIES OF THE SELLER.

Seller represents and warrants as follows:

3.1     Organization.  Seller is a limited liability company duly organized, validly existing and in good standing under the laws of the state of New York and has full right, power, authority and capacity to enter into this Agreement, and to consummate the transactions contemplated hereby.

3.2     Authorization.  Seller has the requisite power and authority to enter into this Agreement and to perform its obligations hereunder.  The execution and delivery of this Agreement by Seller, the performance by Seller of its obligations hereunder and the consummation by Seller of the transactions contemplated hereby have been duly and validly authorized by all necessary limited liability company action on the part of Seller.  This Agreement has been duly executed and delivered by Seller and constitutes the valid and binding obligations of Seller, enforceable in accordance with its terms, subject to laws of general

application relating to bankruptcy, insolvency and the relief of debtors and rules of law governing specific performance, injunctive relief or other equitable remedies.

3.3   Consents. Other than as described in Section 6, no consent, approval or authorization of or designation, declaration or filing with any third party or governmental authority on the part of Seller is required in connection with the valid execution, delivery and performance of this Agreement that has not been obtained.

3.4   Title; Transfer Free of Liens. Seller has good, valid and marketable title in and to the LTHHCP Assets, free and clear of any liens or other interest of third parties, including, without limitation, any liens or interests relating to or stemming from Medicare or New York State Medicaid. On the Closing Date, Seller will sell, convey, assign, transfer and deliver to Buyer good, valid and marketable title and all Seller's right and interest in and to the LTHHCP Assets, free and clear of all liens, pledges, mortgages, restrictions and encumbrances of any kind, whether accrued, absolute, contingent or otherwise, including, without limitation, any liens or interests relating to or stemming from Medicare or New York State Medicaid.

4.   REPRESENTATIONS AND WARRANTIES OF THE BUYER.

Buyer hereby represents and warrants as follows:

4.1   Organization. Buyer is a corporation duly organized, validly existing and in good standing under the laws of its jurisdiction of incorporation and has full right, power, authority and capacity to enter into this Agreement, and to consummate the transactions contemplated hereby.

4.2   Authorization. All corporate action on the part of Buyer and its directors and shareholders necessary for the authorization, execution, delivery and performance of this Agreement and all other agreements and instruments to be executed in connection herewith or pursuant hereto have been taken. This Agreement is a legal, valid and binding obligation of Buyer, enforceable in accordance with its terms, subject to laws of general application relating to bankruptcy, insolvency and the relief of debtors and rules of law governing specific performance, injunctive relief or other equitable remedies.

5.   CONDUCT OF BUSINESS PENDING THE CLOSING.

From the date hereof until the Closing, except as otherwise approved in writing by Buyer:

5.1   No Changes. Seller will carry on the business related to the LTHHCP Assets diligently and in the same manner as heretofore and will not make or institute any material changes in its methods of management or operation as they relate to the LTHHCP Assets.

5.2   Maintain Organization. Seller will use its reasonable best efforts to preserve for Buyer its present relationships with third parties having business relationships with Seller related to the LTHHCP Assets.

5.3    No Material Contracts.  No contract, lease or commitment will be entered into on behalf of Seller in connection with the LTHHCP Assets, except contracts which are in the ordinary course of business and consistent with past practice and copies of which have been provided to Buyer.

## 6.    CONDITIONS PRECEDENT TO THE BUYER'S OBLIGATIONS.

Each and every obligation of Buyer to be performed on the Closing Date shall be subject to the satisfaction prior to or at the Closing of each of the following conditions.

6.1    Representations and Warranties True on the Closing Date.  Each of the representations and warranties made by Seller in this Agreement, and the statements contained in any instrument, list, certificate or writing delivered by Seller pursuant to this Agreement, shall be true and correct in all material respects when made and shall be true and correct in all material respects at and as of the Closing Date as though such representations and warranties were made or given on and as of the Closing Date, except for any changes permitted by the terms of this Agreement or consented to in writing by Buyer.Compliance with Agreement.  The Seller shall have in all material respects performed and complied with all of its agreements and obligations under this Agreement which are to be performed or complied with by it prior to or on the Closing Date, including the delivery of the closing documents specified in Section 8.

6.3    Sale Order.  An order of the Bankruptcy Court (the "Sale Order") will have been entered approving the sale of the LTHHCP Assets by Seller to Buyer and the transactions contemplated by this Agreement.

6.4    Regulatory Approval.  A certificate (the "DOH Certificate") from the New York State Department of Health approving the sale of the LTHHCP Assets pursuant to this Agreement shall have been obtained as well as any other applicable regulatory approvals.

## 7.    CONDITIONS PRECEDENT TO THE SELLER'S OBLIGATIONS.

Each and every obligation of Seller to be performed on the Closing Date shall be subject to the satisfaction prior to or at the Closing of the following conditions:

7.1    Representations and Warranties True on the Closing Date.  Each of the representations and warranties made by Buyer in this Agreement, and the statements contained in any instrument, list, certificate or writing delivered by Buyer pursuant to this Agreement, shall be true and correct in all material respects when made and shall be true and correct in all material respects at and as of the Closing Date as though such representations and warranties were made or given on and as of the Closing Date except for any changes permitted by the terms of this Agreement or consented to in writing by Seller.

7.2    Compliance with Agreement.  The Buyer shall have in all material respects performed and complied with all of Buyer's agreements and obligations under this Agreement which are to be performed or complied with by Buyer prior to or on the Closing Date, including the delivery of the closing documents specified in Section 8.

8.  CLOSING.

8.1   The closing of this transaction (the "Closing") shall occur as promptly as practicable after all of the conditions set forth in this Agreement shall have been satisfied or, if permissible, waived by the party entitled to the benefit of the same and shall take place at the offices of Berger & Sklaw LLP, 295 Madison Avenue, Suite 700, New York, New York 10017. Such date and time is referred to in this Agreement as the "Closing Date."

8.2   Documents to be Delivered by Seller. At the Closing, Seller shall deliver the following documents, in each case duly executed or otherwise in proper form:

(a)   Bill of Sale. A Bill of Sale and such other instruments of assignment, transfer, conveyance and endorsement as will be sufficient in the opinion of Buyer and its counsel to transfer, assign, convey and deliver to Buyer the LTHHCP Assets as contemplated hereby.

(b)   Certified Resolutions. A certified copy of the resolutions of the members of Seller authorizing and approving this Agreement and the consummation of the transactions contemplated by this Agreement.

(c)   Sale Order. A copy of the Sale Order.

(d)   DOH Certificate. A copy of the DOH Certificate.

(e)   Release of Escrow. A letter to the Escrow Agent authorizing the release of the Escrowed Funds as set forth in Section 2.2.

(f)   Other Documents. All other documents, instruments or writings required to be delivered to Buyer at or prior to the Closing pursuant to this Agreement and such other certificates of authority and documents as Buyer may reasonably request.

8.3   Documents to be Delivered by Buyer. At the Closing, Buyer shall deliver the following documents, in each case duly executed or otherwise in proper form:

(a)   Cash. Wire transfer of the Residual Amount.

(b)   Certified Resolutions. A certified copy of the resolutions of the Board of Directors of Buyer authorizing and approving this Agreement and the consummation of the transactions contemplated by this Agreement.

(c)   Release of Escrow. A letter to the Escrow Agent authorizing the release of the Escrowed Funds as set forth in Section 2.2.

(d)   Other Documents. All other documents, instruments or writings required to be delivered to Seller at or prior to the Closing pursuant to this Agreement and such other certificates of authority and documents as Seller may reasonably request.

8.4    Further Assurances.    Prior to and following the Closing, each party to this Agreement agrees to cooperate fully with the other parties and to execute such further instruments, documents and agreements, and to give such further written assurances, as may be reasonably requested by any other party to better evidence and reflect the transactions described herein and to carry into effect the intent and purposes of this Agreement.

9.    TERMINATION.

9.1    Permissible Termination.    This Agreement may be terminated at any time prior to the Closing Date:

(a)    by the mutual written consent of all parties hereto;

(b)    by any party hereto by written notice to the other parties hereto, if the Closing shall not have occurred prior to 5:00 pm (New York time) on November 1, 2010 (the "Termination Date"); provided, however, that the Termination Date shall be automatically extended for an additional 30 days if, on the Termination Date, any of the conditions set forth in Sections 6.3 and 6.4 shall not have been satisfied and any such approvals that have not yet been obtained are being pursued diligently and in good faith; and, provided, further, that the right to terminate this Agreement under this Section 9.1(b) shall not be available to any party whose failure to comply with any material covenant or obligation under this Agreement has been the cause of, or resulted in, the failure of the Closing to occur on or before such date;

(c)    by Seller, if any of the conditions set forth in Sections 6.3 and 6.4 hereof shall become impossible to fulfill other than for reasons within the control of the Seller;

(d)    by Seller, upon not less than thirty (30) days written notice to Buyer of Buyer's failure to close this transaction pursuant to the terms of this Agreement, provided Seller is not then in material breach of any material term, representation, warranty or covenant of Seller contained in this Agreement and is ready, willing and able to so close; or

(e)    by Buyer, if any of the conditions set forth in Sections 6.3 and 6.4 hereof shall become impossible to fulfill other than for reasons within the control of Buyer or if Buyer is not then in material breach of any material term of this Agreement, upon written notice to Seller, upon a material breach of any representation, warranty or covenant of Seller contained in this Agreement, provided that such breach is not capable of being cured or has not been cured within 30 days after the giving of notice thereof by Buyer.

9.2    Effect of Termination.    In the event of the termination of this Agreement pursuant to Section 9.1, this Agreement shall forthwith become null and void and have no effect, without any liability on the part of the parties hereto or their respective directors, officers,

employees, partners or stockholders and all rights and obligations of any party hereto shall cease; provided, however that;

        (a)    if this Agreement shall be terminated pursuant to Sections 9.1(a), (b), (c) or (e) the Escrowed Funds shall be returned to Buyer; and

        (b)    if this Agreement shall be terminated pursuant to Section 9.1(d), Two Hundred Thousand ($200,000.00) of the Escrowed Funds shall be delivered to Victory in the manner of and in accordance with the provisions of Section 2.2(d), and the balance of the Escrowed Funds shall be returned to Buyer

## 10. MISCELLANEOUS.

10.1    Entire Agreement. This Agreement, including the exhibits hereto, contains all of the terms and provisions and constitutes the entire agreement between the parties hereto with respect to the subject matter hereof. This Agreement supersedes all prior written, oral and implied understandings, representations and agreements of the parties hereto relating to the subject matter of this Agreement.

10.2    Amendment. This Agreement may not be amended, modified or supplemented except pursuant to an instrument in writing executed and delivered on behalf of the parties hereto which instrument, when so executed and delivered, shall thereupon become a part of this Agreement.

10.3    Notice. All notices, requests, demands and other communications hereunder shall be given in writing and shall be: (a) personally delivered; (b) sent by telecopier, facsimile transmission or other electronic means of transmitting written documents; or (c) sent to the parties at their respective addresses indicated herein by registered or certified U.S. mail, return receipt requested and postage prepaid, or by private overnight mail courier service. The respective addresses to be used for all such notices, demands or requests are as follows:

If to Victory, to:

        Victory Memorial Hospital, et al.
        699 92nd Street
        Brooklyn, NY 11228
        Attn.: Dr. Vincent Calamia
        Facsimile: (718) 567-1837

With a copy to:

        DLA Piper LLP (US)
        1251 Avenue of the Americas
        New York, NY 10020
        Attn.: Timothy W. Walsh, Esq.
        Facsimile: (212) 884-8516

If to Personal-Touch, to:

        Personal-Touch Home Aides of New York, Inc.
        222-15 Northern Blvd.
        Bayside, NY 11367

<table>
<tr><td></td><td>Attn.: Robert Marx, Esq.<br>Facsimile: (718) 458-4520</td></tr>
<tr><td>With a copy to:</td><td>Berger & Sklaw LLP<br>295 Madison Avenue<br>Suite 700<br>New York, NY 10017<br>Attn.: Ephraim D. Berger, Esq.<br>Facsimile: (212) 685-6862</td></tr>
<tr><td>If to Hamilton Park, to:</td><td>Hamilton Park Multicare, LLC<br>699 92nd Street<br>Brooklyn, NY 11228</td></tr>
<tr><td>If to Sunset, to:</td><td>Sunset LG Realty LLC<br>1629 46th Street<br>Brooklyn, New York 11204<br>Attention: Abraham Leser<br>Facsimile No: (718) 438-0164</td></tr>
<tr><td>With a copy to:</td><td>Frenkel, Hershkowitz & Shafran LLP<br>16 East 34th Street<br>New York, NY 10016<br>Attention: Joseph M. Hershkowitz, Esq.<br>Facsimile No: (212) 889-5072</td></tr>
<tr><td>If to Escrow Agent, to:</td><td>First American Title Company of New York<br>633 Third Ave, 16th Floor<br>New York, NY 10017<br>Attn.: Terry L. Outz – VP & Senior Title Officer<br>Facsimile: (212) 331-1485</td></tr>
</table>

If personally delivered, such communication shall be deemed delivered upon actual receipt; if electronically transmitted pursuant to this Section, such communication shall be deemed delivered the next business day after transmission (and sender shall bear the burden of proof of delivery); if sent by overnight courier pursuant to this Section, such communication shall be deemed delivered upon receipt; and if sent by U.S. mail pursuant to this Section, such communication shall be deemed delivered as of the date of delivery indicated on the receipt issued by the relevant postal service, or, if the addressee fails or refuses to accept delivery, as of the date of such failure or refusal. Any party to this Agreement may change its address for the purposes of this Agreement by giving notice thereof in accordance with this Section.

10.4     Expenses. Regardless of whether or not the transactions contemplated hereby are consummated, Buyer shall pay the legal expenses of Victory's counsel up to _____ Dollars ($_____) incurred in connection with the preparation, negotiation and consummation of the transactions contemplated hereby. Such amount to be paid by Buyer within ___ days after presentation to Buyer by Victory or such counsel of an invoice or invoices in connection therewith.

10.5     Binding Effect. This Agreement and the terms and provisions hereof, shall inure to the benefit of, and be binding upon, Buyer and Seller and each of their respective successors and assigns.

10.6     Headings. The article, section and other headings contained in this Agreement are for convenience only, and shall not be used in the construction of this Agreement.

10.7     Applicable Law.    This Agreement shall be construed and interpreted in accordance with the laws of the State of New York as though all acts and omissions related to this Agreement occurred in the State of New York.

10.8     Invalid Provisions.    If any term, provision, covenant, or condition of this Agreement, or the application thereof to any person or circumstance, shall be held by a court of competent jurisdiction to be invalid, unenforceable, or void, the remainder of this Agreement and such term, provision, covenant, or condition as applied to other persons or circumstances shall remain in full force and effect.

10.9     Delays or Omissions. It is agreed that no delay or omission to exercise any right, power or remedy accruing to any party hereto, upon any breach or default of any other party hereto shall impair any such right, power or remedy, nor shall it be construed to be a waiver of any such breach or default, or any acquiescence therein, or of or in any similar breach or default thereafter occurring. It is further agreed that any waiver, permit, consent or approval of any kind or character on the part of any party hereto of any breach or default under this Agreement, or any waiver of any provisions or conditions of this Agreement must be in writing and shall be effective only to the extent specifically set forth in such writing and that all remedies, either under this Agreement, or by law or otherwise afforded to such party, shall be cumulative and not alternative.

10.10   Construction. The parties and their respective legal counsel actively participated in the negotiation and drafting of this Agreement, and in the event of any ambiguity or mistake herein, or any dispute among the parties with respect to the provisions hereof, no provision of this Agreement shall be construed unfavorably against any of the parties on the ground that such party or such party's counsel was the drafter thereof.

10.11   Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

[signature page follows]

IN WITNESS HEREOF, the parties hereto have duly executed this Agreement, as of the day and year first above written.

**SELLER:**

**HAMILTON PARK MULTICARE, LLC**

By: _____
    Name:   Chaim Sieger
    Title:   Member

**BUYER:**

**PERSONAL-TOUCH HOME AIDES OF NEW YORK, INC.**

By: _____
    Name:
    Title:

**VICTORY:**

**VICTORY MEMORIAL HOSPITAL et al.**

By: _____
    Name:   Vincent Calamia, M.D.
    Title:   President & Chief Executive Officer

**SUNSET:**

**SUNSET LG REALTY LLC**

By: _____
    Name:   Abraham Leser
    Title:

## SCHEDULE 1.3

### EXCLUDED ASSETS

## EXHIBIT A

ESCROW AGREEMENT

# ESCROW AGREEMENT

This **ESCROW AGREEMENT** (this "Agreement") is dated as of November [___], 2009, by and among **VICTORY MEMORIAL HOSPITAL**, a New York not-for-profit corporation and its subsidiaries (collectively, the "Victory"), **PERSONAL-TOUCH HOME AIDES OF NEW YORK, INC.**, a New York corporation ("Personal-Touch"), **HAMILTON PARK MULTICARE, LLC**, a New York limited liability company ("Hamilton Park"), and **FIRST AMERICAN TITLE COMPANY OF NEW YORK**, as Escrow Agent (the "Escrow Agent"). Capitalized terms used but not defined herein have the meanings assigned to such terms in the Asset Purchase Agreement (defined below).

## RECITALS

A.    Personal-Touch, Victory, Hamilton Park and Sunset LG Realty LLC entered into that certain Asset Purchase Agreement dated as of November ___, 2009 (the "Asset Purchase Agreement"), pursuant to which, among other things, Personal-Touch shall acquire from Hamilton Park certain assets relating to the 400 Slot Long Term Home Health Care Program (the "LTHHCP") which was purchased by Hamilton Park from Victory on September 1, 2009.

B.    Pursuant to Section 2.2 of the Asset Purchase Agreement, Personal-Touch agreed to deliver to the Escrow Agent the sum of One Million Dollars ($1,000,000) (the "Escrowed Funds"), representing a portion of the purchase price for the LTHHCP (the "LTHHCP Purchase Price").

C.    The Escrow Agent acknowledges that it is willing to receive, hold and disburse the Escrowed Funds in escrow in accordance with the terms and conditions hereinafter set forth.

**NOW, THEREFORE**, in consideration of the foregoing and of the mutual covenants and agreements hereinafter set forth, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

## ARTICLE I

## DESIGNATION OF ESCROW AGENT AND DELIVERY OF ESCROWED FUNDS

1.1    Appointment of Escrow Agent.    Victory, Hamilton and Personal-Touch hereby designate and appoint the Escrow Agent as their escrow agent to receive, hold and disburse the Escrowed Funds, and the Escrow Agent hereby accepts such appointment to receive, hold and disburse the Escrowed Funds, upon the terms and subject to the conditions set forth in this Agreement.

1.2    Escrow Deposit.    On the date hereof, One Million Dollars ($1,000,000) of the LTHHCP Purchase Price shall be delivered to the Escrow Agent by Personal-Touch by wire transfer of immediately available funds to the following account designated by the Escrow Agent:

| Bank | |
|------|--|
| ABA No: | |
| Swift Code | |
| Account Name | |
| Account No. | |
| Ref: | |
| Clearance Officer | |

The Escrow Agent shall hold the Escrowed Funds in escrow on the terms and conditions set forth in this Agreement.

1.3     Investment of Escrowed Funds. Escrow Agent shall invest the Escrowed Funds in an interest-bearing account.     All interest accumulated on and proceeds from the Escrowed Funds (collectively, "Deposit Interest") shall be held by Escrow Agent until the Escrowed Funds are released in accordance with the terms of this Agreement.

## ARTICLE II

## RELEASE OF ESCROWED FUNDS

2.1     Release of Escrowed Funds.

(a)     The Escrow Agent shall disburse the Escrowed Funds together with Deposit Interest to the other party(ies) entitled thereto pursuant to Paragraph 9.2 of the Asset Purchase Agreement after not less than ten (10) business days' prior Notice to all of the parties of a claim from the party demanding release of any Escrowed Funds to such party, which Notice shall set forth the proposed distribution of the Escrowed Funds.

(b)     Within five (5) business days of its receipt of the joint written instruction, the Escrow Agent shall, in a manner wholly consistent with such notice or order, release Escrowed Funds after the Escrow Agent has been reimbursed for expenses in accordance with Section 2.1(c) hereof.

(c)     Prior to any release of the Escrowed Funds, the Escrow Agent shall deliver to Personal-Touch, Hamilton Park and Victory a statement requesting reimbursement of any expenses incurred by the Escrow Agent for which it is entitled to reimbursement under Section 3.3 hereof but for which it has not been reimbursed and, after the parties have mutually agreed on the amount of such reimbursement, Victory shall pay such agreed amount to the Escrow Agent.     Following such payment, the Escrow Agent shall release the remaining Escrowed Funds in accordance with this Section 2.1.

(d)     Notwithstanding Section 2.1(a), the Escrow Agent shall disburse the Escrowed Funds together with Deposit Interest to Victory upon receipt of a written notice (a "Claim") from Victory advising the Escrow Agent of a material breach of the Asset Purchase Agreement by Personal-Touch and requesting distribution pursuant to Section 9.2(b) of the Asset

Purchase Agreement. The Claim shall confirm that a notice pursuant to Section 9.1(d) of the Asset Purchase Agreement has been sent to Personal-Touch and that the applicable cure period has passed.

(e)     In the event of any dispute between the parties, the Escrow Agent shall disregard any instructions received and may hold the Escrowed Funds until the dispute is mutually resolved and the Escrow Agent is advised of this fact in writing by Personal-Touch, Hamilton Park and Victory, or the Escrow Agent is otherwise instructed by a final judgment of a court of competent jurisdiction.

## ARTICLE III

## RESPONSIBILITIES AND DUTIES OF ESCROW AGENT

3.1     Rights, Duties, Liabilities and Immunities of Escrow Agent.

(a)     The Escrow Agent shall be entitled to rely upon any order, judgment, certificate, demand, notice, instrument, opinion or other writing delivered to it hereunder without being required to determine the authenticity or the correctness of any fact stated therein or the propriety or validity of the service thereof.

(b)     The Escrow Agent may act in reliance upon any instrument or signature believed by it to be genuine and may assume that any person purporting to give notice or receipt or advice or make any statement or execute any document in connection with the provisions hereof has been duly authorized to do so.

(c)     The Escrow Agent shall not be liable for any error of judgment or for any act done or step taken or omitted by it in good faith or for any mistake of fact or law or for any thing which it may do or refrain from doing in connection herewith, except due to the Escrow Agent's own gross negligence or willful misconduct.

(d)     The Escrow Agent may consult with and obtain advice from legal counsel in the event of any question as to any of the provisions of this Agreement or its duties hereunder, and the Escrow Agent shall incur no liability and shall be fully protected in acting in good faith in accordance with the opinion and instructions of such counsel. Subject to the provisions of Section 3.3 hereof, the reasonable cost of such services shall be added to and shall become a part of the Escrow Agent's compensation hereunder.

(e)     The Escrow Agent shall have no duties except those expressly set forth herein, and shall not be bound by any notice of a claim or demand with respect thereto, or any waiver, modification, amendment, termination or rescission of this Agreement, unless in a writing received by it, and, if its duties herein are affected, unless it shall have given its prior written consent thereto.

(f)     In the event of any disagreement between any of the parties to this Agreement or between them or any one of them and any other person, resulting in adverse claims or demands being made in connection with the subject matter of this Agreement, or in the event the Escrow Agent in good faith shall be in doubt as to what action it should take hereunder, the

Escrow Agent shall thereupon have the right (i) to refrain from complying with any claims or demands asserted on it as the Escrow Agent, or (ii) to refuse to take any other action hereunder, so long as such disagreement continues or exists, and in either such event, the Escrow Agent shall not be or become liable in any way to any person for the Escrow Agent's failure to act, and the Escrow Agent shall be entitled to continue to refrain from acting, until the rights of all parties shall have been fully and finally arbitrated or adjudicated by a court of competent jurisdiction, and the Escrow Agent shall have been notified thereof by a writing signed by all such persons. The rights of the Escrow Agent under this subsection (f) are cumulative of all other rights which it may have by law or otherwise.

3.2     Copies of Certifications, Notices and Other Documentation. Promptly after receipt by the Escrow Agent from any other party herein of any written certificate, notice, request, waiver, consent, receipt or other document, the Escrow Agent shall furnish a copy of any of such items to such other party or parties, as the case may be.

3.3     Compensation. The Escrow Agent undertakes to perform all duties which are expressly set forth herein for a fee of [$500], which shall be paid by Personal-Touch. The Escrow Agent shall also be entitled to reimbursement for all reasonable expenses, disbursements and advances incurred or made by the Escrow Agent in accordance with any of the provisions of this Agreement (including the reasonable compensation and the expenses and disbursements of its counsel and of all persons not regularly in its employ), exclusive of any such expense, disbursement or advance that may arise from its own gross negligence or willful misconduct. All such reimbursement of the Escrow Agent under the provisions of this Section 3.3 shall be paid in accordance with Section 2.1(c) hereof.

3.4     Successor Escrow Agent. The Escrow Agent (and any successor Escrow Agent) may at any time resign by giving notice in writing to Victory, Hamilton Park and Personal-Touch, and the Escrow Agent shall be discharged from its duties hereunder upon the appointment of a successor Escrow Agent and the transfer of the Escrowed Funds to such successor Escrow Agent as hereinafter provided. In the event of any such resignation, a successor Escrow Agent shall be appointed by written consent of Victory, Hamilton Park and Personal-Touch. Any successor Escrow Agent shall deliver to Victory, Hamilton Park and Personal-Touch a written instrument accepting the appointment hereunder, and thereupon it shall succeed to all the rights and duties of the Escrow Agent hereunder, and the predecessor Escrow Agent shall deliver to such successor Escrow Agent the Escrow Funds (and other assets, if any) then held by the predecessor Escrow Agent hereunder.

## ARTICLE IV

## MISCELLANEOUS

4.1     Waiver. A waiver of any of the provisions of this Agreement shall not constitute and shall not be deemed a waiver of any other provision of this Agreement, whether or not similar, nor shall such waiver constitute a continuing waiver unless otherwise expressly provided in writing. Except as otherwise provided in this Agreement, any failure of any of the parties to comply with any obligation, representation, warranty, covenant, agreement, or condition herein may be waived by the party entitled to the benefits thereof only by a written instrument signed

by the party granting such waiver. Wherever this Agreement requires or permits consent by or on behalf of any party hereto, such consent shall be given in writing in a manner consistent with the requirements for a waiver of compliance as set forth in this Section 4.1.

4.2     Notices.    All notices, requests, demands and other communications hereunder shall be given in writing and shall be: (a) personally delivered; (b) sent by telecopier, facsimile transmission or other electronic means of transmitting written documents; or (c) sent to the parties at their respective addresses indicated herein by registered or certified U.S. mail, return receipt requested and postage prepaid, or by private overnight mail courier service. The respective addresses to be used for all such notices, demands or requests are as follows:

| | |
|---|---|
| If to Victory, to: | Victory Memorial Hospital, et al.<br>699 92nd Street<br>Brooklyn, NY 11228<br>Attn.: Dr. Vincent Calamia<br>Facsimile: (718) 567-1837 |
| With a copy to: | DLA Piper LLP (US)<br>1251 Avenue of the Americas<br>New York, NY 10020<br>Attn.: Timothy W. Walsh, Esq.<br>Facsimile: (212) 884-8516 |
| If to Personal-Touch, to: | Personal-Touch Home Aides of New York, Inc.<br>222-15 Northern Blvd.<br>Bayside, NY 11367<br>Attn.: Robert Marx, Esq.<br>Facsimile: (718) 458-4520 |
| With a copy to: | Berger & Sklaw LLP<br>295 Madison Avenue<br>Suite 700<br>New York, NY 10017<br>Attn.: Ephraim D. Berger, Esq.<br>Facsimile: (212) 685-6862 |
| If to Hamilton Park, to: | Hamilton Park Multicare, LLC<br>699 92nd Street<br>Brooklyn, NY 11228 |
| If to Sunset, to: | Sunset LG Realty LLC<br>1629 46th Street<br>Brooklyn, New York 11204<br>Attention: Abraham Leser |

| With a copy to: | Facsimile No: (718) 438-0164<br>Frenkel, Hershkowitz & Shafran LLP<br>16 East 34th Street<br>New York, NY 10016<br>Attention: Joseph M. Hershkowitz, Esq.<br>Facsimile No: (212) 889-5072 |
| If to Escrow Agent, to: | First American Title Company of New York<br>633 Third Ave, 16th Floor<br>New York, NY 10017<br>Attn.: Terry L. Outz – VP & Senior Title Officer<br>Facsimile: (212) 331-1485 |

If personally delivered, such communication shall be deemed delivered upon actual receipt; if electronically transmitted pursuant to this Section, such communication shall be deemed delivered the next business day after transmission (and sender shall bear the burden of proof of delivery); if sent by overnight courier pursuant to this Section, such communication shall be deemed delivered upon receipt; and if sent by U.S. mail pursuant to this Section, such communication shall be deemed delivered as of the date of delivery indicated on the receipt issued by the relevant postal service, or, if the addressee fails or refuses to accept delivery, as of the date of such failure or refusal. Any party to this Agreement may change its address for the purposes of this Agreement by giving notice thereof in accordance with this Section.

    4.3    Entire Agreement; Amendment.  Except for the Asset Purchase Agreement, this Agreement constitutes the entire agreement between the parties pertaining to the subject matter of this Agreement and supersedes all prior and contemporaneous agreements, understandings, negotiations and discussions of the parties, whether oral or written.

    4.4    Amendment and Termination.  This Agreement may be amended only by the express written consent of the parties hereto, which consent on the part of the Escrow Agent shall not be unreasonably withheld or delayed if the duties or responsibilities of the Escrow Agent are not increased by such amendment. This Agreement will terminate on the date on which the entire Escrowed Funds and any Deposit Interest have been distributed.

    4.5    Headings.  The headings in this Agreement are for reference purposes and shall not affect the meaning or interpretation of this Agreement.

    4.6    Applicable Law; Consent to Jurisdiction.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York.

    4.7    Severability.  If any term or provision of this Agreement or the application thereof to any entity or person or circumstance is or to any extent shall become invalid or unenforceable, the remainder of this Agreement or the application of such term or provision to entities, persons, or circumstances other than those held invalid or unenforceable under the laws now or hereafter in effect in the jurisdiction governing this Agreement, shall not be affected thereby, and each term and provision shall be held valid and enforceable to the greatest possible extent.

4.8    Counterparts. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. This Agreement may be executed by exchange of facsimile signatures provided, that, original signatures are exchanged promptly thereafter.

4.9    Construction. The parties and their respective legal counsel actively participated in the negotiation and drafting of this Agreement, and in the event of any ambiguity or mistake herein, or any dispute among the parties with respect to the provisions hereof, no provision of this Agreement shall be construed unfavorably against any of the parties on the ground that he, it, or his or its counsel was the drafter thereof.

4.10    Time of Essence. With regard to all dates and time periods set forth or referred to in this Agreement, time is of the essence.

[SIGNATURES ON FOLLOWING PAGE]

**IN WITNESS WHEREOF**, the undersigned have executed this Agreement as of the date first written above.

### VICTORY MEMORIAL HOSPITAL et al.

By: _____
     Name:    Vincent Calamia, M.D.
     Title:     President & Chief Executive Officer

### PERSONAL-TOUCH HOME AIDES OF NEW YORK, INC.

By: _____
     Name:
     Title:

### HAMILTON PARK MULTICARE, LLC

By: _____
     Name:
     Title:

### FIRST AMERICAN TITLE COMPANY OF NEW YORK

By: _____
     Name:
     Title:

EAST\42582162.7

**Exhibit C**

**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, New York 10020-1104
Tel: (212) 335-4500
Fax: (212) 335-4501
Timothy Walsh

Attorneys for Debtors and
Debtors in Possession

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
In re:                                                          :          Chapter 11
                                                                :
VICTORY MEMORIAL HOSPITAL., et al.,                             :          Case Nos.:      06-44387
                                                                :                          06-44388
                                                                :                          06-44389
                        Debtors.                                :
-------------------------------------------------------------------X          (Jointly Administered)

### ORDER AUTHORIZING DEBTORS TO ENTER INTO
### AMENDMENT TO ASSET PURCHASE AGREEMENT

Pursuant to the Motion (the "Motion") of Victory Memorial Hospital ("Victory" or the

"Debtor"), one of the above-captioned debtors and debtors in possession (the "Debtors") for

entry of an order authorizing the Debtor to enter into the Asset Purchase Agreement ("Purchase

Agreement") by and among Hamilton Park Multicare, LLC ("Seller"), Personal-Touch Home

Aid Care of New York, Inc. ("Buyer"), Sunset LG Realty LLC ("Sunset") and the Debtor, dated

November [___], 2009, and the accompanying Escrow Agreement (the "Escrow Agreement") by

and among Debtor, Seller, Buyer and First American Title Company of New York (the "Escrow

Agent"), dated November [___], 2009; and the Court having jurisdiction to consider the requested

relief; and the Court having determined that the relief requested is in the best interests of the

Debtors, their estates, creditors and all parties-in-interest in the above-captioned chapter 11 cases

(the "Chapter 11 Cases"); and it appearing that no other or further notice need be given; and after

due deliberation and sufficient cause therefore, it is hereby,

ORDERED that the relief requested in the Motion is granted; and it is further

ORDERED that all objections, if any, to the Motion or the relief requested therein, that have not been withdrawn, waived or settled, and all reservations of rights included therein, are overruled; and it is further

ORDERED that the Debtors, Seller, Buyer, Sunset are authorized to enter into the Purchase Agreement and accompanying Escrow Agreement; and it is further

ORDERED that the Debtor, Seller, Buyer, Sunset and the Escrow Agent are authorized to take all actions necessary to consummate the transactions contemplated under the Purchase Agreement and accompanying Escrow Agreement

Dated: November [___], 2009
Brooklyn, New York

_____
HONORABLE CARLA E. CRAIG
CHIEF UNITED STATES BANKRUPTCY JUDGE