**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, New York 10020-1104
Tel: (212) 335-4500
Fax: (212) 335-4501
Timothy W. Walsh
Jeremy R. Johnson

Attorneys for Debtors and Debtors in Possession

Hearing Date: To Be Determined
Time: To Be Determined

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X
In re:                                                      :     Chapter 11
                                                            :
VICTORY MEMORIAL HOSPITAL, et al.,                          :     Case Nos.:   06-44387-CEC
                                                            :                  06-44388-CEC
                                                            :                  06-44389-CEC
                    Debtors.                                :
------------------------------------------------------------X     (Jointly Administered)

### MOTION FOR ENTRY OF AN ORDER (I) COMPELLING THE TURNOVER OF PROPERTY OF THE ESTATE, (II) PERMITTING THE DEBTORS TO IMMEDIATELY SECURE SUCH PROPERTY, (III) DIRECTING THE UNITED STATES MARSHAL TO AID THE DEBTORS IN RETRIEVING PROPERTY OF THE ESTATE, AND (IV) AWARDING THE DEBTORS DAMAGES AND IMPOSING SANCTIONS

Victory Memorial Hospital ("Victory Hospital" or the "Debtor"), one of the above-captioned debtors and debtors in possession (the "Debtors"), by its attorneys, DLA Piper LLP (US), files this motion (the "Motion"),[1] pursuant to sections 105, 541, 542(a) and 362(k)(1) of the United States Code (the "Bankruptcy Code"), for an order: (i) compelling the State University of New York–Downstate Medical Center ("SUNY Downstate") and Sunset LG Realty LLC ("Sunset") to turnover property of the estate to the Debtors; (ii) permitting the Debtors to immediately secure such property; (iii) providing for the assistance of the United

---

[1] This Motion is further supported by the Affidavit of Vincent Calamia, M.D. In Support of Debtor's Motion Seeking, Inter Alia, Turnover of Property of the Estate (the "Calamia Affidavit") and Declaration of Timothy Walsh In Support of Debtor's Motion Seeking, Inter Alia, Turnover of Property of the Estate (the "Walsh Declaration"). A copy of the Calamia Affidavit is attached hereto as Exhibit A and a copy of the Walsh Declaration is attached hereto as Exhibit B.

States Marshal, if necessary, for same; and (iv) awarding the Debtors damages and imposing sanctions. In support thereof, the Debtor respectfully represents as follows:

## PRELIMINARY STATEMENT

This Motion seeks an order from this Court directing SUNY Downstate and Sunset to turn over equipment owned by the Debtors that is currently located on Sunset's property in a portion of the Premises (as defined below) controlled by Sunset and SUNY Downstate. Notwithstanding repeated attempts by the Debtors to obtain possession of the Equipment (as defined below), SUNY Downstate and Sunset have unlawfully refused to turnover of the Equipment. Sunset's motive is devious but simple. The Debtor is trying to sell the Equipment and Sunset is attempting to get the Equipment at a steeply discounted price by forcing the Debtors to litigate to obtain the Equipment. SUNY Downstate's motive is simple—they need the equipment to run their operation.[2] Unfortunately, Sunset never purchased the Equipment and now Sunset is trying to extract a lower price for the Equipment by refusing to turn it over and forcing the Debtors to litigate.

The Debtors have made several requests for turnover of, or access in order to retrieve, among other things, certain equipment located in the operating room and endoscopy units (the "Equipment")[3] of the premises located at 699 92nd Street, Brooklyn, New York 11228 (the "Premises"). However, notwithstanding numerous assurances from Sunset and SUNY Downstate to the contrary, the Debtors and their representatives have been prevented from retrieving the Equipment.

No legal basis exists for this unauthorized exercise of dominion and control over the

---

[2] See, e.g., Crystal E-Mail, attached to the Walsh Declaration as Exhibit 6.
[3] A list of the Equipment is attached hereto as Exhibit C. The Debtors respectfully reserve the right to modify or supplement this list upon, among other things, gaining access to the operating room and endoscopy unit.

Equipment. The underlying agreements among the parties are unambiguous and clearly establish that the Debtors own the Equipment; a fact that up until two (2) weeks ago was undisputed by Sunset. Likewise, the Debtors have not consented to SUNY Downstate's continued use of the Equipment. The Debtors' prior consent to such use expired in September 1, 2009. The new arguments[4] presented by Sunset are entirely inconsistent with the parties' previous conduct and were recently set forth as part of an effort to delay turnover of the Equipment. Sunset's abrupt about-face is a thinly veiled attempt to obtain the Equipment at a lower cost.

This is made abundantly clear by the conduct of Sunset and SUNY Downstate. Specifically, during numerous conference calls, meetings, emails and previous discussions with the Debtors, Sunset, SUNY Downstate or their respective counsel: (i) made offers to purchase certain Equipment for $50,000; (ii) relied upon the Asset Purchase Agreement for clarification of parties ownership rights with respect to the Excluded Assets (as defined below), including the Equipment; (iii) requested that the Debtors remove the Excluded Assets, including the Equipment, from the Premises; and (iv) assured Debtors' counsel, albeit inaccurately, that they would not obstruct the Debtors' efforts to retrieve the Excluded Assets, including the Equipment, from the Premises. See Walsh Declaration, ¶12; Calamia Affidavit, ¶18.

The failure of Sunset and SUNY Downstate to turn over the Equipment and refusal to permit its retrieval, constitute a willful violation of Bankruptcy Code section 362(a) entitling the

---

[4] On January 4, 2010, Sunset filed a complaint (the "Complaint") alleging, among other things, that under the terms of previous agreements by and among the Debtors, Sunset and SUNY Downstate: (i) the Debtors consented to SUNY Downstate's unfettered use of the Equipment; and (ii) the parties intended for Sunset's purchase of the Equipment. (Adv. Pro. No. 1-10-01002). The Debtors believe that the claims and allegations with respect to Sunset and SUNY Downstate's interests in and to the Equipment are entirely baseless and constitute frivolous and fraudulent claims pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure. Accordingly, on January 5, 2010, the Debtors provided notice of their intention to file a motion for sanctions if Sunset does not withdraw each of the frivolous and fraudulent claims set forth in the Complaint. See Rule 11 Letter attached to the Walsh Declaration as Exhibit 11. Although certain assertions made by Sunset in the Complaint are addressed in this Motion, the Debtors expressly reserve the right to raise any and all available defenses to these claims by separate motion.

Debtors to damages pursuant to Bankruptcy Code section 362(k)(1) and support imposing sanctions against SUNY Downstate and Sunset, pursuant to Bankruptcy Code section 105.

The Debtors and their representatives have spent significant time, energy and resources arranging for the retrieval, storage and sale of the Excluded Assets at auction. Additionally, SUNY Downstate's use of the Equipment to perform medical procedures exposes the Debtors to significant potential liability and litigation risk. Thus, the non-Debtors' unlawful exercise of dominion and control over the Equipment has and continues to cause significant and irreparable harm to the Debtors, their estates and creditors.

Accordingly, the Debtor seeks an order: (i) compelling SUNY Downstate and Sunset to turnover the Equipment; (ii) permitting the Debtors to immediately enter onto the Premises to secure the Equipment; (iii) providing for the assistance of the United States Marshal, if necessary, for same; and (iv) awarding the Debtors damages and imposing sanctions on Sunset and SUNY Downstate for their willful violation of Bankruptcy Code section 362(a).

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion under 28 U.S.C. section 1334. Venue of these cases and this Motion in this district is proper pursuant to 28 U.S.C. sections 1408 and 1409. This is a core proceeding within the meaning of 28 U.S.C. section 157(b)(2). The statutory predicates for the relief requested herein are Bankruptcy Code sections 105(a), 362(k)(1), 541 and 542(a).

## BACKGROUND

2. On November 15, 2006 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

3. Victory Hospital remains in possession of its assets as a debtor in possession,

pursuant to Bankruptcy Code sections 1107 and 1108.

4. On November 28, 2006, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Committee"), pursuant to section 1102 of the Bankruptcy Code.

5. No trustee or examiner has been appointed in these cases.

**Background Related to the Sale of Assets to Sunset**

6. On or around April 18, 2008, Victory Hospital and its affiliates agreed to sell substantially all of the Debtors' assets to Sunset pursuant to that certain Asset Purchase Agreement, dated April 18, 2008 (as amended to date, the "Asset Purchase Agreement"). See Calamia Affidavit, ¶4. On June 30, 2008 the Court entered its order (the "Sale Order") approving the Asset Purchase Agreement. (Docket No. 733).

7. Pursuant to the terms of the Asset Purchase Agreement, however, the Debtor retained ownership of certain assets, most notably, all personal property, including the Equipment. See Calamia Affidavit, ¶ 5.

8. The Debtors then waited several months for Sunset to obtain appropriate regulatory approvals. See Calamia Affidavit, ¶ 6. During this time period, the parties to the Asset Purchase Agreement entered into several amendments to the Asset Purchase Agreement related to the extension of certain deadlines. Id.

9. On or around April 2, 2009, Sunset approached the Debtors with respect to certain substantive amendments to the Asset Purchase Agreement related to the acquisition of certain equipment not contemplated by the Asset Purchase Agreement. See Calamia Affidavit, ¶ 7.

10. After extensive negotiations, Victory Hospital and Sunset entered into that certain Fourth Amendment and Amendment No. 4 to the Asset Purchase Agreement (the "Fourth

Amendment") whereby, among other things, Sunset and Victory Hospital specifically identified additional equipment as either purchased under (the "Purchased Assets") or excluded from (the "Excluded Assets") the transaction under the Asset Purchase Agreement. See Calamia Affidavit, ¶ 8. Sunset paid the Debtors' estates an additional $100,000 for the additional Purchased Assets. Id.

11. Annex A to the Fourth Amendment ("Annex A") identified additional Purchased Assets under the Asset Purchase Agreement and Annex B to the Fourth Amendment ("Annex B") identified additional Excluded Assets. See Calamia Affidavit, ¶ 9. Pursuant to Annex B, any assets associated with or located in the endoscopy unit or operating room not identified on Annex A were deemed Excluded Assets. Id.; Annex B (identifying the Excluded Assets as including "all associated equipment (except to the extent any asset is listed on [Annex A]" in, among other areas, the operating room and endoscopy unit).

12. None of the Equipment was listed on Annex A and, therefore, the Equipment constitutes Excluded Assets that were not sold to Sunset under the Asset Purchase Agreement. See Calamia Affidavit, ¶10; Annex A; Annex B.

13. The sale transaction contemplated by the Asset Purchase Agreement closed on September 1, 2009 (the "Closing Date"). See Calamia Affidavit, ¶11.

14. In sum, neither the Asset Purchase Agreement nor the Fourth Amendment included Sunset's purchase of the Equipment. Sunset's current frivolous position that it owns the Equipment is devoid of any factual support and contrary to the evidence that shows Sunset has been negotiating for the last two (2) months for the purchase of the Equipment. It was not until those negotiations ceased and the Debtors said they wanted to retrieve the Equipment that Sunset took the sanctionable position that they own the Equipment.

### Background Related to the Excluded Assets

15. After the Closing Date, the Debtors attempted to engage in extensive good-faith negotiations with Sunset for the purchase of the Excluded Assets. See Walsh Declaration, ¶7. Throughout the course of those two (2) month long negotiations, Sunset and SUNY Downstate consistently acknowledged the Debtors' ownership of the Excluded Assets under the Asset Purchase Agreement and the Fourth Amendment, including the Equipment. Id.

16. Among other things, Sunset, SUNY Downstate or their respective counsel: (i) made offers to purchase certain Equipment for $50,000; (ii) relied upon the Asset Purchase Agreement for clarification of parties ownership rights with respect to the Excluded Assets, including the Equipment; (iii) requested that the Debtors remove the Excluded Assets, including the Equipment, from the Premises; and (iv) assured Debtors' counsel, albeit inaccurately, that they would not obstruct the Debtors' efforts to retrieve the Excluded Assets, including the Equipment, from the Premises. See Walsh Declaration, ¶17; Calamia Affidavit, ¶18.

17. During the course of these negotiations, the Debtors were informed by Great American Group, LLC ("Great American"), the party retained to liquidate the Debtors' personal property, including the Excluded Assets, that it could obtain up to $400,000 for the Equipment at auction. See Walsh Declaration, ¶9. Due to the parties' inability to agree on a purchase price for the Equipment, negotiations consisting of numerous meetings, conference calls, emails and letters between the Debtors and Sunset on this issue ceased on or around December 23, 2009. Id.

18. Accordingly, on December 23, 2009, the Debtors provided an initial notice to Sunset and SUNY Downstate (the "First Notice") that Great American would seek entry onto the Premises on December 28, 2009 to retrieve the Excluded Assets and specifically advised SUNY Downstate to not schedule any procedures for that date in order to permit removal of the

Excluded Assets. See Walsh Declaration, ¶10. However, the Debtors and Great American were denied access to the areas of the Premises containing the Equipment on December 28, 2009. See Calamia Affidavit, ¶18.

19. Subsequently, on or around December 29, 2009, counsel for Sunset represented to counsel for the Debtors that SUNY Downstate and Sunset were working with employees of the Debtors to arrange for a process whereby the Excluded Assets, including the Equipment, would be removed from the Premises and that there would be no further interference with such efforts. See Walsh Declaration, ¶11.

20. Accordingly, on December 30, 2009, the Debtors again provided notice (the "Second Notice") to SUNY Downstate and Sunset that Great American would require access to the Premises on January 4, 2010 in order to retrieve the Excluded Assets. See Walsh Declaration, ¶12. That same day, however, Sunset notified the Debtors that Great American would not be permitted to retrieve the Equipment. Id.

21. Additionally, that same day, SUNY Downstate notified the Debtors that, despite the First Notice requesting that no additional procedures requiring the use of the Excluded Assets be scheduled, the Debtors could not retrieve their property on January 4, 2010 because SUNY Downstate had several procedures scheduled for the week of January 4, 2010 involving the Equipment. See Walsh Declaration, ¶13.

22. On January 4, 2010, in order to accommodate SUNY Downstate's purported need for the Equipment, the Debtors provided SUNY Downstate with official notice (the "Third Notice") that the Debtors would postpone attempts to retrieve the Equipment previously scheduled for that same day until January 5, 2009, unless an agreement with respect to purchase of the Equipment could be reached with Sunset. See Walsh Declaration, ¶14.

23. Later that day, SUNY Downstate notified the Debtors that it would prevent the Debtors or Great American from retrieving the Equipment, but would allow the Debtors to retrieve certain other Excluded Assets on the Premises not being used by SUNY Downstate. See Walsh Declaration, ¶15.

24. Notably, in a bad-faith attempt to delay the Debtors from retrieving the Equipment, on or around January 3, 2010, Sunset filed the Complaint with this Court seeking, among other things, declaratory relief that: (i) the Debtors consented to SUNY Downstate's unfettered use of certain equipment of the Debtors utilized by SUNY Downstate currently located in the operating room and endoscopy unit on the Premises; and (ii) Sunset purchased all equipment utilized by SUNY Downstate currently located in the operating room and endoscopy unit on the Premises. (Adv. Pro. No. 1-10-01002-cec).

25. The Debtors believe that the claims and allegations with respect to Sunset and SUNY Downstate's interests in and to the Equipment are entirely baseless and constitute frivolous and fraudulent claims pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure. Accordingly, on January 5, 2010, the Debtors provided notice of their intention to file a motion for sanctions if Sunset does not withdraw each of the frivolous and fraudulent claims set forth in the Complaint. See Walsh Declaration, ¶17; Rule 11 Letter.

26. To date, the Debtors have been unable to retrieve the Equipment from the Premises and neither SUNY Downstate nor Sunset has provided alternative dates for retrieval of the Equipment from the Premises. See Walsh Declaration, ¶18.

27. The Debtors and Great American have expended significant time, energy and estate resources in preparing for and making arrangements to retrieve the Equipment from the Premises and remain willing and able to immediately remove the Equipment and commence with

an auction of same as soon as reasonably practicable.  See Calamia Affidavit, ¶19.

**SUNY Downstate was Only Permitted to Use the Equipment Through September 1, 2009**

28. In or around July of 2008, the Debtors and SUNY Downstate entered into that certain Lease #L120018 between Victory Memorial and SUNY Downstate (the "Lease") to allow SUNY Downstate to move into certain unused hospital space, including the operating rooms. See Calamia Affidavit, ¶ 12.  This Court's order approving the Lease was entered on July 24, 2008.

29. On or around August 28, 2008, in connection with the Lease, the Debtors consented to SUNY Downstate's use of certain of the Equipment located in the operating room and endoscopy unit of the Premises "during the term of the Lease." See Calamia Affidavit, ¶13.

30. By its terms, the Lease expires the earlier of: (x) after a period of five (5) years; or (y) the earlier of the date which is thirty (30) days after SUNY Downstate receives notice from Victory Hospital that a closing of an asset purchase agreement involving the Premises will occur or the date upon which the term of the Lease is canceled or terminated pursuant to its terms or applicable law.  See Calamia Affidavit, ¶14; Lease, ¶10.

31. On several occasions leading up to and directly after the Closing Date, representatives of the Debtors had discussions with representatives of SUNY Downstate, including, but not limited to, David Connelly, in which SUNY Downstate was provided with notice of the Closing Date. See Calamia Affidavit, ¶15.  During these same conversations, SUNY Downstate was given notice that the Debtors would cease invoicing SUNY Downstate for rent after August of 2009.  See Calamia Affidavit, ¶16.

32. Accordingly, the Debtors final invoice for rent under the Lease relates to the month of August 2009. Id. Upon information and belief, SUNY Downstate subsequently entered into a new lease with Sunset and started paying rent for occupancy of the Premises to Sunset. Id.

33. Notwithstanding the expiration of the Lease and the revocation of permission to use the Equipment, SUNY Downstate has refused to turnover the Equipment and has refused the Debtors access to retrieve the Equipment. See Calamia Affidavit, ¶17. SUNY Downstate continues to use the Debtors' Excluded Assets located in the operating room and endoscopy unit of the Premises to administer medical procedures, including certain items of Equipment. Id.

**RELIEF REQUESTED**

34. By this Motion, the Debtor seeks entry of an order: (i) compelling SUNY Downstate and Sunset to turnover the Equipment to the Debtors; (ii) permitting the Debtors to immediately enter onto the Premises to secure the Equipment; (iii) providing for the assistance of the United States Marshal, if necessary, for same; and (iv) awarding the Debtors damages and imposing sanctions on Sunset and SUNY Downstate for their willful violation of Bankruptcy Code section 362(a), pursuant to Bankruptcy Code section 105.

**BASIS FOR RELIEF**

35. Pursuant to Bankruptcy Code section 362(a), upon the Petition Date, an automatic stay was imposed on any actions to exercise dominion or control over property of the Debtors' estates. See 11 U.S.C. §362(a). Specifically, Bankruptcy Code section 362(a)(3) prohibits third parties, such as the ones here, from taking any acts to obtain possession of or exercise control over property of the Debtors' estates. 11 U.S.C. § 362(a)(3).

36. The terms of the Asset Purchase Agreement are clear and unambiguous - the Equipment was not purchased by Sunset and, therefore, remains property of the Debtors' estates.

See 11 U.S.C. § 541; Annex A; Annex B; Calamia Affidavit, ¶¶8-11. Likewise, neither the terms of the expired Lease with SUNY Downstate nor the Debtors' consent to use of certain equipment during the term of the Lease in any way support a finding that the Debtors irrevocably consented to SUNY Downstate's continued use of the Equipment after expiration of the Lease.

37. Additionally, Sunset and SUNY Downstate's own actions further reveal there is no reasonable basis for Sunset or SUNY Downstate to assert an ownership interest in or right of access to the Equipment over the Debtors' objections. As outlined above, on numerous occasions, Sunset, SUNY Downstate and/or their respective counsel: (i) made offers to purchase certain Equipment for $50,000; (ii) relied upon the Asset Purchase Agreement for clarification of parties ownership rights with respect to the Excluded Assets, including the Equipment; (iii) requested that the Debtors remove the Excluded Assets, including the Equipment, from the Premises; and (iv) assured Debtors' counsel, albeit inaccurately, that they would not obstruct the Debtors' efforts to retrieve the Excluded Assets, including the Equipment, from the Premises. See Walsh Declaration, ¶12; Calamia Affidavit, ¶18.

38. Nor can there be any question that the Debtors provided sufficient notice of their intentions to retrieve the Excluded Assets. By virtue of, among other things, the First Notice, Second Notice and Third Notice, numerous conference calls and e-mails, Sunset and SUNY Downstate were given prior notice that the Debtors intended to retrieve the Excluded Assets from the Premises. See Walsh Declaration, ¶¶7-15. In fact, in response to such notice, the Debtors were assured on more than one occasion that there would be no attempts to obstruct recovery of the Excluded Assets. Id.

39. However, despite having been provided adequate notice and making statements to the contrary, SUNY Downstate and Sunset have refused to provide the Debtors and Great

American access to the Premises to retrieve the Equipment and have refused to turnover same.

40. The Equipment held by Sunset and SUNY Downstate is valuable property of the Debtors' bankruptcy estates and is necessary for, among other things, an orderly winding down of these chapter 11 cases and distributions to creditors.

41. Thus, pursuant to Bankruptcy Code section 542(a), the Equipment must be turned over to the Debtors and, by failing to do so over the Debtors' objections, SUNY Downstate and Sunset have and continue to improperly exercise dominion and control over the Equipment in violation of, among other things, Bankruptcy Code sections 362(a) and 542(a). See 11 U.S.C. § 542(a)(requiring delivery of valuable property of the estate by non-debtors); 11 U.S.C. § 362(a)(3) (prohibiting non-debtors from acts to obtain or exercise control over property of a debtor's estate).

42. The Debtors and Great American have contributed significant time, energy and resources to retrieving and liquidating the Excluded Assets, including the Equipment, in a manner consistent with the parties' obligations under the Asset Purchase Agreement and needs of SUNY Downstate and Sunset. Specifically, the Debtors have gone to great lengths to try and ensure that all parties were on notice and would not be unduly burdened by the retrieval of the Equipment. Likewise, Great American has devoted significant time, energy and resources to arranging for the retrieval, removal and storage of the Excluded Assets. Additionally, given the sensitive nature of the Equipment and the fact that SUNY Downstate uses the Equipment to perform medical procedures, the continued use of the Equipment exposes the Debtors to significant potential liability and litigation risks.

43. Thus, the Debtors have suffered and continue to suffer damages as a result of the inability to gain access to and retrieve the Equipment, including, but not limited to, the Debtors'

attorneys' fees in connection with this Motion, the costs associated with arranging for retrieval, removal and storage of the Excluded Assets and any damage to or diminution in value of the Equipment resulting from its unlawful use, control or retention by Sunset and SUNY Downstate.

44. Based on Sunset's conduct in dealing with the Debtors, the Debtor respectfully submit that the relief sought in this Motion is crucial to protecting the interests of the Debtors' estates, in the Equipment.

## WAIVER OF MEMORANDUM OF LAW

45. Based upon the authority provided herein, the Debtor respectfully requests that the Court waive the requirement that the Debtor file a memorandum of law in support of this Motion pursuant to Local Bankruptcy Rule for the Eastern District of New York 9013-1(b).

## NOTICE

46. Notice will be provided in a manner consistent with the contemporaneously filed proposed order to show cause, a draft of which is attached as Exhibit D.

## NO PRIOR REQUEST

47. No prior application for the relief requested herein has been made to this or any other court.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order: (a) (i) compelling SUNY Downstate and Sunset to turnover the Equipment; (ii) permitting the Debtors to immediately enter onto the Premises to secure the Equipment; (iii) providing for the assistance of the United States Marshal, if necessary, for same; and (iv) awarding the Debtors damages and imposing sanctions on Sunset and SUNY Downstate for the willful violation of Bankruptcy Code section 362(a); and (b) granting such other relief as is just and proper.

Dated: January 11, 2010
New York, New York

**DLA PIPER LLP (US)**

/s/ Timothy W. Walsh
Timothy W. Walsh
Jeremy R. Johnson
1251 Avenue of the Americas
New York, NY 10020-1104

Attorneys for the Debtors and Debtors in Possession