UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:                                                                                  Case No. 06-44387 (CEC)

                                                                                         Chapter 11

Victory Memorial Hospital,

                           Debtor.
-----------------------------------------------------------x

## DECISION

Appearances:

| | |
|---|---|
| Mark I. Goldstein | Martin G. Bunin, Esq. |
| Goldstein & Goldstein, P.C. | Craig E. Freeman, Esq. |
| 26 Court Street - 20th Floor | Alston & Bird LLP |
| Brooklyn, NY 11242-0103 | 90 Park Avenue |
| Counsel to Dhurta Kadiu, | New York, NY 10016 |
| as Administratrix of the Estate of | Counsel to the Official Committee of |
| Robert Kadiu | Unsecured Creditors |

Timothy W. Walsh, Esq.
Jeremy R. Johnson, Esq.
DLA Piper US LLP
1251 Avenue of the Americas
New York, NY 10020-1104
Counsel to the Debtor

                                          CARLA E. CRAIG
                              Chief United States Bankruptcy Judge

This matter comes before the Court on motion of Dhurta Kadiu ("Kadiu"), as Administratrix of the Estate of Robert Kadiu, for leave under Bankruptcy Rule 9006(b) to file a late proof of claim against Victory Memorial Hospital. Kadiu argues that the failure to timely file her claim was due to excusable neglect. Victory Memorial Hospital (the "Debtor") and the Official Committee of Unsecured Creditors (the "Committee") oppose the motion. For the following reasons, the motion is denied.

## Jurisdiction

This Court has jurisdiction of this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B) and 1334 and the Eastern District of New York standing order of reference dated August 28, 1986. This decision constitutes the Court's findings of fact and conclusion of law to the extent required by the Federal Rule of Bankruptcy Procedure 7052.

## Background

The following relevant facts are undisputed.

On November 15, 2006, the Debtor, Victory Memorial Ambulance Services, Inc., and Victory Memorial Pharmacy, Inc., filed voluntary petitions of relief under chapter 11 of the Bankruptcy Code.[1]

On May 31, 2007, the Court issued an order establishing July 20, 2007 as the deadline for filing proofs of claim (the "Bar Date"). Notice of the Bar Date was mailed to known creditors, and was published in *The Daily News* on June 20, 2007 and *The Brooklyn Paper* on June 23, 2007. Aff. of Publication of Notice of Deadline Requiring Filing of Proofs of Claim, ECF No. 270. Notice of the Bar Date was not mailed to Kadiu.

---

[1] The bankruptcy cases of Victory Memorial Ambulance Services and Victory Memorial Pharmacy were dismissed on May 19, 2010. (ECF Nos. 1358 and 1359.)

On May 2, 2008, approximately 11 months after the Bar Date, Kadiu commenced an action against Victory Memorial Hospital in the Supreme Court for the State of New York asserting a wrongful death claim arising from medical care rendered between April 19, 2006 and May 4, 2006.

On July 17, 2009, Kadiu filed this motion seeking permission to file a proof of claim for $4.9 million against "Victory Memorial Hospital, et al."

## Legal Standard

Bankruptcy Rule 3003(c)(3) provides that a court "shall fix" a date by which proofs of claim must be filed in a Chapter 11 case, commonly known as a bar date. Fed. R. Bankr. P. 3003(c)(3). A bar date serves "the important purpose of enabling the parties to a bankruptcy case to identify with reasonable promptness the identity of those making claims against the bankruptcy estate, and the general amount of the claims, a necessary step in achieving the goal of successful reorganization." First Fidelity Bank, N.A., N.J. v. Hooker Invs., Inc. (In re Hooker Invs., Inc.), 937 F.2d 833, 840 (2d Cir. 1991). It is "akin to a statute of limitations, and must be strictly observed." In re Keene Corp., 188 B.R. 903, 907 (Bankr. S.D.N.Y. 1995).

However, a party may be permitted to file a late proof of claim and have it deemed timely filed. Bankruptcy Rule 9006(b)(1), provides, in pertinent part: "[W]hen an act is required or allowed to be done at or within a specified period . . . by order of court, the court for cause shown may at any time in its discretion … permit the act to be done where the failure to act was the result of excusable neglect." The burden to establish excusable neglect lies with the party seeking to file the late claim. Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.), 419 F.3d 115, 121 (2d Cir. 2005).

The Supreme Court set out the parameters of excusable neglect in <u>Pioneer Investment Services Co. v. Brunswick Associates L.P.</u>, 507 U.S. 380 (1993).  In that case, the Court held that excusable neglect is an "elastic concept," and is not limited to situations where the failure to timely file was due to circumstances beyond the filer's control.  <u>Pioneer</u>, 507 U.S. at 392.  Rather, excusable neglect may encompass situations involving "inadvertence, mistake or carelessness."  <u>Id.</u> at 388.  However, ignorance of the rules does not usually constitute excusable neglect.  <u>Id.</u> at 392.

The determination of whether neglect is "excusable" is an equitable one.  <u>Id.</u> at 395.  In reaching its decision, a court will consider "all relevant circumstances surrounding the party's omission," including "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."  <u>Id.</u>

In this circuit, the excuse given for the late filing is given the more weight than the other <u>Pioneer</u> factors.  <u>Enron</u>, 419 F.3d at 123 (<u>citing</u> <u>Silivanch v. Celebrity Cruises, Inc.</u>, 333 F.3d 355, 366 (2d Cir. 2003)); <u>Mich. Self-Insurers' Sec. Fund v. DPH Holdings Corp. (In re DPH Holdings Corp.)</u>, No. 05-44481, Adv. Pro. No. 10 Civ. 646 (SAS), 2010 WL 2633698, at *3 (S.D.N.Y. June 30, 2010).  Indeed, the other factors are relevant "only in close cases."  <u>Williams v. KFC Nat'l Mgmt. Co.</u>, 391 F.3d 411, 416 (2d Cir. 2004) (discussing excusable neglect in the context of Fed. R. App. P. 4(a)).  The Second Circuit has taken a "hard line" approach in applying the <u>Pioneer</u> standard.  <u>Enron</u>, 419 F.3d at 122; <u>Silivanch</u>, 333 F.3d at 368.  "[T]he equities will rarely if ever favor a party who 'fail[s] to follow the clear dictates of a court rule,' and . . . where 'the rule is entirely clear, . . . a party claiming excusable neglect will, in the ordinary course, lose under the <u>Pioneer</u> test.'"  <u>Silivanch</u>, 333 F.3d at 366-367 (<u>quoting</u> <u>Canfield</u>

v. Van Atta Buick/GMC Truck, Inc., 127 F.3d 248, 250-251 (2d Cir. 1997)) (alteration in original). "If a clear deadline is missed due to a law office failure, including inattention or lack of oversight, an extension is not justified." In re Musicland Holding Corp., 356 B.R. 603, 608 (Bankr. S.D.N.Y. 2006). See also Pioneer, 507 U.S. at 398 (giving "little weight to the fact that the counsel was experiencing upheaval in his law practice at the time of the bar date"); Canfield, 127 F.3d at 251; In re Dana Corp., No. 06-10354(BRL), 2008 WL 2885901, at *5 (Bankr. S.D.N.Y. July 23, 2008) ("[O]ffice mix-ups, clerical mistakes, and failure to follow office procedures do not generally constitute excusable neglect.").

## Discussion

Kadiu argues that the untimely filing of her proof of claim is due to excusable neglect because she was not given notice of the Bar Date until it had already passed. She asserts that she requested medical records from the Debtor, and that based on this request, the Debtor should have known that she was a creditor. Kadiu argues that, as a known creditor, she was entitled to actual notice of the Bar Date. The Debtor and the Committee contend that Kadiu was an unknown creditor when notice of the Bar Date was given, and as such, she was only entitled to receive constructive notice of the Bar Date.

"The Due Process Clause in the Fifth Amendment to the United States Constitution requires that creditors receive notice of the filing of the bankruptcy case and the bar date in order to afford creditors the opportunity to file a proof of claim." In re Enron Corp., No. 01-16034 (AJG), 2006 WL 898031, at *4 (Bankr. S.D.N.Y. Mar. 29, 2006.) Whether notice is adequate depends on whether the creditor is known or unknown to the debtor. In re XO Commc'ns, Inc., 301 B.R. 782, 792 (Bankr. S.D.N.Y. 2003). "An 'unknown' creditor is a claimant whose identity or claim is not 'reasonably ascertainable' or is merely 'conceivable, conjectural or speculative.'"

Id. at 793 (quoting In re Thomson McKinnon Sec., Inc., 130 B.R. 717, 720 (Bankr. S.D.N.Y. 1991)). "[A] 'known' creditor includes both a claimant whose identity is actually known to the debtor or a claimant whose identity is 'reasonably ascertainable' by the debtor." Id. A creditor is "reasonably ascertainable" if, after diligent review of its books and records, the debtor could uncover the identity of the creditor. Id. at 793-794. Constructive notice of a bar date is generally sufficient if the creditor is unknown to the debtor. Id. at 792. On the other hand, all known creditors must be given actual notice of the bar date. Id.; Fed R. Bankr. P. 2002(a)(7).

  Here, Kadiu was an unknown creditor at the time notice of the Bar Date was given. She did not commence an action against the Debtor until approximately 11 months after the Bar Date. Kadiu's unsubstantiated assertion that she requested medical records from the Debtor approximately a year prior to the Bar Date does not lead to the conclusion that she was a known creditor before she commenced her action. Records may be requested for various reasons, for example, to maintain a personal medical file. Moreover, it is possible that a patient may request records in order to determine whether to file a claim, and after review of the records, decide not to do so. At the time notice of the Bar Date was given, Kadiu's claim was "merely conceivable, conjectural or speculative," which the Debtor would not have uncovered after diligent review of its books and records. As such, Kadiu was only entitled to constructive notice of the Bar Date, which she received when the Debtor published notice in *The Daily News* on June 20, 2007 and in *The Brooklyn Paper* on June 23, 2007. Therefore, the fact that Kadiu was not given actual notice of the Bar Date is not a valid reason for the untimely filing of her claim. See Castleman v. Liquidating Tr., No. 6:06-CV-1077 (LEK), 2007 WL 2492792, at *10 (N.D.N.Y. Aug. 28, 2007) (lack of actual notice to unknown creditor was not a basis for excusable neglect); XO Commc'ns,

301 B.R. at 798 (an unknown creditor's reason for delay based on lack of actual notice was "without merit").

Kadiu further argues that, based upon the "history and practice of debtors," the Debtor should have forwarded a proof of claim form once she became a known creditor of the estate, i.e. upon the commencement of her action in state court. However, Kadiu cites to no authority to support a conclusion that the Debtor had any obligation to provide the proof of claim form to Kadiu after the Bar Date expired.

Nor has Kadiu provided a sufficient reason for her failure to bring this motion within a reasonable period of time after receiving actual notice of the bankruptcy filing and expiration of the Bar Date. To determine whether a delay is substantial, a court will consider whether the delay will "'disrupt the judicial administration of the case.'" Enron, 419 F.3d at 128 (quoting In re Infiltrator Sys., Inc., 241 B.R. 278, 281 (Bankr. D. Conn. 1999)). Courts will also consider whether the plan of reorganization has already been filed or confirmed. Id. (citing Infiltrator Sys., 241 B.R. at 281)). Ultimately, however, a court must consider the delay "in the context of the proceeding as a whole." Id. "[T]he evaluation of lateness should, at least to some extent, also take into account the creditor's explanation for the delay." Id. at 129.

Almost two years after expiration of the Bar Date, Kadiu seeks relief pursuant to Bankruptcy Rule 9006(b)(1). Considering this delay "in the context of the proceeding as a whole," Id. at 128, this Court concludes that the delay is substantial. The Debtor's second amended plan was filed on July 9, 2008, a year before this motion was filed. The Debtor formulated the plan and filed the disclosure statement with the universe of known claims in mind. An order confirming the plan was issued on February 20, 2009, approximately five months before Kadiu filed this motion.

Notwithstanding a long delay, relief pursuant to Bankruptcy Rule 9006(b)(1) may be granted if there is a strong reason for the delay. Id. at 129 ("[A] long delay (presumably more likely in most circumstances to occasion more disruption) with a strong explanation might be more acceptable than a short delay with a weak explanation – even if both explanations are credible."). Although Kadiu's motion does not clearly state when she received actual notice of the Debtor's bankruptcy filing and of the Bar Date, in the ordinary course, the Debtor, upon being served with Kadiu's wrongful death action on or about May 2, 2008 (more than one year before this motion was filed), would have notified Kadiu's counsel that the Debtor was in bankruptcy and that the action was stayed pursuant to § 362(a) of the Bankruptcy Code. Kadiu implicitly concedes that this occurred and blames the subsequent delay of more than a year in bringing this matter before the Court on her counsel's misplacement of her file during the medical leave of absence of the associate handling her case. The Committee and the Debtor argue that this excuse does not justify relief under Bankruptcy Rule 9006(b)(1).

It is well established that law office failure, without more, does not constitute excusable neglect under Bankruptcy Rule 9006(b)(1). See Pioneer, 507 U.S. at 398 ("[W]e give little weight to the fact that counsel was experiencing upheaval in his law practice at the time of the bar date."); Enron, 419 F.3d at 126 (noting movant's weak argument based upon counsel's inadvertence); Canfield, 127 F.3d at 251 ("Counsel's failure to read and obey an unambiguous court rule-especially when the opposing party told him what the rule said-was not excusable. And the fact that counsel was preoccupied with his bid for public office does not alter this conclusion."); Dana, 2008 WL 2885901, at *5 ("[O]ffice mix-ups, clerical mistakes, and failure to follow office procedures do not generally constitute excusable neglect."); Musicland Holding, 356 B.R. at 609 (finding that "attorney inattention and lack of supervision" did not constitute

excusable neglect). This is so because "clients must be held accountable for the acts and omissions of their attorneys." Pioneer, 507 U.S. at 396. As explained by the Supreme Court:

> [The movant] voluntarily chose this attorney as [her] representative in the action, and [she] cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of [her] lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney."

Id. at 397 (quoting Link v. Wabash R.R. Co., 370 U.S. 626, 633-634 (1962)).

A law firm should have procedures to track and reassign an associate's caseload upon a medical leave of absence. No valid reason was provided for the firm's failure to ensure that all of the associate's cases were reassigned, monitored, and pursued. The misplacement of Kadiu's file is an insufficient excuse for the delay in bringing this motion and for her untimely claim, and does not warrant relief under Bankruptcy Rule 9006(b)(1).

Kadiu relies on In re Enron Creditors Recovery Corp., No. 01-16034 (AJG), 2009 WL 2959256 (Bankr. S.D.N.Y. Aug. 4, 2009), for support of her argument that sudden illness is a sufficient reason for the delay in filing a timely proof of claim. See Enron Creditors Recovery, 2009 WL 2959256, at *5. However, that case is distinguishable from this one. There, a pro se creditor was "gravely ill upon the lapse of the [b]ar [d]ate." Id. at *5. Upon the creditor's death, the executrix of the creditor's estate sought leave to file late proofs of claim. Id. at *1. The reorganized Debtor did not oppose the extension of the bar date to the date of the creditor's death. Id. at *5.

In this case, however, the illness at issue was not that of Kadiu, but of her counsel. Moreover, the illness occurred after the Bar Date, and therefore did not prevent the timely filing of Kadiu's claim. Additionally, unlike Enron Creditors Recovery, the Debtor and the Committee

vigorously oppose any extension of the Bar Date.  It should also be noted that the court in <u>Enron Creditors Recovery</u> denied the executrix's request to file late proofs of claim.  <u>Id.</u> at *7.  However, that court later vacated its decision, and set the matter down for a further hearing.  <u>In re Enron Creditors Recovery Corp.</u>, No. 01-16034 (AJG), 2009 WL 3756951 (Bankr. S.D.N.Y. Nov. 6, 2009.)  The dispute was ultimately resolved by stipulation between the parties, <u>In re Enron Creditors Recovery Corp.</u>, No. 01-16034 (AJG), So Ordered Stipulation and Agreed Order signed on 3/18/2010 allowing employee benefit claim and disallowing stock claim submitted by Lynn Anne Wright, ECF No. 31848, and no determination was made with respect to the creditor's motion.

Kadiu argues that the Debtor will not be prejudiced by the late filing because her claim of $4.9 million is insubstantial compared to the total amount of unsecured claims against the estate.  The Debtor and the Committee argue that the allowance of Kadiu's claim may open the floodgates for other creditors who failed to assert timely claims.

Courts have considered various factors in determining whether prejudice exists, including "the size of the late claim in relation to the estate, whether a disclosure statement or plan has been filed or confirmed with knowledge of the existence of the claim, the disruptive effect that the late filing would have on a plan close to completion or upon the economic model upon which the plan was formulated and negotiated."  <u>Keene</u>, 188 B.R. at 910.  Another consideration is "whether allowing a claim would be likely to precipitate a flood of similar claims."  <u>Enron</u>, 419 F.3d at 130; <u>Keene</u>, 188 B.R. at 913.  This determination necessarily "involves a certain amount of crystal ball gazing."  <u>Keene</u>, 188 B.R. at 912.

At this juncture, it is difficult to ascertain the size of Kadiu's claim in relation to the other claims against the estate.  Kadiu's $4.9 million claim is contingent and unliquidated.  According

to the Debtor, there are at least 70 lawsuits pending against the Debtor based on medical malpractice and personal injury.  Second Am. Disclosure Statement at 29, ECF No. 742; Tr.[2] at 9-10.  These unliquidated claims are currently being addressed in the mediation process, and the Debtor estimated that these claims would ultimately be allowed in an amount of $5.6 million.  Second Am. Disclosure Statement at 18, ECF No. 742.  If this Court were to allow the late filed claim of Kadiu, the claim would be subject to the mandatory mediation process.  As of April 21, 2010 about 45 to 50 of the personal injury and medical malpractice claims were still in the mediation process.  (Tr. at 9-10.)  Given that the majority of these claims remain to be liquidated, the addition of Kadiu's claim to the mediation process would not greatly prejudice the Debtor.

On the other hand, the Debtor would be prejudiced by "opening the floodgates" to other late filed medical malpractice claims.  It is certainly possible that there are other creditors with wrongful death or medical malpractice claims who have not yet filed proofs of claim.  If other late filed medical malpractice claims were allowed, the Debtor would incur additional legal fees and costs to either mediate or litigate those claims.  See Keene, 188 B.R. at 913 ("[T]he legal fees the estate would potentially expend in litigating [late filed claims] supports a finding of prejudice.").  The burden of establishing lack of prejudice lies with the party seeking relief under Bankruptcy Rule 9006, and Kadiu "introduced no evidence concerning the number of *potential* claimants who might have been prompted to file late claims in the wake of a ruling" in her favor.  Enron, 419 F.3d at 132.[3]

Moreover, even in the absence of prejudice, Kadiu's motion would fail because, as discussed above, she received appropriate constructive notice of the Bar Date, the length of delay

---

[2] "Tr." refers to the transcript of the hearing held on April 21, 2010.
[3] Kadiu also initially argued that the Debtor would not be prejudiced by deeming her claim timely filed because any recovery would be limited to available insurance.  However, this argument was withdrawn in light of the fact that the Debtor did not maintain any insurance with respect to Kadiu's claim.

11

was substantial and her excuse of law office failure is not a sufficient basis for finding excusable neglect. See Kanoff v. Better Life Renting Corp., No. 07-2363 (FLW), 2008 WL 4755343, at *3 (D.N.J. Oct. 27, 2008) (no excusable neglect under Fed. R. App. P. 4(a)(5)(A)(ii), because reason for delay was insufficient, notwithstanding "little prejudice" to adversary), aff'd, 350 F. App'x 655 (3d Cir. 2009). As noted in Keene, "Pioneer does not stand for the proposition 'no harm, no foul.'" Keene, 188 B.R. at 909.

## Conclusion

For the foregoing reasons, Kadiu's motion for leave pursuant to Bankruptcy Rule 9006(b)(1) to file a late proof of claim is denied. A separate order will issue.



Dated: Brooklyn, New York
August 12, 2010

_____
Carla E. Craig
United States Bankruptcy Judge